# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Case No. 01-10578 (RJN) |
| T&N LIMITED, *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | **Objection Deadline: October 30, 2003 at 4:00 p.m.** |
| | | **Hearing: Only if necessary** |

## APPLICATION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN AND EMPLOY SEYFARTH SHAW LLP AS SPECIAL COUNSEL IN CONNECTION WITH ERISA CLAIMS PURSUANT TO 11 U.S.C. § 327(e)

Pursuant to 11 U.S.C. § 327(e) (11 U.S.C. §§ 101 et seq., the "Bankruptcy Code")

and Federal Rules of Bankruptcy Procedure 2014 and 2016 (the "Bankruptcy Rules"), the

---

[1] The U.S. Debtors are Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul Machine Tool, Inc., Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul U.K. Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T&N Industries Inc.

The English Debtors are AE Dayton Services Limited, AE Group Machines Limited, AE Holdings Limited, AE International Limited, AE Limited, AE Piston Products Limited, AE Sales (Africa) Limited, Aeroplane & Motor Aluminium Castings Limited, Amber Supervision Limited, Ashburton Road Services Limited, Associated Engineering Group Limited, Awncast Limited, Bearings (North-Western) Limited, Brake Linings Limited, Colvan Rubber Co. Limited, Contact 100 Limited, Cosmid Limited, Cranhold Limited, Dealings Limited, Dumplington Services Limited, Duron Limited, E W Engineering Limited, Edmunds, Walker & Co. Limited, Engineering Components Limited, Federal-Mogul Acquisition Company Limited, Federal-Mogul Aftermarket UK Limited, Federal-Mogul Bradford Limited, Federal-Mogul Brake Systems Limited, Federal-Mogul Bridgwater Limited, Federal-Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Export Services Limited, Federal-Mogul Friction Products Limited, Federal-Mogul Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul Powertrain Systems International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul Sealing Systems (Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing Systems Limited, Federal-Mogul Shoreham Limited, Federal-Mogul Sintered Products Limited, Federal-Mogul Systems Protection Group Limited, Federal-Mogul Technology Limited, Federal-Mogul U.K. Limited, Ferodo Caernarfon Limited, Ferodo Limited, FHE Technology Limited, Fleetside Investments Limited, F-M UK Holding Limited, FP Diesel Limited, Friction Materials Limited, G.B. Tools & Components Exports Limited, Genthope Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, High Precision Equipment Limited, Inblot Limited, Instantwonder Limited, J.W. Roberts Limited, Kings Park Housing Limited, Lalton Limited, Lanoth Limited, Lanoth Precision Equipment Limited, Leeds Piston Ring & Engineering Co. Limited, M.T.A. (Kettering) Limited, Mantro Engineering Co. Limited, Mobile Distributing (Spares) Limited, Moores Plastic Units Limited, Newalls Insulation Company Limited, Ontall Limited, Payen (Europe) Limited, Pecal Limited, Presswork-Components Limited, Sintration Limited, Sourcelook Limited, Specialloid, Limited, STS (1996) Limited, TAF International Limited, T&N Holdings Limited, T&N International Limited, T&N Investments Limited, T&N Limited, T&N Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N Shelf Eight Limited, T&N Shelf Eighteen Limited, T&N Shelf Fifteen Limited, T&N Shelf Five Limited, T&N Shelf Four Limited, T&N Shelf Fourteen Limited, T&N Shelf Nine Limited, T&N Shelf Nineteen Limited, T&N Shelf One Limited, T&N Shelf Seven Limited, T&N Shelf Six Limited, T&N Shelf Sixteen Limited, T&N Shelf Ten Limited, T&N Shelf Thirteen Limited, T&N Shelf Thirty Limited, T&N Shelf Thirty-One Limited, T&N Shelf Thirty-Three Limited, T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-Eight Limited, T&N Shelf Twenty-Five Limited, T&N Shelf Twenty-Four Limited, T&N Shelf Twenty-Nine Limited, T&N Shelf Twenty-One Limited, T&N Shelf Twenty-Six Limited, T&N Shelf Twenty-Two Limited, T&N Shelf Two Limited, T&N Trade Marks Limited, T&N Welfare Trust Limited, TBA Belting Limited, TBA Belting (Residual) Limited, TBA Industrial Products Limited, Telford Rubber Processors Limited, Telford Technology Supplies Limited, The British Piston Ring Company Limited, The Washington Chemical Company Limited, Tinblo Limited, Touchdown Adhesive Products Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, Tynoda Limited, Vanwall Cars Limited, Wellworthy Limited, Wellworthy Property Developments Limited, and William C. Jones (Polymers) Limited. Unlike all the other English Debtors, T&N Investments Limited is a Scottish rather than English company and has not concurrently sought to commence administration proceedings in England.

debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), hereby file this application (the "Application") requesting entry of an order authorizing the employment and retention of Seyfarth Shaw LLP ("Seyfarth") as special counsel to address claims asserted against Federal-Mogul by one or more participants (or beneficiaries thereof) in the Federal-Mogul Salaried Employees Investment Program (the "ERISA Claims"), and, in connection therewith, to compensate Seyfarth for the fees and expenses it incurs which are not covered by an applicable fiduciary claims insurance policy which provides coverage for defense costs in excess of $100,000. The facts and circumstances supporting this Application are set forth in the attached *Affidavit Of Charles C. Jackson In Support Of Application For An Order Authorizing The Debtors To Employ Seyfarth Shaw LLP As Special Counsel In Matters Related To ERISA Claims Pursuant To 11 U.S.C. § 327(e) And Disclosure Of Compensation Pursuant To 11 U.S.C. § 329* (the "Affidavit" or "Jackson Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

## BACKGROUND

1. On October 1, 2001 (the "Petition Date"), the Debtors commenced these cases by each filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware.

2. The Debtors, together with the Administrators in the case of the English Debtors, most of whom concurrently commenced administration proceedings in England on the Petition Date, have continued in possession of their assets and properties and have continued to

2

operate and manage their businesses as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. There are four official representatives of unsecured creditors and shareholders in these chapter 11 cases as follows: (i) the Committee of Unsecured Creditors, (ii) the Committee of the Asbestos Claimants, (iii) the Legal Representative of Future Asbestos Claimants, and (iv) the Official Committee of Equity Security Holders. No request has been made for the appointment of a trustee or examiner in these cases.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicate for the relief requested herein is Section 327(e) of the Bankruptcy Code.

5. On March 3, 2003, Joseph Sherrill, purporting to act on behalf of a class of similarly situated entities, filed a class proof of claim against the Debtors in the amount of $97,968,790 (the "Sherrill Proof of Claim").

6. Additionally, on or about September 22, 2003, Mr. Sherrill, along with Keith Siverly, filed a suit in the Southern District of Illinois against certain current and former officers, directors and employees of Federal-Mogul (the "FM Employees").[2] See Joseph Scott

---

[2] The individual defendants in the Sherrill Illinois Action include alleged members of the Federal-Mogul Corporation Retirement Committee (James Zamoyski, Richard P. Randazzo, Joseph Breitenbeck, David A. Bozinksy, Richard A. Snell, Thomas W. Ryan, Thomas P. Martin, G. Michael Lynch, Charles G. McClure and Frank E. Macher), alleged members of the Pension Committee (John J. Fannon, Robert S. Miller, Jr., Roderick M. Hills and Geoffrey H. Whalen), and the alleged Manager of the Federal-Mogul Pension and Capital Accumulation Plans, Richard B. Stewart. The complaint also names several individuals as John Does. In addition to individual defendants, the complaint is brought against the Federal-Mogul Corporation Retirement Programs Committee ("Retirement Committee"), the Plan, Comerica Bank and State Street Global Advisors.

3

Sherrill et al. vs. Federal-Mogul Corporation Retirement Programs Committee et al., Civ. Action No. 03-4165 (S.D. Ill.) (the "Sherrill Illinois Action").

7.  Both the Sherrill Proof of Claim and the Sherrill Illinois Action assert various federal law claims under the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. § 1001 et seq., "ERISA"), and purport to have been filed on behalf of Mr. Sherrill (or Mr. Siverly), as well as other participants (and their beneficiaries) in the Federal-Mogul Corporation Salaried Employees' Investment Program (the "SEIP") for whose account the SEIP made or maintained investment in the Federal-Mogul Common Stock and Preferred Stock Funds (the "Stock Funds") at any time from June 30, 1999 to October 1, 2001.

