# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL, INC., | ) | Case No. 01-10578 (RJN) |
| T&N LIMITED, et al., | ) | (Jointly Administered) |
| | ) | |
| Debtors. | )Objection Deadline: | November 10, 2003 at 4:00 PM |
| | )Hearing Date: | November 20, 2003 at 2:00 PM |

## MOTION OF JOSEPH SCOTT SHERRILL AND KEITH A. SIVERLY FOR RELIEF FROM STAY UNDER SECTION 362 OF THE BANKRUPTCY CODE

1. Joseph Scott Sherrill and Keith A. Siverly ("Movants"), on behalf of themselves and all others similarly situated, pursuant to 11 U.S.C. § 362, move for entry of an order modifying the automatic stay, to permit Movants to pursue liquidation of their claims against Federal-Mogul Corporation jointly with their claims asserted against non-debtor defendants in an ERISA class action suit pending in United States District Court for the Southern District of Illinois.

## I. BACKGROUND

2. Movants are former Federal-Mogul employees and participants in the Federal-Mogul Corporation Salaried Employees Investment Program (the "SEIP"). Movant Sherrill timely filed an individual and class proof of claim in this bankruptcy proceeding, alleging that Federal-Mogul Corporation ("FM" or the "Company"), as the "named fiduciary" of the SEIP, violated its fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), by imprudent investment of the assets held in the SEIP in FM stock despite FM's deteriorating financial conditions, thereby causing substantial losses to the SEIP and its participants. The bankruptcy claim is in an amount exceeding $97 million.

3. Movants have also filed a class action suit, styled <u>Sherrill et al. v. Federal-Mogul Corporation Retirement Programs Committee, et al.</u>, No. 03-4165-SLF, in the United States District Court for the Southern District of Illinois, where they reside, against other, non-debtor SEIP fiduciaries, including present and former employees, officers and directors, as well as independent entities, who are alleged to have participated in the same ERISA fiduciary breaches. A copy of the Complaint filed in that action is attached as Exhibit D to the Declaration of J. Brian McTigue Filed in Support of the Motion for Certification of Class of Participants and Beneficiaries of the Federal-Mogul Corporation Salaried Employees Investment Program, filed on October 15, 2003 (Dkt # 3592).

4. Federal-Mogul Corporation was not named in that action because it is a debtor in these proceedings, having petitioned for relief under Chapter 11 of the United States Bankruptcy Code on October 1, 2001.

5. FM's bankruptcy counsel has informed Movants that their claims against the non-debtor fiduciaries, as well as the claims against Federal-Mogul, are insured by certain fiduciary insurance policies. Upon information and belief, no other claims have been made against the proceeds of these policies. Moreover, the Bankruptcy claims deadline expired on March 3, 2003, so no other claims may be asserted against the estate. In addition, the insurance policies' "claims made" deadline expired August 31, 2003. The policies are wasting policies in that the coverage available under the policies is reduced by the amount of defense costs paid by the insurer to defend claims.[1]

---

[1] The policies in question are the Executive Protection Policy No. 8107-7562, with limits of liability of $12,500,000, issued by Federal Insurance Company (Chubb) and the Excess Liability Policy, Policy No. ELU 82675-02, with limits of $12,500,000 issued by XL Specialty Insurance Company, copies of which are attached hereto.

6. Depending on the amount of losses to the SEIP that are ultimately determined to have been caused by FM and the non-debtor defendants that are insured under these policies, the liability limits of these insurance policies may or may not be sufficient to cover all losses. Under the policies, payment is made directly to claimants, not to Federal-Mogul or any other debtor. The insurer also pays defense costs of litigation for all entities insured under these policies, including both Federal-Mogul and the non-debtor individual defendants in the District Court litigation. The insurer has apparently retained the law firm of Seyfarth Shaw LLP to defend the Class Action litigation. The Seyfarth Shaw law firm has, of this writing, a motion pending in this Court to be appointed Special Counsel for the Debtors and to represent SEIP fiduciaries in the District Court litigation. (See Application for an Order Authorizing the Debtors to Retain Seyfarth Shaw LLP As Special Counsel in Connection With ERISA Claims, Dkt # 3582).