8.  In general, the Sherrill Proof of Claim and the Sherrill Illinois Action allege that Federal-Mogul and the FM Employees breached fiduciary and co-fiduciary duties owed to the SEIP and the plan's participants and beneficiaries under ERISA, in connection with investments in the Stock Funds (such claims hereinafter are referred to as the "Sherrill Allegations").

9.  During preliminary discussions with Mr. Sherrill's counsel last July and August, the Debtors first learned that Mr. Sherrill also intended to assert the Sherrill Allegations in litigation against the FM Employees on the grounds that they were fiduciaries under the SEIP. Subsequently, the Debtors tendered the defense of such matters to their insurance carrier, Chubb & Son ("Chubb"), pursuant to a Fiduciaries Coverage Insurance Policy issued by Federal Insurance Company (the "Policy").

10. On or about September 9, 2003, Chubb first contacted Seyfarth about representing the FM Employees and the Debtors with respect to the Sherrill Allegations. Seyfarth was contacted, among other reasons, because it has substantial experience defending similar matters and because it has an international reputation in the field of labor and employment and employee benefits litigation. Having approximately 275 attorneys specializing in labor and employment and employee benefit matters, Seyfarth Shaw LLP has one of the nation's largest practices in those areas within a full-service law firm.

11. Thereafter, Seyfarth was asked by Chubb to meet with the Debtors so that the Debtors could evaluate and determine if they wanted Seyfarth to be retained to represent the FM Employees and the Debtors in respect of the anticipated litigation against the FM Employees and related claims against the Debtors. That meeting occurred on September 18, 2003. The Debtors believe that Seyfarth's representation commenced on that date as to the Debtors and the FM Employees.[3]

12. As noted above, less than a week after Seyfarth's initial meeting regarding the Sherrill Allegations, Mr. Sherrill caused the Sherrill Illinois Action to be filed. At the same time, Mr. Sherrill also caused to be filed the "Individual and Class Objection of Joseph Scott Sherrill to Proposed Settlement" (the "Sherrill Objection"), which objected to the "Motion of Debtors and Debtors in Possession for an Order Authorizing Entry into and Approving the Class

---

[3] As set forth in the Jackson Affidavit, Seyfarth's records indicate that its attorneys collectively spent approximately 5 hours prior to September 18, 2003, in connection with preparing for the meeting with the Debtors and discussing representation issues with Chubb. Seyfarth will not seek reimbursement of that time from the Estates.

5

Action Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019." The Sherrill Objection immediately raised a number of issues that Seyfarth undertook to analyze.

13. The Debtors believe that the allegations asserted in the Sherrill Proof of Claim are substantially similar, if not identical, to the allegations raised in the Sherrill Illinois Action. Specifically, in each case the plaintiffs (or claimants, as the case may be) have alleged that the Debtors and defendants breached fiduciary and co-fiduciary duties to the SEIP participants and beneficiaries in connection with investments in the Funds. The Debtors understand that at the time Seyfarth will be representing the Debtors in connection with the Sherrill Allegations, Seyfarth also will be representing certain of the defendants in the Sherrill Illinois Action, including certain of the FM Employees, solely in connection with the defense of the Sherrill Illinois Action.

14. The Debtors believe that the substantial overlap in the allegations raised by Mr. Sherrill in this Court and in the Sherrill Illinois Action counsels strongly in favor of Seyfarth undertaking both representations jointly. Seyfarth has agreed that it will not represent the FM Employees, and will so advise them, on any matters against the Debtors, including any related to claims for indemnification or contribution and that the FM Employees, if they wish to pursue such matters, will have to retain separate counsel.