7. Establishing Federal Mogul's liability and amount of loss under the proof of claim, and establishing the liability and amount of losses caused by insured individuals and other defendants in the ERISA action, require virtually the same evidence and resolution of mostly identical legal issues. Given (1) these common questions, (2) shared insurance coverage, (3) the insurer's payment of defense costs and the "wasting" insurance coverage, and (4) the complexity of this matter, it is in the best interests of all parties *and in the interest of judicial efficiency* to have *all* questions of liability and amount of loss determined by a single court.

8. These complex ERISA claims are more properly adjudicated in a district court proceeding. Specifically, 28 U.S.C. § 157(d) provides that "The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." By the same token, under § 157(d), it would be

improper for this bankruptcy court to assert jurisdiction over other parties to the ERISA class action, which include numerous individual defendants, Comerica Bank, and State Street Bank. Moreover, given the enormous workload in the District of Delaware resulting from multiple large bankruptcy cases of national import, allowing this matter to be adjudicated in the Southern District of Illinois, as part of the related ERISA case already pending there, is beneficial for all concerned.

9. For the convenience and saving of expense of all parties, and for the efficiency of the courts, both the ERISA case and bankruptcy claim should be adjudicated to the extent possible in a single proceeding in the United States District Court for the Southern District of Illinois.

## II. RELIEF REQUESTED

10. Movants seek relief from stay to name Federal-Mogul Corporation as a defendant in the ERISA class action suit, in Illinois, and to pursue their claims to judgment. Should the Illinois District Court determine that FM's liability exceeds the liability limits of its insurance policy, any excess claim would remain subject to the bankruptcy plan of reorganization or otherwise be disposed of by this Court.[2]

## III. THE BASIS FOR GRANTING RELIEF

11. Section 362(d)(1) of the Bankruptcy Code provides: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying or conditioning such stay – (1) for cause . . ."

12. The circumstances of the instant action warrant modifying the stay here "for cause." "Cause is not defined in the Code; it must be determined on a case-by-case basis." In re Rexene

---

[2] Regardless of whether Movants are granted relief from stay, the debtors' Plan of Reorganization will need to provide an allocation for Sherrill's claim.

4

Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992) (internal quotation marks and citations omitted). Courts consider several factors of equitable balancing to determine whether cause exists in the circumstances, and section 362 (d)(1) is specifically applicable to allow proceedings in another court "to relieve the bankruptcy court from any duties that may be handled elsewhere." Id. (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977)).

13. Courts generally consider: "(1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if stay is lifted." American Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993) (citing International Business Machines v. Fernstrom Storage & Van Co.(In re Fernstrom Storage and Van Co.), 938 F. 2d 731, 734-37 (7th Cir. 1991)).

14. FM would not be prejudiced by granting Movants relief to pursue their claims to judgment. "The Courts have not . . . ascribed much significance to the fact that the debtor will be required to participate in their defense, especially when the debtor's insurance is obligated to provide counsel." In re Bock Laundry Machine Co., 37 B.R. 564, 567 (Bankr. N.D. Oh. 1984) (citing In re Holtkamp, 669 F. 2d 505 (7th Cir. 1982)). FM's insurer here is obligated to defend Movants' suit, and has already retained counsel to do so. See In re First Central Financial Corp., 269 B.R. 502, 520 (Bankr. E.D.N.Y. 2001) (listing "whether the debtor's insurer has assumed full responsibility for defending it" as a factor in determining whether to grant relief from stay); Edmonson v. America West Airlines, Inc. (In re America West Airlines) 148 B.R. 920, 923 (Bankr. D. Ariz. 1993) (same). In addition, naming FM as a defendant is not likely to increase the debtor's burden in defense beyond the involvement mandated by the current involvement of the non-debtor FM employees, officers, directors, and committees as defendants.

15.     Modifying the stay to allow Movants to litigate to judgment also would not prejudice the estate or other creditors. Movants seek merely to adjudicate FM's liability, not to execute a judgment against non-insurance assets. As courts have noted:

> The automatic stay was never intended to preclude a determination of tort liability and the attendant damages. It was merely intended to prevent a prejudicial dissipation of the debtor's assets ... A lifting of the stay to allow a plaintiff-creditor to determine liability will not affect the estate. It will only allow Movants to establish the amount of a claim which has already been made against the estate.