15. Due to the fact that Seyfarth's engagement initially focused on the threats of litigation against the FM Employees, and the subsequent Sherrill Illlinois Action, and due to the fact that Chubb has agreed to pay Seyfarth directly for the fees and expenses incurred in connection with the Sherrill Allegations (once a $100,000 deductible has been paid by the

Debtors (hereinafter, the "Deductible")) -- the Debtors initially analyzed and considered whether Court approval under Section 327 of the Bankruptcy Code was necessary in order to retain Seyfarth. After concluding that it was, the Debtors provided Seyfarth with a list of Interested Parties to search on or about October 1, 2003, as well as a preliminary draft of a retention application on or about October 3, 2003.

## RELIEF REQUESTED

### A. Retention of Seyfarth Shaw LLP as Special Counsel in Connection with The ERISA Claims is in the Best Interest of the Debtors and Their Estates

16. The Debtors respectfully request authorization to employ and retain Seyfarth to serve as their counsel in connection with the ERISA Claims on the terms and conditions set forth herein. The ERISA Claims, include, but are not necessarily limited to, matters related to the Sherrill Proof of Claim and the Sherrill Allegations.

17. At this time, the Debtors anticipate that Seyfarth, principally through its partners, Charles C. Jackson, Christopher Weals, Frederic Singerman, and Allegra Rich, will provide required legal services to the Debtors in connection with the ERISA Claims and the Sherrill Proof of Claim and that such services will include the following:

(a) advising the Debtors with respect to the ERISA Claims, including the Sherrill Proof of Claim;

(b) negotiating on behalf of the Debtors all matters related to the ERISA Claims, including the Sherrill Proof of Claim;

(c) preparing, filing, prosecuting and resolving an objection to, and/or complaint against, the Sherrill Proof of Claim pursuant to applicable provisions of the Bankruptcy Code and Bankruptcy Rules;

7

(d) assisting the Debtors and their general bankruptcy counsel in preparing appropriate pleadings and other papers as may be required in support of positions taken by the Debtors in matters related to the ERISA Claims, as well as preparing witnesses and reviewing documents relevant thereto;

(e) representing the Debtors at hearings to be held before this Court and communicating with the Debtors regarding issues related to ERISA Claims, including the Sherrill Proof of Claim, as well as the decisions and considerations of this Court on matters related to current and former employees of the Debtors; and

(f) rendering such other services as may be in the bests interests of the Debtors in connection with any of the foregoing, as agreed upon by Seyfarth and the Debtors.

18. As noted above, the partners, counsel, and associates of Seyfarth have experience in all aspects of employee-related litigation defense on a national, regional and local level, including trials, pre-trial activity, counseling, strategy, claims administration, claims negotiating, claims reporting and other litigation services with respect to such employee-related claims, and matters related to the resolution of such liabilities.

19. If approved, the Debtors believe that Seyfarth's representation of the Debtors will provide a substantial benefit to the Debtors and their Estates. Thus, the Debtors believe Seyfarth is well-qualified to represent the Debtors as their special counsel in such matters described above.

### B. Professional Compensation

20. As set forth in the Jackson Affidavit or herein, to the best of its knowledge, information and belief, Seyfarth has not received any compensation from the Debtors within one year prior to the Petition Date. Seyfarth, however, did provide limited legal

8

services to the Debtors within five years prior to Petition Date. The circumstances surrounding those services are included in the Jackson Affidavit and including the following: (a) D'Ancona & Pflaum, a Chicago-based law firm which merged with Seyfarth as of October 1, 2003, received $22,591.80 from Federal-Mogul on September 21, 2000, for services rendered to it in connection with a business dispute that did not result in litigation; (b) Seyfarth performed labor and employment work through 1999 for Cooper Industries, which was purchased by Federal-Mogul Products, Inc.; (c) from 1982 through 1997 Seyfarth represented T&N Industries in labor and employment matters. Seyfarth is not owed any amounts with respect to prepetition legal fees and expenses.

21. Notably, the Debtors expect that most of the fees and expenses incurred and billed by Seyfarth in connection with the Sherrill Proof of Claim matter will be paid directly to Seyfarth by Chubb, in accordance with the Policy and subject to the qualifications set forth herein and therein. In that regard, Chubb has indicated at this time that it, not the Debtors, will pay directly to Seyfarth the fees and expenses incurred by Seyfarth in excess of the Deductible.