Bock Laundry 37 B.R. at 567.

16.     Any judgment for Movants in the District Court suit would first be satisfied out of the proceeds of the fiduciary insurance policies. The proceeds of those policies are payable to claimants, not the debtors, and therefore would not prejudice the estate or other creditors. See Louisiana World Exposition, Inc. v. Federal Insurance Co. (In re Louisiana World Exposition, Inc.), 832 F. 2d 1381, 1401 (5th Cir. 1987) (distinguishing insurance policy ownership from ownership of policy proceeds for bankruptcy estate purposes); accord, First Fidelity Bank v. McAteer, 985 F. 2d 114 (3rd Cir. 1993) (applying the same reasoning to life insurance policies). No other claims have been filed against those policies, so no other creditor would be affected by the litigation. Movants do not move to execute judgment above the policies' limits, and liability against FM that exceeded the insurance policies' liability limits would have to be resolved prior to confirmation regardless of whether relief from stay is granted. See Rexene, 141 B.R. at 577; Bock Laundry, 37 B.R. 567-68. Any potential recovery in excess of fiduciary insurance would remain subject to any approved plan of reorganization or liquidation.

17.     The Bankruptcy Code and the Federal Rules of Civil Procedure both specify that they should be construed to secure the "just, speedy, and inexpensive determination" of every action or

proceeding. F.R.Civ.P. 1; Bankruptcy Rule 1001. Related federal statutes seek also conservation of judicial resources, as well as efficiency for the parties, for example, 28 U.S.C. § 1407, "Multidistrict litigation" ("MDL"). Here, an efficient procedure is readily available. This Court may simply grant relief from stay so that Federal-Mogul Corporation may be joined, through amendment, in the existing ERISA action.[3]

18. The balance of hardships here also weighs in favor of granting relief from stay. Movants' suit in the District Court involves litigating nearly identical factual and legal issues, against defendants, including non-debtor employees, officers, directors and committees of FM as well as independent third parties, over whom this Court does not have jurisdiction. See America West, 148 B.R. at 923 (listing "judicial economy," wasted litigation resources, the presence in the litigation of parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief can be granted in the absence of the debtor as factors in determining whether to grant relief). Litigating these claims twice in two different jurisdictions would be burdensome for Movants and cause a significant delay in the ultimate resolution of their claims, given the complexity of these bankruptcy proceedings and this Court's already overburdened docket. See Bock Laundry, 37 B.R. at 567. This delay would burden Movants and class members and contradict the public policy underlying ERISA's protection of pension rights, because class members, some of whom are already of retirement age and in need of their pensions, would be forced to forego the potential benefits of this action for years before the claim is able to be adjudicated in Delaware. See America West, 148 B.R. at 923 (listing "[w]hether public policy supports the type or kind of action the Movant is bringing . . ." as a relevant factor).

---

[3] As of this writing, Plaintiffs in the ERISA action may still amend as of right, no responsive pleading having been filed, but the right to amend must in any event be "freely given when justice so requires." F.R.Civ. P. 15.

19. Requiring a separate adjudication of the merits of Movants' claims against Federal-Mogul would also result in an unnecessary drain of judicial resources, as courts have previously noted. "[O]ne of the primary purposes in granting relief from the stay to permit claim liquidation is to economize judicial resources ... duplicative litigation is burdensome both to Movants and the courts involved." Rexene, 141 B.R. at 576; see also, In re Carbaugh, 278 B.R. 512, 525 (10th Cir. BAP 2002) ("Courts have found that cause exists for lifting the stay for the purposes of judicial economy.")