22. Subject to this Court's approval, for amounts below the Deductible, Seyfarth intends to bill the Debtors for legal services on an hourly basis. The Jackson Affidavit sets forth the applicable billing rates for attorneys who are likely to provide services to the Debtors. As a firm, Seyfarth's billing rates currently range from $205 to $600 per hour for partners; $275 to $400 for counsel; $165 to $355 per hour for associates; and $80 to $170 per hour for para-professionals. Seyfarth's rates are subject to periodic increases in the normal course of Seyfarth's business. The Debtors submit that such rates are reasonable and appropriate

for services of this nature and are consistent with the compensation arrangements charged by Seyfarth in other cases in which Seyfarth has been retained to perform similar services.

23. In addition to the hourly rates set forth above, Seyfarth customarily charges its clients for costs and expenses incurred, which may include, among other items, telephone and telecopier toll and other charges, mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, transcription costs, and witness fees and other fees related to trials and hearings, as well as non-ordinary overhead expenses such as secretarial overtime.

24. Seyfarth has not received a retainer in connection with its representation of the Debtors.

25. With respect to the professional services to be rendered, the Debtors understand that Seyfarth intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules and the orders of the Court. Seyfarth will submit detailed time entries in its fee applications to the Court that will reflect work related to the proposed retention described in this Application and for which reimbursement from the Estates is sought. Seyfarth understands that interim and final fee awards are subject to approval of this Court.

26. Because the Policy provides that Chubb is to pay directly to Seyfarth fees and expenses in excess of the $100,000 Deductible (and Chubb has agreed to pay such amounts), the Debtors request that Seyfarth not be required to submit fee applications and apply to the

Court for allowance of compensation and reimbursement of charges *with respect to the amounts that Chubb has indicated that it will be paying directly to Seyfarth.* Accordingly, Seyfarth respectfully requests that it be required to submit fee applications in accordance with then applicable procedures only to the extent it is seeking payment from the Estates under Section 330 of the Bankruptcy Code.

27. To the best of the Debtors' knowledge, and except as is set forth in more detail in the accompanying Jackson Affidavit, Seyfarth, its partners, counsel and associates do not represent or hold any interest adverse to the Debtors or their Estates with respect to the matters upon which Seyfarth is to be employed. 11 U.S.C. § 327(e).

28. Other than as may be set forth above and in the attached Jackson Affidavit, there are no actual or proposed understandings or agreements among the Debtors or their officers and Seyfarth concerning compensation to be paid to Seyfarth in these cases.

29. Subject to this Court's approval, Seyfarth has indicated its willingness to serve as the Debtors' special counsel upon the terms and conditions set forth herein and the Debtors believe that the appointment of Seyfarth on the terms and conditions set forth herein is necessary and in the best interests of the Debtors, their creditors, and all parties in interest and should be approved.

30. Accordingly, Seyfarth is eligible for employment pursuant to 11 U.S.C. § 327(e) for the purposes set forth in the application.

11

## RELEVANT STATUTORY AUTHORITY

31. Section 327(e) of the Bankruptcy Code provides, in relevant part, as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

## NOTICE

32. Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the agents for the pre-petition lenders; (iii) counsel to the agents for the post-petition lenders; (iv) counsel to the administrators of the English Debtors; (v) counsel to the Official Committee of Creditors Holding Unsecured Claims; (vi) counsel to the Official Committee of the Asbestos Claimants; (vii) counsel to the Representative of the Future Asbestos Claimants; (viii) counsel to the Official Committee of Equity Security Holders; and (ix) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

*(The balance of this page has intentionally been left blank)*

27440-001\DOCS_DE:80648.1

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form of the annexed order authorizing the Debtors to employ and retain Seyfarth Shaw LLP as their special counsel in connection with the matters described herein and grant such other and further relief as is just and proper.

Dated: Wilmington, Delaware
October 10, 2003

                        FEDERAL-MOGUL CORPORATION (for itself and on behalf of its debtor subsidiaries, including Federal-Mogul Global Inc. and T&N Limited), Debtors and Debtors-in-Possession

By: _____
David M. Sherbin
Vice President, Deputy General Counsel and Secretary