20. Moreover, it is likely that Sherril's claim, involving the interpretation of ERISA's statutory requirements, and application to the facts of this case, would ultimately be resolved not in this Court, but in the Delaware District Court. See e.g., Pension Benefit Guaranty Corp. v. LTV Corp. (In re Chateaugay Corp.), 86 B.R. 33 (S.D.N.Y. 1988) (holding withdrawal of the reference mandated by complex ERISA issues); accord Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines), 138 B.R. 442, 447 (D. Del. 1992) (finding withdrawal not mandated there because "it is not necessary for this Court to address a substantial and material issue concerning a specific ERISA provision as it applies to a specific set of facts . . .") Recent District Court decisions demonstrate the complex factual and legal issues involved in ERISA breach of fiduciary duties claims such as the instant case. See, e.g., Tittle v. Enron Corp., No. MCL 1446, CIV.A.H.-01-3913, 2003 WL 22245394 (S.D. Tex. September 30, 2003); In re Worldcom, Inc. Erisa Litigation, 263 F. Supp. 2d 745 (S.D.N.Y. 2003). The interests of judicial economy disfavor requiring adjudication of nearly identical litigation in two separate district courts. The balance of hardships here, of the potential duplicative litigation, waste of judicial resources, and delay in resolution against the minimal, if any, hardship that will be caused to FM, strongly weighs in favor of granting Movants' motion.

21. Movants have a sufficient probability of success on the merits to support lifting the stay, for which "[t]he required showing is very slight." Rexene, 141 B.R. at 578. "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." Continental, 152 B.R. at 426 (citing Fernstrom, 938 F. 2d at 737; Rexene, 141 B.R. at 578). Here Movants' counsel is nationally recognized for its experience in successfully litigating similar ERISA breach of fiduciary duty claims on behalf 401(k) Plan participants. Counsel has performed an extensive investigation of the SEIP, FM's performance of its fiduciary functions, and the substantial losses (which counsel believes may total as much as $97 million) caused to participants, and believes Movants have a high probability of success on the merits. The ultimate merits, however, can not be determined until the claims are allowed to be litigated to judgment.

22. The policies underlying the automatic stay are not implicated by Movants' request for relief. The automatic stay is "designed to relieve the debtor of the financial pressures that drove him into bankruptcy, . . . to protect the bankruptcy estate from being whittled away by creditors' lawsuits, . . . and to implement a system where all creditors will be treated equally." Continental, 152 B.R. at 426 (internal quotation marks and citations omitted). Here, because Movants seek only to liquidate a claim that will need to be accounted for in the debtors' plan of reorganization regardless of where the dispute is resolved, none of those policies are implicated. "Where neither prejudice to the bankruptcy estate nor interference with the bankruptcy proceeding is demonstrated, the desire of a stayed party to proceed in another forum is sufficient cause to warrant lifting the automatic stay." Id. (quoting Hohol v. Essex Indus., Inc. (In re Hohol), 141 B.R. 293, 298 (M.D.Pa. 1992)).

## IV. CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court enter an order, substantially in the form attached hereto, (i) modifying the automatic stay to allow Movants, on behalf of themselves the class they seek to represent, to name Federal-Mogul Corporation as a defendant in their action in the United States District Court for the Southern District of Illinois; and (ii) granting such other and further relief as the Court deems just and proper.

F.

| | |
|---|---|
| Dated: October 27, 2003 | **The LYONS LAW FIRM**<br><br>By: _/s/ David J. Lyons_<br>David J. Lyons<br>1526 Gilpin Avenue<br>PO Box 579<br>Wilmington, DE 19899<br>Tel: 302-777-5698<br>Fax: 302-777-5051<br>Email: dlyons@lyonslaw.com |

**THE MCTIGUE LAW FIRM**

J. Brian McTigue
Bruce F. Rinaldi
5513 Connecticut Avenue, N.W.
Suite 220
Washington, D.C. 20015
Tel: 202.364.6900
Fax: 202.364.9960
Email: bmctigue@mctiguelaw.com

**MALAKOFF DOYLE & FINBERG, P.C.**
Richard A. Finberg
Ellen M. Doyle
Suite 200, The Frick Building
437 Grant Street
Pittsburgh, Pennsylvania 15219
Tel: 412.281.8400
Fax: 412.281.3262
Email: rfinberg@mdfpc.com

*Attorneys for ERISA Claimant Joseph Scott Sherrill, Keith A. Siverly, and all others similarly situated*