IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FEDERAL-MOGUL GLOBAL INC., | ) | Case No. 01-10578 (RTL) |
| T&N LIMITED, et al.,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## THIRD AMENDED JOINT PLAN OF REORGANIZATION

**ARTICLE IX OF THIS PLAN PROVIDES FOR THE ISSUANCE OF A CHANNELING INJUNCTION UNDER SECTIONS 105(a) AND 524(g) OF THE BANKRUPTCY CODE THAT PERMANENTLY ENJOINS ALL PERSONS HOLDING ASBESTOS PERSONAL INJURY CLAIMS FROM PURSUING A REMEDY AGAINST THE PROTECTED PARTIES AND CHANNELS THEM TO THE TRUST FOR RESOLUTION AND PAYMENT**

---

[1]    The U.S. Debtors (collectively, the "U.S. Debtors") are Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Global Properties, Inc., Federal-Mogul Ignition Company, Federal-Mogul Machine Tool, Inc., Federal-Mogul Mystic, Inc., Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain, Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul U.K. Holdings, Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., FM International LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing, Inc., and T&N Industries Inc.

The U.K. Debtors (collectively, the "U.K. Debtors") are AE Dayton Services Limited, AE Group Machines Limited, AE Holdings Limited, AE International Limited, AE Limited, AE Piston Products Limited, AE Sales (Africa) Limited, Aeroplane & Motor Aluminium Castings Limited, Amber Supervision Limited, Ashburton Road Services Limited, Associated Engineering Group Limited, Awncast Limited, Bearings (North-Western) Limited, Brake Linings Limited, Colvan Rubber Co. Limited, Contact 100 Limited, Cosmid Limited, Cranhold Limited, Dealings Limited, Dumplington Services Limited, Duron Limited, E W Engineering Limited, Edmunds, Walker & Co. Limited, Engineering Components Limited, Federal-Mogul Acquisition Company Limited, Federal-Mogul Aftermarket UK Limited, Federal-Mogul Bradford Limited, Federal-Mogul Brake Systems Limited, Federal-Mogul Bridgwater Limited, Federal-Mogul Camshaft Castings Limited, Federal-Mogul Camshafts Limited, Federal-Mogul Engineering Limited, Federal-Mogul Eurofriction Limited, Federal-Mogul Export Services Limited, Federal-Mogul Friction Products Limited, Federal-Mogul Global Growth Limited, Federal-Mogul Ignition (U.K.) Limited, Federal-Mogul Powertrain Systems International Limited, Federal-Mogul Sealing Systems (Cardiff) Limited, Federal-Mogul Sealing Systems (Rochdale) Limited, Federal-Mogul Sealing Systems (Slough) Limited, Federal-Mogul Sealing Systems Limited, Federal-Mogul Shoreham Limited, Federal-Mogul Sintered Products Limited, Federal-Mogul Systems Protection Group Limited, Federal-Mogul Technology Limited, Federal-Mogul U.K. Limited, Ferodo Caernarfon Limited, Ferodo Limited, FHE Technology Limited, Fleetside Investments Limited, F-M UK Holding Limited, FP Diesel Limited, Friction Materials Limited, G.B. Tools & Components Exports Limited, Genthope Limited, Greet Limited, Halls Gaskets Limited, Hepworth & Grandage Limited, High Precision Equipment Limited, Inblot Limited, Instantwonder Limited, J.W. Roberts Limited, Kings Park Housing Limited, Lalton Limited, Lanoth Limited, Lanoth Precision Equipment Limited, Leeds Piston Ring & Engineering Co. Limited, M.T.A. (Kettering) Limited, Mantro Engineering Co. Limited, Mobile Distributing (Spares) Limited, Moores Plastic Units Limited, Newalls Insulation Company Limited, Ontall Limited, Payen (Europe) Limited, Pecal Limited, Presswork-Components Limited, Sintration Limited, Sourcelook Limited, Specialloid, Limited, STS (1996) Limited, TAF International Limited, T&N Holdings Limited, T&N International Limited, T&N Investments Limited, T&N Limited, T&N Materials Research Limited, T&N Piston Products Group Limited, T&N Properties Limited, T&N Shelf Eight Limited, T&N Shelf Eighteen Limited, T&N Shelf Fifteen Limited, T&N Shelf Five Limited, T&N Shelf Four Limited, T&N Shelf Fourteen Limited, T&N Shelf Nine Limited, T&N Shelf Nineteen Limited, T&N Shelf One Limited, T&N Shelf Seven Limited, T&N Shelf Six Limited, T&N Shelf Sixteen Limited, T&N Shelf Ten Limited, T&N Shelf Thirteen Limited, T&N Shelf Thirty Limited, T&N Shelf Thirty-One Limited, T&N Shelf Thirty-Three Limited, T&N Shelf Three Limited, T&N Shelf Twenty Limited, T&N Shelf Twenty-Eight Limited, T&N Shelf Twenty-Five Limited, T&N Shelf Twenty-Four Limited, T&N Shelf Twenty-Nine Limited, T&N Shelf Twenty-One Limited, T&N Shelf Twenty-Six Limited, T&N Shelf Twenty-Two Limited, T&N Shelf Two Limited, T&N Trade Marks Limited, T&N Welfare Trust Limited, TBA Belting Limited, TBA Belting (Residual) Limited, TBA Industrial Products Limited, Telford Rubber Processors Limited, Telford Technology Supplies Limited, The British Piston Ring Company Limited, The Washington Chemical Company Limited, Tinblo Limited, Touchdown Adhesive Products Limited, Turner & Newall Limited, Turner Brothers Asbestos Company Limited, Tynoda Limited, Vanwall Cars Limited, Wellworthy Limited, Wellworthy Property Developments Limited, and William C. Jones (Polymers) Limited. Unlike all the other U.K. Debtors, T&N Investments Limited is a Scottish rather than English company and commenced administration in Scotland in April 2002.

**TABLE OF CONTENTS**

Page

ARTICLE I DEFINITIONS, CONSTRUCTION OF TERMS, AND EXHIBITS ...............................................1
   1.2.   Other Terms...........................................................................................................25
   1.3.   Deemed Acts .........................................................................................................25
   1.4.   Exhibits .................................................................................................................25

ARTICLE II TREATMENT OF ADMINISTRATIVE CLAIMS, ADMINISTRATION CLAIMS
              AND PRIORITY TAX CLAIMS ...........................................................................25
   2.1.   Allowed Administrative Claims and Administration Claims ...............................25
   2.2.   Treatment of Tranche C Portion of DIP Facility .................................................26
   2.3.   Priority Tax Claims ..............................................................................................26

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ............................26
   3.1.   Federal-Mogul Corporation (Classes 1A through 1O) ........................................28
   3.2.   Federal-Mogul Piston Rings, Inc. ("FMPRI") (Classes 2A through 2P)...............36
   3.3.   Federal-Mogul Powertrain, Inc. ("FMPI") (Classes 3A through 3P)....................40
   3.4.   Federal-Mogul Ignition Company .......................................................................44
   3.5.   Federal-Mogul Products, Inc. ("F-M Products") (Classes 5A through 5P)...........47
   3.6.   T&N Limited ("T&N") (Classes 6A – 6P)............................................................51
   3.7.   Federal-Mogul Ignition (U.K.) Limited ("FM Ignition")(Classes 7A – 7P) .........55
   3.8.   Federal-Mogul Systems Protection Group Limited (FMSPG") (Classes 8A - 8P) ........58
   3.9.   Federal-Mogul Aftermarket UK Limited ("FMAUK")(Classes 9A – 9P) .............60
   3.10.  Federal-Mogul Sintered Products Limited ("FMSP") (Classes 10A – 10P) .........62
   3.11.  Federal-Mogul Sealing Systems (Slough) Limited ("FMSS-Slough") (Classes 11A – 11P)...............64
   3.12.  Federal-Mogul Friction Products Limited ("FMFP") (Classes 12A – 12P)...........67
   3.13.  Federal-Mogul Sealing Systems (Rochdale) Limited ("FMSS-Rochdale") (Classes 13A –
        13P)  69
   3.14.  Federal-Mogul Camshaft Castings Limited ("FMCC") (Classes 14A – 14P)........72
   3.15.  Federal-Mogul Bradford Limited ("Bradford") (Classes 15A – 15P)....................74
   3.16.  Federal-Mogul Camshafts Limited ("FM Camshafts") (Classes 16A – 16P) .........76
   3.17.  Federal-Mogul Eurofriction Limited ("FMEL") (Classes 17A – 17P)...................78
   3.18.  Federal-Mogul Powertrain Systems International Limited ("Powertrain") (Classes 18A –
        18P)  81
   3.19.  TBA Industrial Products Limited ("TBA-IP") (Classes 19A – 19P)......................83
   3.20.  Federal-Mogul Export Services Limited ("FM Export") (Classes 20A – 20P)........85
   3.21.  Remaining Debtors................................................................................................86

ARTICLE IV THE TRUST .....................................................................................................................86
   4.1.   Establishment Of Trust.........................................................................................86
   4.2.   Purpose of Trust ...................................................................................................86
   4.3.   Receipt of Trust Assets.........................................................................................87
   4.4.   Discharge Of Liabilities To Holders Of Asbestos Personal Injury Claims ..........87
   4.5.   Special Provisions Applicable to the Reorganized Debtors that are Hercules-Protected Entities..........88
   4.6.   Investment Guidelines ..........................................................................................92
   4.7.   Excess Trust Assets .............................................................................................93
   4.8.   Trust Expenses .....................................................................................................93
   4.9.   Selection Of The Initial Trustees..........................................................................93
   4.10.  Advising The Trust...............................................................................................93
   4.11.  Trust Indemnity Obligations. ...............................................................................93

ARTICLE V EXECUTORY CONTRACTS AND UNEXPIRED LEASES...................................................95
   5.1.   Assumption And Rejection Of Unexpired Leases And Executory Contracts ........95
   5.2.   Rejected Unexpired Leases And Executory Contracts..........................................96

i

**TABLE OF CONTENTS**
(continued)

| 5.3. | Continuation Of Product Warranties | 96 |
| 5.4. | Collective Bargaining Agreements and Retiree Benefit Plans | 96 |
| 5.5. | Damages Upon Rejection | 97 |
| 5.6. | Corporate Indemnities | 97 |

**ARTICLE VI ACCEPTANCE OR REJECTION OF THE PLAN** .......... 98
| 6.1. | Each Impaired Class Entitled To Vote Separately | 98 |
| 6.2. | Acceptance By Impaired Classes Of Claims | 98 |
| 6.3. | Acceptance Pursuant To Section 524 Of The Bankruptcy Code | 98 |
| 6.4. | Presumed Acceptance Of Plan | 98 |
| 6.5. | Presumed Rejection Of Plan | 98 |
| 6.6. | Votes With Respect to U.K. Debtors | 98 |
| 6.7. | Confirmability And Severability Of The Plan | 99 |

**ARTICLE VII CONDITIONS TO CONFIRMATION AND EFFECTIVENESS** .......... 100
| 7.1. | Conditions To Confirmation | 100 |
| 7.2. | Conditions To Effectiveness | 102 |

**ARTICLE VIII IMPLEMENTATION OF THE PLAN** .......... 103
| 8.1. | Matters Involving U.K. Debtors | 103 |
| 8.2. | Continued Corporate Existence | 104 |
| 8.3. | Federal-Mogul Corporation Securities and Corporate Governance | 104 |
| 8.4. | Ownership and Management of Affiliated Debtors | 107 |
| 8.5. | Dissolution Of Inactive Debtor Subsidiaries | 107 |
| 8.6. | Corporate Action | 108 |
| 8.7. | Vesting of Assets | 108 |
| 8.8. | Preservation of Rights Of Action | 108 |
| 8.9. | Setoffs. | 108 |
| 8.10. | Reorganized Federal-Mogul Secured Term Loan Agreement | 108 |
| 8.11. | Issuance of Reorganized Federal-Mogul Junior Secured PIK Notes | 109 |
| 8.12. | Exit Facilities | 109 |
| 8.13. | Issuance of Secured Surety Notes, Junior Secured Surety PIK Notes and Related Guarantees | 109 |
| 8.14. | Effectuating Documents And Further Transactions. | 110 |
| 8.15. | Distributions Under the Plan | 110 |
| 8.16. | The Administrators, Possible Marketing Procedures with Respect to Certain U.K. Businesses/Assets and Claims Against and Equity Interests in the U.K. Debtors | 112 |
| 8.17. | Distributions to Holders of Unsecured Claims Against U.S. Debtors and F-M UK Holding Limited. | 114 |
| 8.18. | Implementation of Federal-Mogul Bradford Limited Plan | 114 |
| 8.19. | Objections to Claims. | 115 |
| 8.20. | Release by Dan=Loc Group. On the Effective Date, each of the Dan=Loc Deed of Special Indemnity and the Dan=Loc Deed of Guarantee shall be deemed terminated by agreement and the Dan=Loc Group shall release any and all Claims, obligations and liabilities (including, but not limited to, Environmental Claims) whatsoever against any and all of the Debtors, their non-Debtor Affiliates and the Released Parties (i) under the Deed of Special Indemnity, (ii) under the Deed of Guarantee (iii) or otherwise, except that Asbestos Property Damage Claims against the Debtors that the Dan=Loc Group had under the Dan=Loc Deed of Special Indemnity and Dan=Loc Deed of Guarantee as of the Petition Date shall, to the extent that any such Claims are Allowed, be treated as Unsecured Claims under the Plan. In addition to releasing any Environmental Claims against the Debtors, Dan=Loc is also waiving and releasing any and all claims against four non-Debtor Affiliates that are parties to the 1997 Dan=Loc Asset Purchase Agreement. | 115 |

**TABLE OF CONTENTS**
(continued)

Page

**ARTICLE IX INJUNCTIONS, RELEASES AND DISCHARGE** ........................................................................**116**
9.1.    Discharge ........................................................................................................................116
9.2.    Releases ..........................................................................................................................117
9.3.    *The Supplemental Injunction, The Third Party Injunction and The Asbestos Insurance Entity Injunction* ........................................................................................................................118
9.4.    Reservation Of Rights ......................................................................................................123
9.5.    Disallowed Claims And Disallowed Equity Interests ........................................................123
9.6.    Exculpation .....................................................................................................................123

**ARTICLE X MATTERS INCIDENT TO PLAN CONFIRMATION** ...................................................**124**
10.1.    No Liability For Tax Claims .............................................................................................124
10.2.    No Successor Liability .....................................................................................................124
10.3.    Asbestos Insurance Actions ..............................................................................................124
10.4.    Supersedeas Bond Actions ...............................................................................................125
10.5.    Institution And Maintenance Of Legal And Other Proceedings ..........................................126
10.6.    Retention And Enforcement Of Trust Causes Of Action ...................................................126
10.7.    Preservation Of Insurance Claims .....................................................................................126

**ARTICLE XI MISCELLANEOUS** ........................................................................................................**126**
11.1.    Jurisdiction ......................................................................................................................126
11.2.    General Retention ............................................................................................................127
11.3.    Specific Purposes .............................................................................................................127
11.4.    Interpretation of Certain Terms ........................................................................................129
11.5.    The Official Committees And The Future Claimants Representative ....................................129
11.6.    Revocation Of Plan ..........................................................................................................130
11.7.    Modification Of Plan ........................................................................................................130
11.8.    Certain Provisions Regarding High River Limited Partnership ...........................................130
11.9.    Modification Of Payment Terms .......................................................................................131
11.10.    Entire Agreement ...........................................................................................................131
11.11.    Headings .......................................................................................................................131
11.12.    Administrative Claims Bar Date ......................................................................................131
11.13.    Governing Law ..............................................................................................................131
11.14.    No Interest .....................................................................................................................131
11.15.    Limitation On Allowance ................................................................................................131
11.16.    Estimated Claims ...........................................................................................................132
11.17.    Consent To Jurisdiction ..................................................................................................132
11.18.    Successors And Assigns ..................................................................................................132
11.19.    Non-Debtor Waiver of Rights .........................................................................................132
11.20.    Notices ..........................................................................................................................132

**ARTICLE XII POTENTIAL COMPROMISE AND SETTLEMENT WITH PNEUMO ABEX PARTIES** ........................................................................................................................**134**
12.1.    Introduction and Contingent Nature of Provisions .............................................................134
12.2.    Draft PA Transaction Proposal Provisions .........................................................................135

iii

Pursuant to 11 U.S.C. § 1121, the Debtors, the Unsecured Creditors Committee, the Asbestos Claimants Committee, the Future Claimants Representative, the Administrative Agent and the Equity Committee hereby jointly propose the following Third Amended Joint Plan of Reorganization in accordance with the provisions of Chapter 11, Title 11 of the United States Code:

# ARTICLE I
## DEFINITIONS, CONSTRUCTION OF TERMS, AND EXHIBITS

As used herein, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

**1.1.1.**    *1997 Flexitallic Asset Purchase Agreement* means that certain Asset Purchase Agreement, dated as of April 11, 1997, by and among T&N plc, Flexitallic Limited, Flexitallic Sealing Materials Ltd., Flexitallic, Inc., Goetze Vermogenswerwaltungs, GmbH, Flexitallic Canada Ltd., Ferodo a.s., Dan=Loc Corporation, Dan=Loc Limited, Delta 72 Unternehmenswerwaltungs GmbH, Frederique s.r.o., Dan=Loc (Canada) Ltd. and Dan=Loc Transitional, L.P.

**1.1.2.**    *Administrative Agent* means JPMorgan Chase Bank (formerly The Chase Manhattan Bank) as administrative agent under the Bank Credit Agreement.

**1.1.3.**    *Administration Claim* means, in relation to a U.K. Debtor, any Claim that ranks in the administration of that U.K. Debtor under the laws of the relevant part of the United Kingdom as an administration expense, including, without limitation, (a) the remuneration and expenses of the Administrators properly incurred by them as administrators of that U.K. Debtor as referred to in subsection 19(4) of the IA 1986; (b) any sums payable in respect of debts or liabilities incurred, while they were Administrators, under contracts entered into by them in carrying out their functions as administrators of that U.K. Debtor as referred to in subsection 19(5) of the IA 1986; and (c) any sums payable in respect of liabilities incurred, while they were Administrators, under contracts of employment adopted by the Administrators of that U.K. Debtor in carrying out their functions as administrators, to the extent that the liabilities are qualifying liabilities, for the purposes of subsection 19(6) of the IA 1986.

**1.1.4.**    *Administrative Claim* means any Claim for the payment of an Administrative Expense.

**1.1.5.**    *Administrative Expense* means (a) any cost or expense of administration of the Reorganization Cases under Section 503(b) of the Bankruptcy Code including, but not limited to (1) any actual and necessary postpetition cost or expense of preserving the Estates or operating the businesses of the Debtors, (2) any payment to be made under the Plan to cure a default on an assumed executory contract or unexpired lease, (3) any postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in the ordinary course of business, (4) any valid and allowed reclamation claims in accordance with Section 546(c) of the Bankruptcy Code, (5) compensation or reimbursement of expenses of professionals to the extent allowed by the Bankruptcy Court under Sections 328, 330(a) or 331 of the Bankruptcy Code, (6) the Indenture Trustee fees and expenses under the

terms of the respective Indentures and pursuant to Section 8.15.6 of this Plan; (7) all Claims arising under the DIP Facility; and (8) all Claims for adequate protection authorized and entitled to administrative expense status pursuant to the DIP Facility; and (b) any fee or charge assessed against the Estates under 28 U.S.C. § 1930.

      **1.1.6.**   *Administrators* means, in relation to a U.K. Debtor, the administrators appointed by the U.K. Court from time to time in respect of that U.K. Debtor.

      **1.1.7.**   *Affiliate* shall have the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code, and when used with reference to any Debtor, shall include, but not be limited to, each of the entities listed in Exhibit 1.1.7 to the Plan.

      **1.1.8.**   *Affiliate Claims* means all prepetition Claims against any of the Debtors held by a Debtor or non-debtor Affiliate, or any interest held by such entities in any property of the Debtors, but excluding Equity Interests and the Convertible Subordinated Debentures.

      **1.1.9.**   *Affiliated Subsidiaries* means the subsidiaries of the Debtors or their Affiliates in which the Debtors or their Affiliates own greater than 5% but less than 20% of the outstanding voting securities of such entity, each of which is listed in Exhibit 1.1.9 of the Plan.

      **1.1.10.**   *Allowed* means:

      **1.1.9.1.**   With respect to any Claim (other than an Administrative Claim, an Administration Claim, an Asbestos Personal Injury Claim, a Bonded Claim or an Other U.K. Claim), (a) any Claim that is specifically designated as Allowed under this Plan, (b) any Claim that has been, or hereafter is, listed in the Schedules as liquidated in amount and not disputed or contingent or (c) any Claim, proof of which was timely filed in a liquidated non-contingent amount with the Bankruptcy Court or its duly appointed claims agent, or, in compliance with any order of the Bankruptcy Court regarding the filing of a proof of claim and with respect to which either (i) no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court or (ii) the Claim has been allowed by a Final Order (but only to the extent so allowed).

      **1.1.9.2.**   With respect to an Asbestos Personal Injury Claim other than a Bonded Claim, the amount of any such Claim that is determined pursuant to the procedures set forth in the Asbestos Personal Injury Trust Distribution Procedures or, if applicable, pursuant to a Final Order of the Bankruptcy Court or the U.K. Court. An Asbestos Personal Injury Claim that is Allowed in accordance with the foregoing, shall be, and be deemed to be, a judgment determining the legal liability against the Trust in the Allowed Amount of such Asbestos Personal Injury Claim.

      **1.1.9.3.**   With respect to any Bonded Claim, any Claim that qualifies as a Bonded Claim under the applicable definitions of the Plan, with respect to which the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or the applicable Debtor or Reorganized Debtor and the holder of such Claim agree, that such holder is entitled to some or all of the proceeds of the applicable supersedeas bond or other payment assurance (but only to the extent so ordered or agreed). A Bonded Claim that is "Allowed" shall

constitute a final, non-appealable judgment determining the legal liability of the Debtors or their Estates, as applicable.

   **1.1.9.4.** With respect to any Claim that is asserted to constitute an Administrative Expense (a) a Claim that represents an actual and necessary expense of preserving the estate or operating the business of the Debtors, to the extent such Claim is determined by the Plan Proponents to constitute an Administrative Expense; (b) other than with respect to a Claim of a professional person employed under Sections 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code, a Claim that the Plan Proponents do not believe constitutes an Administrative Expense, and such Claim is allowed in whole or in part by a Final Order of the Bankruptcy Court and only to the extent that such allowed portion is determined pursuant to a Final Order to constitute a cost or expense of administration under Sections 503(b) and 507(a)(1) of the Bankruptcy Code; or (c) that represents a Claim of a professional person employed under Sections 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation or reimbursement of expenses pursuant to Section 330 of the Bankruptcy Code, to the extent such Claim is allowed by a Final Order of the Bankruptcy Court under Section 330 of the Bankruptcy Code.

   **1.1.9.5.** With respect to any Claim that is asserted to constitute an Administration Claim, a Claim that is non-contingent and (i) is properly and reasonably accepted as an Administration Claim by the Administrators or (ii) to the extent that it is determined to be an Administration Claim by a Final Order of the U.K. Court having competent jurisdiction over the matter.

   **1.1.9.6.** With respect to any Other U.K. Claim, the amount of such Claim that is non-contingent and (i) is properly and reasonably accepted by the Administrators or Voluntary Arrangement Supervisors, as applicable, of the relevant U.K. Debtor as owing by that U.K. Debtor, (ii) is accepted by the relevant Reorganized U.K. Debtor as owing by that U.K. Debtor or (iii) that is determined to be such by Final Order of the U.K. Court pursuant to the terms of the Scheme of Arrangement and/or Voluntary Arrangement, as applicable, for such U.K. Debtor.

   **1.1.9.7.** With respect to any Equity Interest, the shares of common and/or preferred stock of the Debtors held by any Person as of the Record Date.

  **1.1.11.** *Allowed Amount* means, with respect to any Claim, the amount in which that Claim is Allowed, denominated in dollars (in the case of a U.S. Debtor) or pounds sterling (in the case of a U.K. Debtor).

  **1.1.12.** *Asbestos Claimants Committee* means the Official Committee of Asbestos Claimants appointed in the Reorganization Cases by the United States Trustee.

  **1.1.13.** *Asbestos In-Place Insurance Coverage* means any insurance coverage available for the payment or reimbursement of liability, indemnity or defense costs arising from

or related to Asbestos Personal Injury Claims or Trust Expenses under any Asbestos Insurance Policy or any Asbestos Insurance Settlement Agreement.

**1.1.14.** *Asbestos Insurance Action* means any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, against any Asbestos Insurance Company, arising from or related to: (a) any such Asbestos Insurance Company's failure to provide or pay under Asbestos In-Place Insurance Coverage, (b) the refusal of any Asbestos Insurance Company to compromise and settle any Asbestos Personal Injury Claim under or pursuant to any Asbestos Insurance Policy, or (c) the interpretation or enforcement of the terms of any Asbestos Insurance Policy with respect to any Asbestos Personal Injury Claim; provided, however, Asbestos Insurance Action shall not include any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction against any Asbestos Insurance Company for reimbursement, indemnity, breach of contract for insurance, statutory and common law bad faith or otherwise arising from or relating to any payments made by the Debtors on account of Asbestos Personal Injury Claims prior to the Petition Date.

**1.1.15.** *Asbestos Insurance Action Recoveries* means (a) Cash derived from and paid pursuant to Asbestos Insurance Settlement Agreements entered into prior to the Confirmation Hearing, (b) the right to receive proceeds of Asbestos In-Place Insurance Coverage and (c) the right to receive the proceeds or benefits of any Asbestos Insurance Action.

**1.1.16.** *Asbestos Insurance Company* means any insurance company, insurance broker or syndicate insurance broker, guaranty association or any other Entity with liability under an Asbestos Insurance Policy, including any reinsurers with respect to claims covered by an Asbestos Insurance Policy.

**1.1.17.** *Asbestos Insurance Entity Injunction* means the injunction described in Section 9.3.3 of the Plan.

**1.1.18.** *Asbestos Insurance Policy* means (a) any insurance policy (other than the Hercules Policy and the EL Policy) in effect at any time on or before the Effective Date naming the Debtors (or any predecessor, subsidiary, or past or present Affiliate of the Debtors) as an insured, or otherwise affording the Debtors indemnity or insurance coverage, upon which any claim has been or may be made with respect to any Asbestos Personal Injury Claim or (b) any reinsurance agreement relating to an Asbestos Insurance Policy as defined in (a) above to which an Asbestos Insurance Company is a party.

**1.1.19.** *Asbestos Insurance Settlement Agreement* means any settlement agreement with a Settling Asbestos Insurance Company relating to any Asbestos Personal Injury Claim.

**1.1.20.** *Asbestos Personal Injury Claim* means a liquidated or unliquidated claim against one or more of the Debtors or their non-Debtor Affiliates, or their present or former officers, directors or employees of any of them, whether asserted by agents or employees of the Debtors or their non-Debtor Affiliates or any other Person or Entity, whether in the nature of or sounding in tort, contract, warranty, employer liability or any other theory of law, equity or admiralty, whatsoever, for, attributable to or arising under the laws of any jurisdiction, by reason

4

of, directly or indirectly, physical, emotional or other personal injuries or other damages caused, or allegedly caused, in whole or in part, directly or indirectly, by the presence of, or exposure to, asbestos – including, but not limited to, asbestos-containing products, automotive or industrial parts and components, equipment, manufacturing processes, improvements to real property or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors or their non-Debtor Affiliates or the predecessors of any of them – and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, their non-Debtor Affiliates or the predecessors of any of them, including, but not limited to, all claims, debts, obligations or liabilities for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general and special damages) and punitive damages. Asbestos Personal Injury Claims shall include, without limitation, (i) Indirect Asbestos Personal Injury Claims, (ii) Asbestos Personal Injury Demands, (iii) any Claim or Demand based upon, arising under or attributable to an asbestos personal injury settlement agreement or protocol entered into by CCR on behalf of one or more of the Debtors, (iv) any Claims asserted by CCR against the Debtors or their non-Debtor Affiliates excluding any Claim asserted by the CCR for postpetition fees and expenses incurred in connection with these bankruptcy cases and (v) any Claim or Demand by an EL Insurer or Hercules Insurer or any of their reinsurers for premium, indemnity, reimbursement, contribution, fees, expenses or otherwise in connection with their respective policies or Asbestos Personal Injury Claims. Notwithstanding the foregoing, Asbestos Personal Injury Claims shall not include Bonded Asbestos Personal Injury Claims or the CCR Bond Claim, but shall include the unsecured deficiency, if any, of any Bonded Asbestos Personal Injury Claim or the CCR Bond Claim. For purposes of this Section 1.1.20 only, the term non-Debtor Affiliates shall mean Affiliates of the Debtors on or prior to the Effective Date that are not Debtors.

> **1.1.21.** *Asbestos Personal Injury Demand or Demand* means a demand as such term is used and defined in Section 524(g)(5) of the Bankruptcy Code, including a demand for payment, present or future, that (i) was not a Claim prior to the Effective Date; (ii) arises out of the same or similar conduct or events that gave rise to an Asbestos Personal Injury Claim or the Claims addressed by the Supplemental Injunction, the Third Party Injunction or the Asbestos Insurance Entity Injunction; and (iii) pursuant to the Plan, is to be satisfied exclusively by the Trust.

> **1.1.22.** *Asbestos Personal Injury Expenses* means all costs, taxes and expenses of or imposed on the Trust attributable or allocable to Asbestos Personal Injury Claims, including, but not limited to, trustee compensation, employee compensation, insurance premiums, legal, accounting and other professional fees and expenses, overhead, disbursements, and expenses relating to the implementation of the Asbestos Personal Injury Trust Distribution Procedures, but excluding payments to holders of Asbestos Personal Injury Claims on account of such Claims or Demands, or reimbursements of such payments.

> **1.1.23.** *Asbestos Personal Injury Trust Distribution Procedures* means the Asbestos Personal Injury Trust Distribution Procedures substantially in the form attached to the Trust Agreement, or as subsequently modified or amended.

**1.1.24.** *Asbestos Property Damage Claim* means a liquidated or unliquidated Claim against, or any debt, obligation or liability of one or more of the Debtors, arising under the laws of any jurisdiction, whether in the nature of or sounding in tort, contract, warranty or any other theory of law, equity or admiralty, for, attributable to or arising by reason of, directly or indirectly, property damages, including, but not limited to, diminution in the value thereof, or environmental damage or economic loss caused or allegedly caused, directly or indirectly, by asbestos - including, but not limited to, asbestos-containing products, automotive or industrial parts and components, equipment, manufacturing processes, improvements to real property or materials manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by one or more of the Debtors or their predecessors – and arising or allegedly arising, directly or indirectly, from acts or omissions of one or more of the Debtors, or their predecessors, including, but not limited to, all claims, debts, obligations or liabilities for compensatory and punitive damages, and also including, without limitation, any claim for contribution, reimbursement, subrogation or indemnity, whether contractual or implied by law, attributable to Asbestos Property Damage Claims.  Asbestos Property Damage Claims shall exclude all Asbestos Personal Injury Claims.

**1.1.25.** *Asbestos Property Damage Claimants Committee* means the Official Committee of Asbestos Property Damage Claimants appointed in the Reorganization Cases by the United States Trustee.

**1.1.26.** *Avoidance Litigation* means the adversary proceeding filed or to be filed which seeks or will seek to, among other things, avoid the Liens securing the Surety Claims.

**1.1.27.** *Bank Claims* means any and all obligations, rights, claims or interests, whether secured or unsecured, matured or unmatured, fixed or contingent, including, but not limited to, principal, accrued and unpaid interest, charges, costs, breakage fees, counsel fees, contingent reimbursement obligations under unfunded or partially drawn letters of credit, and any and all other rights to payment of money arising under, based upon or related to the Bank Credit Agreement.

**1.1.28.** *Bank Credit Agreement* means that certain Fourth Amended and Restated Credit Agreement and related Loan Documents as therein defined, dated as of December 29, 2000, as such Agreement has been amended, supplemented or otherwise modified from time to time thereafter among Federal-Mogul Corporation, certain Affiliate Debtors and non-Debtor Affiliates, a syndicate of lenders and the Administrative Agent.

**1.1.29.** *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Reorganization Cases.

**1.1.30.** *Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware.

**1.1.31.** *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as in effect on the Petition Date, together with all

amendments and modifications thereto that were subsequently made applicable to the Reorganization Cases.

**1.1.32.**    ***Bonded Asbestos Personal Injury Claim*** means an Asbestos Personal Injury Claim evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor as security for such Claim, and only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or the applicable Reorganized Debtor and the holder of such Bonded Asbestos Personal Injury Claim agree, that such holder is entitled to some or all of the proceeds of the supersedeas bond or other payment assurance. Bonded Asbestos Personal Injury Claims shall not include the CCR Bond Claim.

**1.1.33.**    ***Bonded Claim*** means any Bonded Asbestos Personal Injury Claim, Bonded Non-Asbestos Claim or the CCR Bond Claim, but shall not include the unsecured deficiency, if any, of any such Claims.

**1.1.34.**    ***Bonded Non-Asbestos Claim*** means any Claim, other than an Asbestos Personal Injury Claim or a CCR Bond Claim, evidenced by a judgment as to which, but only to the extent that, a supersedeas bond or equivalent form of payment assurance was posted by a Debtor as security for such Claim, and only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or the applicable Reorganized Debtor and the holder of such Bonded Non-Asbestos Claim agree, that such holder is entitled to some or all of the proceeds of the supersedeas bond or other payment assurance.

**1.1.35.**    ***Business Day*** means any day other than a Saturday, Sunday or legal holiday (as such term is defined in Bankruptcy Rule 9006(a)) or any public holiday in the U.K.

**1.1.36.**    ***Cash*** means lawful currency of the United States of America and its equivalents as to the U.S. Debtors, and pounds sterling and its equivalents as to the U.K. Debtors.

**1.1.37.**    ***CCR*** means the Center for Claims Resolution, a Delaware non-profit corporation.

**1.1.38.**    ***CCR Bond Claim*** means any claim in favor of CCR as obligee under or with respect to the CCR Surety Bonds, but only to the extent that the Bankruptcy Court or other court of competent jurisdiction determines by Final Order, or the applicable Debtors or Reorganized Debtors, CCR and the Plan Proponents agree that CCR is entitled to some or all of the proceeds of the CCR Surety Bonds.

**1.1.39.**    ***CCR Litigation*** means Adversary Proceeding 01-8885 and the claims asserted therein to, among other things, determine the CCR's rights, if any, to draw on the CCR Surety Bonds.

**1.1.40.**    ***CCR Surety Bonds*** means Performance Bond No. 6066092 issued by Safeco in favor of CCR, Performance Bond Nos. 103529126 and 103529229 REL issued by Travelers in favor of CCR, and Performance Bond No. 929182983 issued by National Fire in favor of CCR.

**1.1.41.**     *Claim* shall have the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code, and shall include, but not be limited to, Asbestos Personal Injury Claims and interests other than Equity Interests.

**1.1.42.**     *Class* means a category of Claims or Equity Interests pursuant to the Plan, as such term is used and described in Section 1122 of the Bankruptcy Code.

**1.1.43.**     *Collateral Trustee* means the Persons serving as trustees of collateral pledged as security for the Bank Claims, Noteholder Claims and Surety Claims, as applicable, pursuant to, among other things, the Bank Credit Agreement and related documents.

**1.1.44.**     *Company Specific Distribution Ratio* means, with respect to a U.K. Debtor, a ratio, the numerator of which shall be: (i) the value of the referenced U.K. Debtor's assets as estimated on Exhibit L of the Disclosure Statement if the Consensual Marketing Procedures are not performed for the referenced U.K. Debtor or (ii) the Market Value of the referenced U.K. Debtor's assets if the Consensual Marketing Procedures are performed for the referenced U.K. Debtor, and the denominator of which shall be the tort system value (as reflected in the Asbestos Personal Injury Trust Distribution Procedures) of all Asbestos Personal Injury Claims against the referenced U.K. Debtor and the Allowed Amount of all other Claims against the referenced U.K. Debtor.

**1.1.45.**     *Confirmation* or *Confirmation of the Plan* means the entry of an order approving the Plan in accordance with Section 1129 of the Bankruptcy Code.

**1.1.46.**     *Confirmation Date* means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.1.47.**     *Confirmation Hearing* means the hearing(s) which will be held before the Bankruptcy Court and/or District Court, as applicable, in which the Plan Proponents will seek Confirmation of the Plan.

**1.1.48.**     *Confirmation Order* means the order confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code.

**1.1.49.**     *Consensual Marketing Procedures* means the process by which Federal-Mogul Corporation, by agreement with the Administrators, shall retain those businesses and/or assets of the U.K. Debtors that are valuable to Federal-Mogul Corporation and its customers and by which those businesses and/or assets of the U.K. Debtors that are not valuable to Federal-Mogul Corporation and its customers may be marketed and sold to third-party purchasers as more fully described in Section 8.16.1 of the Plan.

**1.1.50.**     *Convertible Subordinated Debentures* means the 7% Convertible Junior Subordinated Debentures due 2027 in the original aggregate principal amount of $575,000,000 issued by Federal-Mogul Corporation on December 1, 1997, and sold to Federal-Mogul Financing Trust, the indenture trustee for which is currently The Bank of New York.

**1.1.51.**     *CRU* means the Compensation Recovery Unit under the U.K. Social Security (Recovery of Benefits) Act 1997.

**1.1.52.** *Dan=Loc Deed of Guarantee* means that certain Deed of Guarantee, dated as of April 11, 1997, by and among T&N plc, and Dan=Loc Corporation, Dan=Loc, Inc., Dan=Loc Limited, Delta 72 Unternehmenswerwaltungs GmbH, Frederique s.r.o., Dan=Loc (Canada) Ltd., Dan=Loc Investments, Inc. and Dan=Loc Transitional, L.P.

**1.1.53.** *Dan=Loc Deed of Special Indemnity* means that certain Deed of Special Indemnity, dated as of April 11, 1997, by and among T&N plc, Flexitallic Limited, Flexitallic Sealing Materials Ltd., Flexitallic, Inc., Goetze Vermogenswerwaltungs, GmbH, Flexitallic Canada Ltd., Ferodo a.s., Dan=Loc Corporation, Dan=Loc Limited, Delta 72 Unternehmenswerwaltungs GmbH, Frederique s.r.o., Dan=Loc (Canada) Ltd. and Dan=Loc Transitional, L.P.

**1.1.54.** *Dan=Loc Group* means Dan=Loc Corporation and its subsidiaries or affiliates and their respective successors, including but not limited to, The Flexitallic Group, Inc. and its subsidiaries and affiliates.

**1.1.55.** *Dan=Loc Indemnified Indirect Asbestos Personal Injury Claims and Demands* means any Asbestos Personal Injury Claim or Demand that is both: (A)(i) based upon exposure, occurring at any time, to an asbestos containing product which was manufactured, distributed, or sold prior to April 11, 1997 by GHI or any other Debtor, that has been, is or could be asserted against the Dan=Loc Group or (ii) based upon exposure, prior to April 11, 1997, to asbestos present in the internal or external fabric of any building owned or leased by GHI or any other Debtor and which was acquired or leased by the Dan=Loc Group from GHI or any other Debtor under the terms of the 1997 Flexitallic Asset Purchase Agreement, that has been, is or could be asserted against the Dan=Loc Group; and (B) is an "Asbestos Related Claim" (as such term is defined in the Dan=Loc Deed of Special Indemnity) subject to indemnification by GHI under Section 2.2 of the Dan=Loc Deed of Special Indemnity and Section 2.2 of the Dan=Loc Deed of Guarantee (copies of which are attached hereto as Exhibit 1.1.55). Dan=Loc/GHI Indemnified Asbestos Personal Injury Claims and Demands shall also include any Asbestos Personal Injury Claims and Demands asserted in connection with any asbestos containing product manufactured, distributed or sold by GHI or any other Debtor prior to April 11, 1997, which Asbestos Personal Injury Claim also alleges exposure to any asbestos containing product manufactured, distributed or sold by the Dan=Loc Group on or after April 11, 1997, and which Asbestos Personal Injury Claim is based upon exposure to asbestos from such product during a period of time both prior to and after April 11, 1997, but only to the extent of the percentage allocable to GHI or any other Debtor pursuant to and in accordance with the sharing provisions set forth in Section 2.5 of the Dan=Loc Deed of Special Indemnity; provided, however, that in no event shall Dan=Loc Indemnified Indirect Asbestos Personal Injury Claims and Demands include any Claims or Demands made against the Dan=Loc Group at any time after April 11, 2024.

**1.1.56.** *Debtors* means Federal-Mogul Corporation and its affiliated U.S. Debtors and U.K. Debtors (or any of them as the context may require).

**1.1.57.** *Debtors in Possession* means the Debtors (or any of them as the context may require) in their capacities as debtors in possession in the Reorganization Cases.

**1.1.58.**    *DIP Facility* means that certain Revolving Credit, Term Loan and Guaranty Agreement, by, between and among the U.S. Debtors and a syndicate of lenders, with The Chase Manhattan Bank as administrative agent, and those certain Tranche C Loans (as defined in the Final Order approving the DIP Facility), which the Bankruptcy Court authorized through a Final Order issued on November 21, 2001, and as amended and restated on or about August 7, 2003.

**1.1.59.**    *Disbursing Agent* means Reorganized Federal-Mogul or any Person selected by Reorganized Federal-Mogul (with approval of the Bankruptcy Court) to hold and distribute the consideration to be distributed to the holders of Allowed Claims (other than Allowed Asbestos Personal Injury Claims) or Allowed Equity Interests under the Plan. Disbursing Agent does not include any Indenture Trustee relating to the Notes or the Indentures.

**1.1.60.**    *Discharge Injunction* means the injunction described in Section 1141 of the Bankruptcy Code and contained in Section 9.1.2 of the Plan.

**1.1.61.**    *Disclosure Statement* means the Disclosure Statement Describing Third Amended Joint Plan Of Reorganization, dated May __, 2004, including all exhibits, appendices, schedules and annexes attached thereto, as submitted by the Plan Proponents pursuant to Section 1125 of the Bankruptcy Code and approved by the Bankruptcy Court, as such Disclosure Statement may be further amended, supplemented or modified from time to time.

**1.1.62.**    *Distribution Date* when used with respect to an Allowed Claim (other than an Asbestos Personal Injury Claim that is not a Bonded Asbestos Personal Injury Claim), means the date which is as soon as reasonably practicable after the later of: (a) the Effective Date, and (b) the first Business Day of the next calendar quarter after the date upon which the Claim becomes Allowed, unless the Claim becomes Allowed within fifteen Business Days before the first Business Day of the next calendar quarter, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar quarter.

**1.1.63.**    *District Court* means the United States District Court for the District of Delaware, or the unit thereof having jurisdiction over the matter in question.

**1.1.64.**    *Effective Date* means, and shall occur on, the first Business Day immediately following the first day upon which all of the conditions precedent to occurrence of the Effective Date contained in Article 7.2 of the Plan have been satisfied or waived, and on which date all acts, events, terms and conditions contemplated under the Plan to occur on the Effective Date or as soon as practicable thereafter shall be deemed to have occurred simultaneously.

**1.1.65.**    *EL Coverage* means insurance policies held on account of the ELA that afford or may afford T&N Limited and any applicable U.K. Debtors with rights of indemnity or insurance coverage with respect to, among other things, any Asbestos Personal Injury Claim asserted by an employee or former employee relating to exposure to asbestos in the course of such individual's employment.

10

**1.1.66.** *EL Coverage Expiry Date* has the meaning set forth in Section 4.5.1 of the Plan (but subject to Section 8.16.3).

**1.1.67.** *EL Insurer* means any insurer with respect to the EL Coverage.

**1.1.68.** *EL Policy* means any insurance policy with respect to EL Coverage.

**1.1.69.** *ELA* means the Employers Liability Act 1969 of the United Kingdom, as amended from time to time.

**1.1.70.** *Employee Benefit Plan* means any employment, compensation, pension, healthcare (including, but not limited to, medical, surgical, hospital, dental and counseling), bonus, incentive compensation, sick leave and other leaves (including, but not limited to, jury duty, child-bearing and military service), vacation pay, expense reimbursement, dependent care, retirement, savings, workers compensation, life insurance, disability, dependent care, dependent healthcare, education, car allowance, miscellaneous executive benefits, severance or other benefit plan or arrangement for the benefit of the directors, officers or employees (whether salaried or hourly, active or retired) of the applicable Debtor, but excluding (i) the New Employment Agreements and (ii) that portion of the Debtors' non-tax qualified pension plans giving rise to Excluded Non-Qualified Pension Claims.

**1.1.71.** *Entity* means any Person, estate, trust, Governmental Unit, or the United States Trustee.

**1.1.72.** *Environmental Claim* means any Claim, other than an Asbestos Personal Injury Claim, asserted by any Governmental Unit or Person, arising out of, related to, or based upon any Environmental Law, including, but not limited to, any Claim (a) to restrict or enjoin, or recover damages, costs or expenses to remedy any release or threatened release of any environmental pollution, contamination or nuisance or to require the Debtors or their non-debtor Affiliates to remedy or to reimburse, pay or incur costs to remedy any release or threatened release of any environmental pollution, contamination or any nuisance; (b) to remedy, reimburse, compensate or pay any damage, penalty, fine or forfeiture for, or to restrict or enjoin any violation of, or alleged violation of, any Environmental Law; (c) to pay any contractual claim with respect to any Environmental Law; or (d) to pay or reimburse any such Entity for personal injury (including workers compensation, sickness, disease or death), tangible or intangible property damage or natural resource damage arising out of, relating to, or based upon any release or threatened release of any environmental pollution, contamination or nuisance, whether or not contemplated in subsections (a) through (c) above, including, but not limited to, any related Asbestos Property Damage Claim. For purposes of the Plan, prepetition Environmental Claims fall into one of two categories – (x) Claims arising from or related to property either never owned or occupied, or formerly but no longer owned or occupied by the Debtors ("Off-Site Environmental Claims"), and (y) Claims arising from or related to property currently owned or occupied, and that will continue to be owned or occupied by the Debtors after Confirmation of the Plan, excluding, however, any Claims arising from or relating to wastes or other materials which were shipped or were arranged to be shipped for disposal to a site that was never owned or occupied, or was formerly owned or occupied but is no longer owned or occupied by the Debtors

("On-Site Environmental Claims"). A schedule of all known On-Site Environmental Claims is set forth in Exhibit 1.1.72 to the Plan.

**1.1.73.** *Environmental Laws* means (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C., §§ 9601, et seq., (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, et seq., (c) the Clean Air Act, 42 U.S.C. §§ 7401, et seq., (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, et seq., (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, et seq., (f) the Environmental Protection Act of 1990, the Environment Act 1995, the Control of Pollution Act 1974, the Planning (Hazardous Substances) Act 1990, the Radioactive Substances Act 1993, the Clean Air Act 1993, the Water Resources Act 1991, the Water Industry Act 1991, the Health and Safety at Work, etc. Act 1974 and the Public Health Act 1936 (all of the United Kingdom) as the same may from time to time be amended or reenacted, and all orders and regulations from time to time made thereunder, (g) all statutes, laws, rules or regulations issued or promulgated by any Governmental Unit or court (including, without limitation, the common law), as they may be amended from time to time, relating to the protection and/or prevention of harm, contamination or pollution of or to the environment (including, without limitation, ecological systems and living organisms including humans and the following media whether alone or in combination: air (including air within buildings), water (including water under or within land or in pipe or sewage systems), land, buildings and soil) and (h) the ordinances, rules, regulations, orders, notices of violation, requests, demands and requirements issued or promulgated by any Governmental Unit in connection with such statutes or laws.

**1.1.74.** *Equity Committee* means the Official Committee of Equity Security Holders of Federal-Mogul Corporation appointed in the Reorganization Cases by the United States Trustee.

**1.1.75.** *Equity Interest* means any equity interest in the Debtors represented by (a) existing Federal-Mogul common or preferred stock as classified in Classes 1M and 1O below or (b) shares of capital stock in the remaining Debtors, whether or not issued.

**1.1.76.** *Estate* means, as to each Debtor, the estate created for that Debtor under Section 541 of the Bankruptcy Code upon the commencement of its Reorganization Case.

**1.1.77.** *Excluded Non-Qualified Pension Claims* means any Claims based upon or arising out of the Debtors' non-tax qualified pension plans in which the existing or prior employee was entitled to receive more than $3,500 per month, but for which such employee has received or will receive only $3,500 per month pursuant to the Bankruptcy Court's order entered on April 30, 2002 (Docket No. 1655), all of which Claims shall be classified and treated as Unsecured Claims; provided, however, that the claims of James Zamoyski, Wilhelm Schmelzer and Richard Randazzo, respectively, based upon the Supplemental Key Executive Pension Plan of Federal-Mogul Corporation shall not be subject to the aforementioned $3,500 per month limitation as provided in the Bankruptcy Court's order entered on August 9, 2002 (Docket No. 582591721).

**1.1.78.**   *Exit Facilities* means the agreements described in Section 8.12 below providing for one or more credit facilities in an amount not to exceed $1 billion, exclusive of amounts used, if any, to refinance the Tranche C portion of the DIP Facility including, without limitation, amounts on any draws prior to the Effective Date on letters of credit outstanding under the Tranche C Loans, which shall be used to repay obligations under the DIP Facility on the Effective Date, make cash payments required under the Plan and/or provide working capital for the business operations of the Reorganized Debtors.

**1.1.79.**   *Final Order* means an order or judgment of any court of competent jurisdiction, the implementation, operation or effect of which has not been stayed and as to which order (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or writ of certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari has been taken and is pending.

**1.1.80.**   *FM Ignition Pension Plan* means the pension scheme known as the Champion Pension Scheme, a defined benefit plan operated by Federal-Mogul Ignition (U.K.) Limited for eligible employees.

**1.1.81.**   *FM Ignition Pension Plan Trustees* means the trustees for the time being of the FM Ignition Pension Plan and, as of the date hereof, being Ann Hearn Associates Limited, Joseph Breitenbeck, Ian Emery, Christine Goffogg, Nigel Reid and Richard Green.

**1.1.82.**   *Future Claimants Representative* means Eric D. Green (or any court-appointed successor) who was appointed by the Bankruptcy Court in the Reorganization Cases pursuant to an Order dated February 11, 2002 as the legal representative of any and all persons described in Section 524(g)(4)(B)(i) of the Bankruptcy Code who may assert demands for asbestos-related personal injuries, as that term is defined in Section 524(g)(5) of the Bankruptcy Code.

**1.1.83.**   *GHI* means Gasket Holdings Inc. (f/k/a Flexitallic, Inc.).

**1.1.84.**   *Governmental Unit* means any domestic, foreign, provincial, federal, state, local or municipal (a) government, or (b) governmental agency, commission, department, bureau, ministry or other governmental entity.

**1.1.85.**   *Hercules Insurance Recoveries* means all such amounts as are referred to in clauses (b) and (c) of the definition of "Hercules Policy Expiry Date".

**1.1.86.**   *Hercules Insurers* means Curzon Insurance Limited in its capacity as insurer under the Hercules Policy.

**1.1.87.**   *Hercules Policy* means the Asbestos Liability Policy number CZ 7/96 ASB/096 dated December 30, 1996 and made among T&N Limited (then known as "T&N plc") and Curzon Insurance Limited.

**1.1.88.**   *Hercules Policy Expiry Date* means (subject to Section 8.16.3) the date that is the earlier of (i) the date that (a) the £690 million retention has been satisfied, (b) the £500 million layer of coverage under the Hercules Policy has been exhausted or is otherwise

determined by agreement, judicial proceedings or otherwise, to be unavailable and (c) all other amounts under or with respect to the Hercules Policy including, without limitation, amounts recoverable as a result of any breach by the Hercules Insurers of their obligations under or with respect to the Hercules Policy, to the extent they exceed the £500 million layer of coverage, are recovered or are otherwise determined to be unavailable, or (ii) the date that the Hercules Policy ceases to have effect, whether by commutation or otherwise.

      **1.1.89.** *Hercules-Protected Entities* means (a) Reorganized T&N Limited, (b) the Debtors listed as subsidiaries or subsidiary undertakings of T&N Limited in Schedule B to the Hercules Policy as reorganized under and pursuant to the Plan and (c) the non-Debtor companies listed as subsidiaries or subsidiary undertakings of T&N Limited in Schedule B to the Hercules Policy. Reorganized Hercules-Protected Entities means the companies identified in (a) and (b) above and Non-Debtor Hercules-Protected Entities means the companies identified in (c) above.

      **1.1.90.** *IA 1986* means the Insolvency Act 1986 of the United Kingdom, as amended from time to time.

      **1.1.91.** *Inactive Debtor Subsidiaries* means the affiliated Debtors listed on Exhibit 1.1.91 to the Plan, which may, at the discretion of their respective boards of directors and corporate parent companies, be liquidated, dissolved, wound-up, struck off and/or left in existence after Confirmation.

      **1.1.92.** *Indenture Trustees* means the Persons serving as trustees under the Indentures for the Notes and for the Convertible Subordinated Debentures.

      **1.1.93.** *Indentures* means the indenture agreements entered into between and among Federal-Mogul Corporation, the Indenture Trustees and certain other parties relating to each series of Notes and to the Convertible Subordinated Debentures, as amended, modified or supplemented from time to time.

      **1.1.94.** *Indirect Asbestos Personal Injury Claim* means any Asbestos Personal Injury Claim for contribution, reimbursement, subrogation or indemnity, whether contractual or implied by law (as those terms are defined by the applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative or indirect Asbestos Personal Injury Claim of any kind whatsoever, whether in the nature of or sounding in contract, tort, warranty or any other theory of law, equity or admiralty, whatsoever. Without limitation, Indirect Asbestos Personal Injury Claims include (i) Claims or Demands held or asserted by CCR against the Debtors or their Affiliates on its own behalf or on behalf of current or former members of CCR with respect to Asbestos Personal Injury Claims; (ii) Claims or Demands held or asserted by current or former members of CCR with respect to Asbestos Personal Injury Claims; (iii) Claims or Demands with respect to asbestos personal injury claims arising from or attributable to the 1998 acquisition by Federal-Mogul Products, Inc. ("F-M Products") of the stock of Moog Automotive, Inc. from Cooper Industries, Inc. ("Cooper"), and F-M Products' assumption of Cooper's pre-existing indemnity obligation in favor of Pneumo Abex Corporation in connection with such acquisition; (iv) Dan=Loc Indemnified Indirect Asbestos Personal Injury Claims and

14

Demands; (v) Claims or Demands held or asserted by any EL Insurer or the Hercules Insurers or any of their reinsurers; and (vi) Claims or Demands held or asserted by the CRU.

      **1.1.95.** *Injunctions* means the Discharge Injunction, the Supplemental Injunction, the Third Party Injunction, the Asbestos Insurance Entity Injunction and any other injunctions entered by Order of the Bankruptcy Court in the Reorganization Cases.

      **1.1.96.** *IR 1986* means the Insolvency Rules 1986 of the United Kingdom, as amended from time to time.

      **1.1.97.** *IRC* means the Internal Revenue Code of 1986, as amended.

      **1.1.98.** *Lien* means, with respect to any asset or property, any mortgage, lien, pledge, charge, security interest, encumbrance or other security device of any kind pertaining to or affecting such asset or property.

      **1.1.99.** *Market Value* means the value of certain or all of the U.K. Debtors as may be determined in accordance with the Consensual Marketing Procedures.

      **1.1.100.** *New Employment Agreements* means collectively, the new employment agreements and/or equity-based compensation and pension plans to be implemented by the Reorganized Debtors on and after the Effective Date.

      **1.1.101.** *Non-Priority Employee Benefit Claim* means any Claim that (i) arises from or relates to an Employee Benefit Plan or otherwise to the performance of service by an employee to the Debtors and (ii) is neither secured nor entitled to priority or preference to other Claims under the Bankruptcy Code or U.K. insolvency laws. For the avoidance of doubt, Non-Priority Employee Benefit Claims include claims described in Section 1114 of the Bankruptcy Code, except to the extent such retiree benefit claims (a) are entitled to priority under Section 503 of the Bankruptcy Code or (b) arise in connection with the termination or modification of any retiree benefit plan in accordance with Section 1114 of the Bankruptcy Code. Non-Priority Employee Benefit Claims shall not include: (w) Excluded Non-Qualified Pension Claims, (x) Non-Priority T&N Pension Plan Employee Benefit Claims, (y) Non-Priority FM Ignition Pension Plan Employee Benefit Claims or (z) any Claims arising out of the rejection of a collective bargaining agreement in accordance with Section 1113 of the Bankruptcy Code.

      **1.1.102.** *Non-Priority FM Ignition Pension Plan Employee Benefit Claim* means any Claim that arises from or relates to the FM Ignition Pension Plan and is neither secured nor entitled to priority or preference to other Claims under the Bankruptcy Code or U.K. insolvency laws. For the avoidance of doubt, Non-Priority FM Ignition Employee Benefit Claims include claims described in Section 1114 of the Bankruptcy Code except to the extent such retiree benefit claim is entitled to priority under Section 503 of the Bankruptcy Code.

      **1.1.103.** *Non-Priority T&N Pension Plan Employee Benefit Claim* means any Claim that arises from or relates to the T&N Pension Plan and is neither secured nor entitled to priority or preference to other Claims under the Bankruptcy Code or U.K. insolvency laws. For the avoidance of doubt, Non-Priority T&N Pension Plan Employee Benefit Claims include

claims described in Section 1114 of the Bankruptcy Code except to the extent such retiree benefit claim is entitled to priority under Section 503 of the Bankruptcy Code.

**1.1.104.** *Noteholder* means each Person holding or having a beneficial interest in any of the Notes as of the Record Date.

**1.1.105.** *Noteholder Claims* means all Claims of the Noteholders against Federal-Mogul Corporation arising under or evidenced by the Notes or the Indentures for the Notes and related documents. Notwithstanding the foregoing, Noteholder Claims shall not include any Convertible Subordinated Debenture Claims or Subordinated Securities Claims.

**1.1.106.** *Notes* means Federal-Mogul Corporation's 7.5% Notes due 2009, 7.375% Notes due 2006, 7.75% Notes due 2006, 7.875% Notes due 2010, 7.5% Notes due 2004, 8.8% Senior Notes due 2007, 8.37% Medium Term Notes due 2001, 8.25% Medium Term Notes due 2005, 8.33% Medium Term Notes due 2001, 8.12% Medium Term Notes due 2003, 8.16% Medium Term Notes due 2003 and 8.46% Medium Term Notes due 2002.

**1.1.107.** *Official Committees* means the Asbestos Claimants Committee, the Unsecured Creditors Committee, the Asbestos Property Damage Claimants Committee and the Equity Committee (or, in the singular, any of them).

**1.1.108.** *Other U.K. Claim* means Asbestos Property Damage Claims, if any, and any other Claims asserted against a U.K. Debtor other than an Administrative Claim, an Administration Claim, an Asbestos Personal Injury Claim, Bank Claims, Noteholder Claims and any Secured portion of the Surety Claims.

**1.1.109.** *Person* means any person, individual, partnership, corporation, limited liability company, joint venture company, association or other entity or being of whatever kind, whether or not operating or existing for profit, including, but not limited to, any "person" as such term is defined in Section 101(41) of the Bankruptcy Code, but excluding any Governmental Unit.

**1.1.110.** *Petition Date* means October 1, 2001 for all of the Debtors; provided, however, that for purposes of determining Administration Claims in the administration of T&N Investments Limited, or under such Debtor's Scheme of Arrangement and/or Voluntary Arrangement, Petition Date shall mean April 5, 2002.

**1.1.111.** *PIK Notes Trustee* means, as the context requires, the trustee or trustees under those certain Indentures of Trust pursuant to which the Reorganized Federal-Mogul Junior Secured PIK Notes and/or Junior Secured Surety PIK Notes are to be issued.

**1.1.112.** *Plan* means this Third Amended Joint Plan of Reorganization filed by the Plan Proponents, as the same may be amended or modified from time to time pursuant to Section 1127 of the Bankruptcy Code.

**1.1.113.** *Plan Documents* means all documents, attachments and exhibits related to the Plan, including, but not limited to, the Trust Documents, that aid in effectuating the

Plan, which documents, attachments and exhibits shall be filed by the Plan Proponents with the Bankruptcy Court on or before the Plan Documents Filing Date.

**1.1.114.    *Plan Documents Repository*** means the offices of Sidley Austin Brown & Wood LLP, counsel to the Debtors, at the address set forth in Section 1.4 of the Plan, at which any party in interest may review all of the Plan Documents after such Plan Documents have been filed with the Bankruptcy Court.

**1.1.115.    *Plan Documents Filing Date*** means the date for the filing of the Plan Documents (or any of them) which shall be either (a) the date, as determined by the Plan Proponents, that is as soon as practicable, but in no event later than 14 Business Days before the deadline for filing objections to Confirmation of the Plan or (b) such other date (or dates) as determined by the Bankruptcy Court.

**1.1.116.    *Plan Proponents*** means, collectively, the Debtors, the Unsecured Creditors Committee, the Asbestos Claimants Committee, the Future Claimants Representative, the Administrative Agent and the Equity Committee.

**1.1.117.    *Preferential Claims*** means, with respect to each U.K. Debtor, all Claims and liabilities which would have been preferential under Section 386 of and schedule 6 to the IA 1986, had an order for the compulsory winding-up of the Debtor been made on the Petition Date. To the extent that a Priority Tax Claim against a U.K. Debtor is included within the definition of Preferential Claims, such Claim or portion thereof, shall be treated as a Preferential Claim.

**1.1.118.    *Priority Claim*** means any Claim (other than an Administrative Claim or a Priority Tax Claim) to the extent such Claim is entitled to a priority in payment under Section 507(a) of the Bankruptcy Code.

**1.1.119.    *Priority Tax Claim*** means any Claim to the extent that such Claim is entitled to a priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**1.1.120.    *Pro Rata*** means the proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such Class except in cases where Pro Rata is used in reference to multiple classes in which case Pro Rata means the proportion that a Claim in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

**1.1.121.    *Proof of Claim*** means any proof of claim filed with the Bankruptcy Court or its duly appointed claims agent with respect to the Debtors pursuant to Bankruptcy Rules 3001 or 3002, unless and to the extent that the Bankruptcy Court has ordered the use of a special or customized form for the particular type of claim at issue, and in such case, the special or customized form proof of claim.

**1.1.122.    *Protected Party*** means any and all of the following parties:

**1.1.122.1**  the Debtors, their non-Debtor Affiliates (excluding, however, any person or Entity that may qualify as an Affiliate, but that is not commonly owned or controlled by the Debtors), the Affiliated Subsidiaries, Reorganized Federal-Mogul and the other

Reorganized Debtors and all of their respective past and present officers, directors and employees;

        **1.1.122.2**  the Noteholders and the holders of Bank Claims, together with their respective successors, past and present officers, directors and employees;

        **1.1.122.3**  any Entity which, pursuant to the Plan or after the Effective Date, becomes a direct or indirect transferee of, or successor to, any assets of the Debtors, Reorganized Federal-Mogul or the Trust, but only to the extent that a claim or liability is asserted against such Entity on account of its status as such transferee or successor;

        **1.1.122.4**  any Entity that, pursuant to the Plan or after the Effective Date, makes a loan to the Debtors, Reorganized Federal-Mogul, or the Trust, or to a successor to, or transferee of, any assets of the Debtors, Reorganized Federal-Mogul, or the Trust, but only to the extent that liability is asserted to exist by reason of such lending relationship or to the extent any Lien created in connection with such a loan is sought to be challenged or impaired;

        **1.1.122.5**  each Settling Asbestos Insurance Company named in the Confirmation Order and each contributor of funds, proceeds or other consideration to the Trust, but only to the extent specified in the Confirmation Order; and

        **1.1.122.6**  the Dan=Loc Group, but only to the extent specified in the Confirmation Order.

        **1.1.123.**  *Record Date* means the date that is five business days after the entry of the Bankruptcy Court's order approving the Disclosure Statement with respect to the Plan.

        **1.1.124.**  *Released Party* means each of (a) the Debtors, their non-Debtor Affiliates (excluding, however, any person or Entity that may qualify as an Affiliate, but that is not commonly owned or controlled by the Debtors), the Affiliated Subsidiaries, the Reorganized Debtors, and their respective present and former agents, attorneys, accountants, financial advisors, restructuring consultants and investment bankers (but specifically excluding Rothschild Inc.) and their respective successors or assigns, (b) the officers and directors of the Debtors, their non-Debtor Affiliates (excluding, however, any person or Entity that may qualify as an Affiliate, but that is not commonly owned or controlled by the Debtors), and the Affiliated Subsidiaries, who were serving as officers or directors on or after the Petition Date, (c) the Official Committees and their respective members, agents, attorneys, accountants, financial advisors, restructuring consultants and investment bankers, (d) the Future Claimants Representative and his agents, attorneys, accountants, financial advisors, restructuring consultants and investment bankers and (e) the holders of Noteholder Claims, holders of Bank Claims and the Administrative Agent, together in each case with all of their respective successors, officers, directors, employees, agents, attorneys, accountants, financial advisors, restructuring consultants and investment bankers.

        **1.1.125.**  *Reorganization Cases* means the cases currently pending under Chapter 11 of the Bankruptcy Code of Federal-Mogul Corporation and its affiliated Debtors before the Bankruptcy Court.

**1.1.126.** *Reorganized Federal-Mogul* means Federal-Mogul Corporation on and after the Effective Date, as reorganized pursuant to the Plan. *Reorganized Debtor* or *Reorganized [name of Debtor]* shall have the same meaning with reference to the particular Debtor identified. In each instance, and unless a successor entity is specified, the Reorganized Debtor shall consist of the same legal entity as the corresponding Debtor, but subject to the terms and conditions of the Plan, including, without limitation, the discharge, release and Injunctions under Article IX of the Plan, and, except as provided in Article IV of the Plan, each Reorganized Debtor shall have and incur no successor liability with respect to Claims or Demands that may have existed prior to Confirmation of the Plan.

**1.1.127.** *Reorganized Federal-Mogul Class A Common Stock* shall have the meaning set forth in the Amended and Restated Certificate of Incorporation of Federal-Mogul Corporation which is attached as Exhibit 8.3.9(1) to the Plan.

**1.1.128.** *Reorganized Federal-Mogul Class B Common Stock* shall have the meaning set forth in the Amended and Restated Certificate of Incorporation of Federal-Mogul Corporation which is attached as Exhibit 8.3.9(1) to the Plan.

**1.1.129.** *Reorganized Federal-Mogul Common Stock* means the shares of Reorganized Federal-Mogul Class A Common Stock and Reorganized Federal-Mogul Class B Common Stock to be distributed pursuant to the Plan.

**1.1.130.** *Reorganized Federal-Mogul Junior Secured PIK Notes* means the junior secured PIK notes to be issued by Reorganized Federal-Mogul pursuant to the Plan on account of the Allowed Class B Bank Claims, in the original principal amount of $300,000,000.00. The principal terms and conditions of the Reorganized Federal-Mogul Junior Secured PIK Notes are set forth in Exhibit 1.1.130 to the Plan.

**1.1.131.** *Reorganized Federal-Mogul Secured Term Loan Agreement* means the loan agreement among Reorganized Federal-Mogul, the holders of Allowed Class 1B Bank Claims and the Administrative Agent, in the principal amount of (i) $1,303,897,117.90 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) plus the amount of any draws prior to the Effective Date on letters of credit outstanding under the Bank Credit Agreement and (ii) the amount, if any, of the Tranche C portion of the DIP Facility restructured pursuant to Section 2.2 of the Plan. The principal terms and conditions of the Reorganized Federal-Mogul Secured Term Loan Agreement are set forth in Exhibit 1.1.131 of the Plan. A form of the Reorganized Federal-Mogul Secured Term Loan Agreement shall be filed with the Bankruptcy Court prior to the hearing on the adequacy of Disclosure Statement.

**1.1.132.** *Schedules* means the Schedules, Statements and Lists filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.1.133.** *Scheme of Arrangement* means the Section 425 Scheme or Section 425 Schemes relating to those of the U.K. Debtors that are listed in Exhibit 1.1.133, together with any modifications thereof which are approved by the U.K. Court.

**1.1.134.** *Section 425 Scheme* means any scheme of arrangement under Section 425 of the Companies Act 1985 of the United Kingdom.

**1.1.135.** *Secured* means, with respect to any Claim, including, without limitation, Bank Claims and Surety Claims, a Claim that is (a) secured in whole or in part as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code, the IA 1986 or other applicable law, or (b) subject to setoff under Section 553 of the Bankruptcy Code or other applicable law, but, with respect to both (a) and (b) above, only to the extent of the value of the holder of such Claim's interest in the particular Estate's interest in the property securing any such Claim or the amount subject to setoff, as the case may be.

**1.1.136.** *Secured Surety Notes and Junior Secured Surety PIK Notes* means the secured notes and junior secured PIK notes, if any, to be issued by Reorganized Federal-Mogul pursuant to the Plan on account of Allowed Surety Claims. The principal terms and conditions of the Secured Surety Notes and Junior Secured Surety PIK Notes are set forth in Exhibit 1.1.136. The Secured Surety Notes, Junior Secured Surety PIK Notes and any related documents will be filed with the Bankruptcy Court on or before the earlier of (i) 30 days before the deadline for casting votes on the Plan or (ii) 45 days before the deadline for filing objections to confirmation of the Plan.

**1.1.137.** *Settling Asbestos Insurance Company* means any Asbestos Insurance Company that enters into an Asbestos Insurance Settlement Agreement that is sufficiently comprehensive in the determination of the Plan Proponents.

**1.1.138.** *Small Company* means a U.K. Debtor with assets having a value, as set forth in Exhibit L to the Disclosure Statement, of less than £1,000,000 or liabilities to unaffiliated creditors (excluding holders of Asbestos Personal Injury Claims other than those that have been asserted in lawsuits filed in the United Kingdom on or before the date this Plan was filed with the Bankruptcy Court) having a value of less than £1,000,000.

**1.1.139.** *Small Company Specific Distribution Ratio* means, with respect to a Small Company, a ratio, the numerator of which shall be (i) the value of the referenced Small Company's assets as estimated on Exhibit L to the Disclosure Statement if the Consensual Marketing Procedures are not performed or (ii) the Market Value of the referenced U.K. Debtor's assets if the Marketing Procedures are performed and the denominator of which shall be the Allowed Claims against the referenced U.K. Debtor excluding Asbestos Personal Injury Claims other than those that have been asserted in lawsuits filed in the United Kingdom on or before April 22, 2004.

**1.1.140.** *Stock Repayment Obligation* shall have the meaning set forth in Section 4.5.2.

**1.1.141.** *Subordinated Securities Claim* means a Claim subject to subordination under Section 510(b) of the Bankruptcy Code, including, without limitation, any Claim that arises from the rescission of a purchase or sale of a security of any of the Debtors (including, without limitation, the Notes and the existing Federal-Mogul common and preferred

stock classified below in Classes 1M and 1O), or for damages arising from the purchase or sale of such a security, or for reimbursement, indemnification, or contribution allowed under Section 502 of the Bankruptcy Code on account of such Claim.

      **1.1.142.** *Subordination Deed* means an agreement wherein certain of the Debtors or their Affiliates holding Affiliate Claims against a U.K. Debtor consensually agree to (i) subordinate their Claims so that the legal right and priority of payment on their Claim is subordinate to all non-Affiliate Claims against the applicable U.K. Debtor, (ii) extinguish and discharge their Claims in whole or in part or (iii) leave unaltered the legal, equitable and contractual rights to which such Claims entitled the holder; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents. The Subordination Deed shall be filed with the Bankruptcy Court at least 30 days prior to the deadline for casting votes on the Plan.

      **1.1.143.** *Supersedeas Bond Action* means any rights, defenses, counterclaims or affirmative causes of action of the Debtors, Reorganized Federal-Mogul, or the other Reorganized Debtors with respect to a Bonded Claim, or with respect to any supersedeas bond or other form of security or payment assurance issued in connection with a Bonded Claim, or against the issuer or insurer of any payment assurance issued in connection with a Bonded Claim.

      **1.1.144.** *Supplemental Injunction* means the injunction described in Section 9.3.1 of the Plan.

      **1.1.145.** *Sureties* means Travelers Casualty and Surety Company of America ("Travelers"), SAFECO Insurance Company of America ("Safeco") and National Fire Insurance Company of Hartford and Continental Casualty Company ("National Fire") as issuers of the CCR Surety Bonds.

      **1.1.146.** *Surety Claims* means the secured, unsecured (as in the cases of T&N Limited, Gasket Holdings, Inc. and their respective Estates), or partially secured and unsecured contingent reimbursement obligations arising under and related to any indemnity contract or guarantee between certain of the Debtors signatory thereto and the Sureties relating to the CCR Surety Bonds issued by the Sureties in favor of CCR.

      **1.1.147.** *T&N Distribution Ratio 1* means a ratio, the numerator of which shall be 79% of the value of the Reorganized Federal-Mogul Class B Common Stock as determined at the Confirmation Hearing and the denominator of which shall be the tort system value (as reflected in the Asbestos Personal Injury Trust Distribution Procedures) of all Asbestos Personal Injury Claims against T&N Limited.

      **1.1.148.** *T&N Distribution Ratio 2* means a ratio, the numerator of which shall be the value of T&N Limited's assets as determined at the Confirmation Hearing either in accordance with the Consensual Marketing Procedures or as otherwise determined by the Court and the denominator of which shall be the sum of (i) the tort system value (as reflected in the Asbestos Personal Injury Trust Distribution Procedures)of all Asbestos Personal Injury Claims

against T&N Limited and (ii) the Allowed Amount of all other Claims against T&N Limited including, without limitation, Affiliate Claims against T&N Limited.

**1.1.149.    *T&N Pension Plan*** means the T&N Retirement Benefits Scheme (1989), a defined benefit plan operated by certain of the U.K. Debtors for eligible employees.

**1.1.150.    *T&N Pension Plan Trustees*** means the trustees for the time being of the T&N Pension Plan and, as of the date hereof, being Alexander Forbes Trustee Services Limited and T&N Pension Trustee Limited.

**1.1.151.    *Third Party Injunction*** means the injunction described in Section 9.3.2 of the Plan.

**1.1.152.    *Trust*** means the trust or trusts established pursuant to the Trust Agreement and in accordance with Section 524(g) of the Bankruptcy Code, which is a "qualified settlement fund" pursuant to Section 468B of the IRC and the regulations issued pursuant thereto.

**1.1.153.    *Trust Advisory Committee or TAC*** means that committee appointed and serving in accordance with Section 4.10.1 of the Plan and having the powers, duties and obligations set forth in the Trust Agreement.

**1.1.154.    *Trust Agreement*** means that certain Asbestos Personal Injury Trust Agreement, effective as of the Confirmation of the Plan, substantially in the form of Exhibit 1.1.154 to the Plan.

**1.1.155.    *Trust Assets*** means the following assets and any income, profits and proceeds derived from such assets subsequent to the transfer of such assets to the Trust: (a) the Reorganized Federal-Mogul Class B Common Stock to be distributed to the Trust pursuant to the Plan, (b) the Asbestos Insurance Actions and the Asbestos Insurance Action Recoveries attributable to any Asbestos Personal Injury Claims, (c) the Asbestos Insurance Settlement Agreements attributable to any Asbestos Personal Injury Claims, other than such agreements attributable to the Hercules Policy, (d) the Trust Causes of Action and (e) any and all other funds, proceeds or other consideration otherwise contributed to the Trust pursuant to the Confirmation Order.

**1.1.156.    *Trust Causes of Action*** means any and all of the actions, claims, rights, defenses, counterclaims, suits and causes of action of the Debtors (other than, prior to the Hercules Policy Expiry Date, the Hercules-Protected Entities and other than any such actions, claims, rights, defenses, counterclaims, suits and causes of action with respect to the EL Coverage), whether known or unknown, in law, at equity or otherwise, whenever and wherever arising under the laws of any jurisdiction attributable to: (a) all defenses to any Asbestos Personal Injury Claim, including, but not limited to, all defenses under Section 502 of the Bankruptcy Code, (b) with respect to any Asbestos Personal Injury Claim, all rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other indirect claim of any kind whatsoever, whenever and wherever arising or asserted, and (c) subject to the provisions of the Plan, any other claims or rights with respect to Asbestos Personal Injury Claims that the Debtors

(other than, prior to the Hercules Policy Expiry Date, the Hercules-Protected Entities and other than any such claims or rights with respect to the EL Coverage) would have had under applicable law if the Reorganization Cases had not occurred and the holder of such Asbestos Personal Injury Claim had asserted it by initiating civil litigation against any such Debtor. Notwithstanding the foregoing, Trust Assets and Trust Causes of Action shall not include (x) any of the Debtors' rights arising under or attributable to the Supersedeas Bond Actions (y) the property, rights or assets, if any, of the Debtors which were previously used to secure or obtain a supersedeas bond with respect to any Allowed Bonded Claim and which are recoverable or recovered by the Debtors after the full satisfaction of such claim or (z) any claim, cause of action, or right of the Debtors or any of them, under the laws of any jurisdiction, for reimbursement, indemnity, contribution, breach of contract or otherwise arising from or relating to any payments made by the Debtors on account of Asbestos Personal Injury Claims prior to the Petition Date.

**1.1.157.** *Trust Claim* shall have the meaning set forth in Section 4.5.4.

**1.1.158.** *Trust Documents* means the Trust Agreement, the Asbestos Personal Injury Trust Distribution Procedures and all other agreements, instruments and documents governing the establishment, administration and operation of the Trust, which shall be substantially in the form set forth in the Plan, as they may be amended or modified from time to time in accordance with the Plan and the Trust Agreement.

**1.1.159.** *Trust Expenses* means any Asbestos Personal Injury Expenses and any other liabilities, costs or expenses of, or imposed upon, or in respect of, the Trust (except for payments to holders of Asbestos Personal Injury Claims on account of such Claims). Trust Expenses shall also expressly include (a) any and all liabilities, costs and expenses incurred subsequent to the Confirmation of the Plan in connection with any and all Asbestos Insurance Actions, or any similar claim, cause of action or right of Reorganized T&N against the Hercules Insurers, or of the Trust against the EL Insurers, in each case whether or not any such action results in a recovery for the Trust and (b) any and all liabilities, costs and expenses incurred by the Reorganized Debtors in taking any action on behalf of or at the direction of the Trustees, if any, including, without limitation, any costs and expenses incurred by the Reorganized Debtors in being named as a defendant in any Asbestos Insurance Action or other actions relating to the Hercules Policy or any EL Policy.

**1.1.160.** *Trustees* means the Persons appointed pursuant to Section 4.9 of the Plan for the purpose of acting as trustees of the Trust in accordance with the terms and conditions contained in the Trust Documents, the Plan and the Confirmation Order.

**1.1.161.** *U.K. Court* means any court of competent jurisdiction in any part of the United Kingdom.

**1.1.162.** *U.K. Debtors* means those Debtors so listed in footnote 1 of the Plan.

**1.1.163.** *United States Trustee* means the Office of the United States Trustee for the District of Delaware.

23

**1.1.164.** *Unsecured Claim* means any Claim (regardless of whether such Claim is covered by insurance), not specifically included in a separately identified Class of Claims or Equity Interests, and to the extent that such Claim is neither secured nor entitled to priority under applicable law. Unsecured Claims shall expressly include, without limitation, (a) any claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) any portion of a Claim to the extent the value of the holder's interest in the applicable Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) Surety Claims against T&N Limited and/or Gasket Holdings Inc., (d) Other U.K. Claims (including, specifically, Off-Site Environmental Claims and Asbestos Property Damage Claims against any U.K. Debtors to the extent that the Allowed Amounts of such Claims are not otherwise satisfied by any applicable insurance coverage), (e) any unsecured deficiency claims held by the holders of Bonded Non-Asbestos Claims and/or Surety Claims, (f) Asbestos Property Damage Claims against any U.S. Debtors to the extent that the Allowed Amounts of such Claims are not otherwise satisfied by any applicable insurance coverage, and to the extent that such Claims are not Bonded Claims; (g) Excluded Non-Qualified Pension Claims, (h) Off-Site Environmental Claims, (i) Claims arising from the provision of goods or services to the Debtors prior to the Petition Date, including the Claims of commercial trade creditors and (j) Affiliate Claims against the U.K. Debtors which are not subject to the Subordination Deed. Unless otherwise specifically provided in an applicable provision of the Plan, Unsecured Claims shall not include (i) Administrative Claims, (ii) Administration Claims, (iii) Priority Claims, (iv) Preferential Claims, (v) Secured Bank Claims, (vi) Secured Surety Claims, (vii) Noteholder Claims, (viii) Other Secured Claims, (ix) On-Site Environmental Claims, (x) Non-Priority Employee Benefit Claims, (xi) Asbestos Personal Injury Claims, (xii) Bonded Claims, (xiii) Affiliate Claims against U.K. Debtors which are subject to the Subordination Deed and (xiv) Equity Interests.

**1.1.165.** *Unsecured Creditors Committee* means the Official Committee of Unsecured Creditors of the Debtors appointed in the Reorganization Cases by the United States Trustee.

**1.1.166.** *U.S. Debtors* means those Debtors so listed in footnote 1 of the Plan.

**1.1.167.** *Valuation Proceedings* means the contested matter to be initiated, if necessary, under Section 506(a) of the Bankruptcy Code and Rule 3012 of the Federal Rules of Bankruptcy Procedure for the purpose of determining the Allowed Amount of the Secured portions of the Surety Claims.

**1.1.168.** *Voluntary Arrangement* means the company voluntary arrangement or company voluntary arrangements proposed under Part I of the IA 1986 and Part I of the IR 1986 relating to those of the U.K. Debtors that are listed in Exhibit 1.1.168 to the Plan and any modifications thereto which may be approved by the requisite proportion of creditors of the relevant U.K. Debtor.

      **1.1.169.**    *Voluntary Arrangement Supervisors* means, in relation to a U.K. Debtor, the joint supervisors of the Voluntary Arrangement over the U.K. Debtor or their duly appointed successors.

      **1.1.170.**    *Warrants* means the warrants for the purchase of Reorganized Federal-Mogul Common Stock which are to be issued by Reorganized Federal-Mogul pursuant to the Plan and the warrant agreement attached hereto as Exhibit 1.1.170 to the Plan.

      **1.2.**   **Other Terms**.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine and neuter.  The word "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and are not limited to any particular article, section, subsection, or clause contained in the Plan.  Any capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall also apply in construing and interpreting the provisions of the Plan.

      **1.3.**   **Deemed Acts**.  Whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

      **1.4.**   **Exhibits**.  All Plan Documents, to the extent not annexed hereto, shall be contained in a separate Appendix of Plan Documents, which shall be filed with the Clerk of the Bankruptcy Court not later than the Plan Documents Filing Date.  The Plan Documents shall be made available for review, inspection, and copying at the expense of the party in interest, either (a) through posting on an appropriate website or (b) during normal business hours at the office of Debtors' counsel, as follows:

Sidley Austin Brown & Wood LLP
10 South Dearborn Street
Chicago, Illinois  60603
Telephone: (312) 853-7000

**ARTICLE II**
**TREATMENT OF ADMINISTRATIVE CLAIMS,**
**ADMINISTRATION CLAIMS AND PRIORITY TAX CLAIMS**

      **2.1.**   **Allowed Administrative Claims and Administration Claims**.  Except to the extent that any holder agrees to different treatment, on the Distribution Date, each holder of an Allowed Administrative Claim or an Allowed Administration Claim against any of the Debtors shall receive Cash equal to the Allowed Amount of its Administrative Claim, or, as the case may be, Administration Claim, in full satisfaction, settlement, release, extinguishment and discharge of such Claim; provided, however, that Allowed Administrative Claims or Allowed Administration Claims representing (a) liabilities incurred on or after the Petition Date in the ordinary course of business by the Debtors and (b) postpetition contractual liabilities arising

25

under loans or advances to the Debtors, including, but not limited to the DIP Facility, whether or not incurred in the ordinary course of business, shall be paid by Reorganized Federal-Mogul or the applicable Reorganized Debtor, in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto, subject to the provisions set forth in Section 2.2 of the Plan. Each Allowed Administrative Claim or Allowed Administration Claim shall be paid from, and to the extent of available assets of, the respective Debtor's Estate to which such Claim applies or has been allocated, and thereafter to the extent of any insufficiency, from funds advanced to the relevant Debtor by the Estate of Federal-Mogul Corporation. To the extent that an Administrative Claim or Administration Claim is Allowed against the Estate of more than one Debtor, there shall be only a single recovery on account of such Allowed Claim.

**2.2.   Treatment of Tranche C Portion of DIP Facility.**  On the Effective Date, the Tranche C Loans portion of the DIP Facility consisting of (a) loans in the approximate amount of $328.1 million plus (b) the amount of any draws prior to the Effective Date on letters of credit outstanding under the Tranche C Loans portion of the DIP Facility shall either be refinanced, in whole or in part, as part of the Exit Facilities or, for any non-refinanced portion, if any, restructured on market terms as a separate tranche of (and secured by liens senior to the liens securing the balance of the obligations to be evidenced by) the Reorganized Federal-Mogul Secured Term Loan Agreement; provided, however, the Debtors shall use their reasonable best efforts to seek to refinance the Tranche C Loans portion of the DIP Facility as part of the Exit Facilities.

**2.3.   Priority Tax Claims.**  Except to the extent that any holder agrees to different treatment, each holder of an Allowed Priority Tax Claim shall receive on account of such Claim deferred cash payments, over a period not exceeding six years after the date of assessment of each such Claim, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Priority Tax Claim. Each Allowed Priority Tax Claim shall be paid from, and to the extent of available assets of, the respective Debtor's Estate against which such Claim is asserted, and thereafter to the extent of any insufficiency, from funds advanced to the relevant Debtor by the Estate of Federal-Mogul Corporation; provided, however, the Estate of Federal-Mogul Corporation shall not be obligated to advance funds for the payment of Priority Tax Claims, if any, of any of the Inactive Debtor Subsidiaries.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**Summary.**  Pursuant to Sections 1122 and 1123 of the Bankruptcy Code, Claims and Equity Interests are classified for all purposes, including, without express or implied limitation, voting, confirmation and distribution pursuant to the Plan, as set forth herein below. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been

paid or otherwise settled prior to the Effective Date. **NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO RATIO WHICH IS TO BE CALCULATED AS PROVIDED HEREIN FOR THE PURPOSES OF DETERMINING DISTRIBUTIONS TO HOLDERS OF CLAIMS OR EQUITY INTERESTS SHALL BE GREATER THAN 1.0 TO 1.**

**THE PLAN PROPONENTS RESERVE THE RIGHT TO SEEK AT OR PRIOR TO THE CONFIRMATION HEARING TO HAVE THE ESTATES OF THE DEBTORS OBLIGATED ON THE SURETY CLAIMS (EXCLUDING T&N LIMITED) SUBSTANTIVELY CONSOLIDATED FOR PLAN CLASSIFICATION, TREATMENT, VOTING AND CONFIRMATION PURPOSES ONLY. IF THE PLAN PROPONENTS DO NOT ELECT TO SEEK TO HAVE THE ESTATES OF SUCH DEBTORS SUBSTANTIVELY CONSOLIDATED, THEN NONE OF THE DEBTORS' ESTATES SHALL BE SUBSTANTIVELY CONSOLIDATED FOR PLAN PURPOSES OR OTHERWISE.**

**TO THE EXTENT THAT THE ESTATES OF ANY DEBTORS ARE NOT SUBSTANTIVELY CONSOLIDATED PURSUANT TO THE PLAN, ALLOWED CLAIMS HELD AGAINST ONE DEBTOR WILL BE SATISFIED SOLELY FROM THE CASH AND ASSETS OF SUCH DEBTOR AND ITS ESTATE, PROVIDED THAT, TO THE EXTENT OF ANY INSUFFICIENCY, FUNDS MAY BE ADVANCED TO THE RELEVANT DEBTORS BY THE ESTATE OF FEDERAL-MOGUL CORPORATION. EXCEPT AS SPECIFICALLY SET FORTH HEREIN, NOTHING IN THE PLAN OR THE DISCLOSURE STATEMENT SHALL CONSTITUTE OR BE DEEMED TO CONSTITUTE AN ADMISSION THAT ANY ONE OF THE DEBTORS IS SUBJECT TO OR LIABLE FOR ANY CLAIM AGAINST ANY OTHER DEBTOR. A CLAIM AGAINST MULTIPLE DEBTORS, TO THE EXTENT ALLOWED IN EACH DEBTOR'S CASE, WILL BE TREATED AS A SEPARATE CLAIM AGAINST EACH DEBTOR'S ESTATE FOR ALL PURPOSES (INCLUDING, BUT NOT LIMITED TO, VOTING AND DISTRIBUTION, PROVIDED, HOWEVER, THAT THERE SHALL BE ONLY A SINGLE RECOVERY ON ACCOUNT OF SUCH CLAIMS AND ANY DISTRIBUTION FROM A DEBTOR ON ACCOUNT OF SUCH CLAIMS SHALL TAKE INTO ACCOUNT THE DISTRIBUTIONS TO BE MADE BY OTHER DEBTORS ON ACCOUNT OF SUCH CLAIMS PURSUANT TO THE PLAN), AND SUCH CLAIMS WILL BE ADMINISTERED AND TREATED IN THE MANNER PROVIDED IN THE PLAN.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, ALL DISTRIBUTIONS ON ACCOUNT OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE U.K. DEBTORS SHALL BE SUBJECT TO SECTION 8.16 OF THE PLAN, INCLUDING, WITHOUT LIMITATION, SUBSECTIONS 8.16.3, 8.16.4 AND 8.16.5 OF THE PLAN.**

The classification and treatment of Claims against and Equity Interests in the primary five (5) U.S. Debtors and fifteen (15) U.K. Debtors that are contemplated to have ongoing business operations after Confirmation of the Plan are set forth in detail in the text of the Plan which follows. For purposes of brevity and convenience, but with the same legal force and

effect as if set forth at length herein, the classification and treatment of Claims against and Equity Interests in all remaining U.S. Debtors and U.K. Debtors is set forth in Exhibit 3.21 to the Plan and the explanatory notes accompanying Exhibit 3.21.[2]

### 3.1. Federal-Mogul Corporation (Classes 1A through 1O)

#### 3.1.1. Class 1A – Priority Claims.

(a)    Classification:  Class 1A consists of all Priority Claims against Federal-Mogul Corporation.

(b)    Treatment:  On the Distribution Date, each holder of a Class 1A Allowed Priority Claim shall receive either (I) Cash equal to the Allowed Amount of such Priority Claim or (II) such other treatment as may be agreed upon in writing by such holder and Reorganized Federal-Mogul.

(c)    Voting:  Class 1A is impaired and each holder of an Allowed Class 1A Claim is entitled to vote to accept or reject the Plan.

#### 3.1.2. Class 1B – Secured Bank Claims.

(a)    Classification:  Class 1B consists of all Secured Bank Claims against Federal-Mogul Corporation.

(b)    In full and complete satisfaction of the Allowed Class 1B Claims, including, without limitation, any subordination or turnover rights relating to the Convertible Subordinated Debentures, the holders of such Claims shall receive the following treatment:

(i)    Claims arising under the Bank Credit Agreement (including certain letter of credit obligations) shall be deemed fully Secured and Allowed in the amount of $1,646,681,464.00 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars);

(ii)    Reorganized Federal-Mogul shall (y) enter into, execute and deliver the Reorganized Federal-Mogul Secured Term Loan Agreement which shall provide for, among other things, the issuance to the holders of Allowed Class 1B Claims, in accordance with each such holder's rights under the Bank Credit Agreement, of term loans in the aggregate principal amount of (A) $1,303,897,117.90 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) plus the amount of any draws prior to the Effective Date on letters of credit outstanding under the Bank Credit Agreement and (B) the amount, if any, of the Tranche C portion of the DIP Facility restructured pursuant to Section 2.2 of the Plan and (z) replace with the Exit Facilities any letters of credit not drawn as of the Effective Date;

---

[2] One of the fifteen U.K. Debtors listed in this Article III of the Plan is TBA Industrial Products Limited ("TBA-IP"). TBA-IP's assets were sold during the course of these Reorganization Cases and, as a result, TBA no longer has any material operations. Due to the timing of these events, however, TBA remains classified as Debtor 19 in Article III of the Plan and has not been moved to Exhibit 3.21 of the Plan.

(iii)    Reorganized Federal-Mogul shall issue and deliver to the PIK Notes Trustee, for ultimate distribution to the holders of Allowed Class 1B Claims in accordance with each such holder's rights under the Bank Credit Agreement, the Reorganized Federal-Mogul Junior Secured PIK Notes in the amount of $300,000,000.00; and

(iv)    All adequate protection payments to the holders of Bank Claims authorized under the Final Order approving the DIP Facility shall continue until and cease on the Effective Date and all accrued and unpaid adequate protection payments as of the Effective Date will be paid in Cash on the Effective Date. The holders of Bank Claims shall retain all adequate protection payments made during these Reorganization Cases without any diminution of the treatment set forth above.

All Claims arising under the Bank Credit Agreement are deemed fully Secured. As a result, there are no unsecured Bank Claims and the holders of Bank Claims do not have or hold any Class H Unsecured Claims against any of the Debtors.

(c)    Voting: Class 1B is impaired and each holder of an Allowed Class 1B Claim is entitled to vote to accept or reject the Plan.

### 3.1.3.    Class 1C – Secured Surety Claims

(a)    Classification: Class 1C consists of all Secured Surety Claims against Federal-Mogul Corporation.

(b)    Treatment: All Claims and interests arising under and related to any indemnity contract or guarantee between Federal-Mogul Corporation and the Sureties relating to the CCR Surety Bonds, and all Liens on any property of Federal-Mogul Corporation in favor of the Sureties shall be released, extinguished and discharged, and the following shall occur:

(i)    On account of that portion of the Surety Claims that is determined, as a result of the CCR Litigation, the Avoidance Litigation and/or the Valuation Proceedings, to constitute Allowed Secured Surety Claims, the holders of Surety Claims shall receive the Secured Surety Notes and Junior Secured Surety PIK Notes that (x) shall have principal amounts, collectively, equal to the amount of the Allowed Secured Surety Claims, (y) are secured by Liens on the same property that secured the Allowed Secured Surety Claims prior to the Petition Date (subject to the liens securing the Exit Facilities) and (z) provide deferred cash payments, collectively, of a present value, as of the Effective Date, equal to the Allowed Amount of the Allowed Secured Surety Claims; and

(ii)    On account of that portion of the Surety Claims that is determined, as a result of the CCR Litigation, the Avoidance Litigation and/or the Valuation Proceedings, not to constitute Allowed Secured Surety Claims, the holders of Surety Claims shall hold an Allowed Unsecured Claim against Federal-Mogul Corporation and the other Debtors, if any, obligated on the Allowed Surety Claims; or

(iii)    Such other treatment as agreed to by the Sureties and the Plan Proponents or as otherwise required to obtain confirmation of the Plan over the objection of the Sureties.

(c)    Adequate Protection Payments:  All adequate protection payments to the Sureties authorized under the Final Order approving the DIP Facility shall cease on the Effective Date.  If the amount of the Allowed Surety Claims exceeds the value, as of the Confirmation Date, of all non-avoidable collateral securing such Claims, then the amount of the adequate protection payments paid to the Sureties during these Reorganization Cases shall be offset against and reduce the amounts to be distributed to the Sureties pursuant to the Plan on account of the Allowed Surety Claims.  If, however, the amount of the Allowed Surety Claims is less than the value, as of the Confirmation Date, of all non-avoidable collateral securing such Claims, then (i) the Sureties shall retain the adequate protection payments, if any, up to the amount by which the value of the non-avoidable collateral exceeds the amount of the Allowed Surety Claims without any diminution of the treatment set forth above and (ii) the amount of any additional adequate protection payments shall be offset against and reduce the amounts to be distributed to the Sureties pursuant to the Plan.

(d)    Voting:  Class 1C is impaired, and each holder of an Allowed Class 1C Claim is entitled to vote to accept or reject the Plan.

### 3.1.4.    Class 1D – Noteholder Claims.

(a)    Classification:  Class 1D consists of all secured and unsecured Noteholder Claims against Federal-Mogul Corporation, which shall be deemed Allowed as follows:

(1)    Claims arising under Federal-Mogul Corporation's 7.5% Notes due 2009 shall be deemed Allowed in the aggregate amount of $572,812,500.00;

(2)    Claims arising under Federal-Mogul Corporation's 7.375% Notes due 2006 shall be deemed Allowed in the aggregate amount of $401,069,010.50;

(3)    Claims arising under Federal-Mogul Corporation's 7.75% Notes due 2006 shall be deemed Allowed in the aggregate amount of $399,595,000.10;

(4)    Claims arising under Federal-Mogul Corporation's 7.875% Notes due 2010 shall be deemed Allowed in the aggregate amount of $347,713,437.50;

(5)    Claims arising under Federal-Mogul Corporation's 7.5% Notes due 2004 shall be deemed Allowed in the aggregate amount of $244,500,000.00;

(6)    Claims arising under Federal-Mogul Corporation's 8.8% Senior Notes due 2007 shall be deemed Allowed in the aggregate amount of $107,663,379.80;

(7)    Claims arising under Federal-Mogul Corporation's 8.37% Medium Term Notes due 2001 shall be deemed Allowed in the aggregate amount of $32,788,640.00;

(8)     Claims arising under Federal-Mogul Corporation's 8.25% Medium Term Notes due 2005 shall be deemed Allowed in the aggregate amount of $15,364,375.00;

(9)     Claims arising under Federal-Mogul Corporation's 8.33% Medium Term Notes due 2001 shall be deemed Allowed in the aggregate amount of $12,294,326.67;

(10)    Claims arising under Federal-Mogul Corporation's 8.12% Medium Term Notes due 2003 shall be deemed Allowed in the aggregate amount of $10,239,088.89;

(11)    Claims arising under Federal-Mogul Corporation's 8.16% Medium Term Notes due 2003 shall be deemed Allowed in the aggregate amount of $10,240,266.67;

(12)    Claims arising under Federal-Mogul Corporation's 8.46% Medium Term Notes due 2002 shall be deemed Allowed in the aggregate amount of $5,124,550.00.

(b)     Treatment:  On the Distribution Date, the Disbursing Agent shall issue and deliver to the indenture trustees for the Notes, to be allocated Pro Rata among those indenture trustees based upon the deemed Allowed Amounts of the Claims in Class 1D as set forth above, and for ultimate distribution to or for the account of each Person holding an Allowed Class 1D Claim in accordance with such holder's rights and interests under the applicable Notes and their respective indentures, a Pro Rata portion of the Reorganized Federal-Mogul Class A Common Stock.  Such Pro Rata portion to be distributed to each particular indenture trustee shall be determined by multiplying the total number of shares representing such Class A Common Stock times a fraction, the numerator of which equals the Allowed Amount of all Class 1D Claims represented by a particular indenture pertaining to the Notes, and the denominator of which equals the Allowed Amount of all Class 1D and 1F Claims.  If Classes 1D and 1J vote to accept the Plan, and at least one of Classes 1M, 1N or 1O votes to accept the Plan, then Class 1D shall also receive 50% of the Warrants to be issued and distributed under the Plan; provided, however, Class 1D has agreed to distribute any and all such Warrants to the holders of Class 1M, 1N and/or 1O Claims and/or interests in accordance with Sections 3.1.13, 3.1.14 and 3.1.15 of the Plan; provided, further, however, the distribution of the Warrants shall be subject to the requirements of Section 8.3.5 of the Plan.

(c)     Adequate Protection Payments:  All adequate protection payments to the holders of Class 1D Noteholder Claims authorized under the Final Order approving the DIP Facility shall continue until and cease on the Effective Date and any such adequate protection payments that are unpaid as of the Effective Date will be paid in Cash on the Effective Date. The holders of Class 1D Noteholder Claims shall retain any and all such adequate protection payments made and/or authorized in connection with the DIP Facility without any diminution of the treatment set forth above.

(d)     Voting:  Class 1D is impaired and each holder of an Allowed Class 1D Claim is entitled to vote to accept or reject the Plan.

### 3.1.5.   Class 1E – Other Secured Claims

(a)     Classification:  Class 1E consists of all Secured Claims other than Bank Claims, Surety Claims, Noteholder Claims or Bonded Claims.  Each Secured Claim shall

constitute a separate sub-class (designated, for example, as Class 1E-1) for purposes of voting and distribution.

(b)   Treatment: At the option of the Debtor or the Reorganized Debtor and in accordance with Section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 1E, and each sub-class thereof, will be treated pursuant to one of the following alternatives: (I) the Plan will leave unaltered the legal, equitable and contractual rights to which each Secured Claim in Class 1E entitles the holder; (II) the Debtor shall cure any default that occurred before or after the Petition Date; the maturity of such Secured Claim shall be reinstated as such maturity existed prior to any such default; the holder of such Secured Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the holder on any right to accelerate its claim; and the legal, equitable and contractual rights of such holder will not otherwise be altered; (III) an Allowed Secured Claim shall receive such other treatment as the Debtor and the holder shall agree; or (IV) all of the collateral for such Secured Claim will be surrendered by the Debtor to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)   Voting: To the extent any Allowed Secured Claims are treated in the manner set forth in clauses (I), (II), (III) or (IV) of the immediately preceding subsection, Class 1E or the particular sub-class is unimpaired and such holders are not entitled to vote to accept or reject the Plan.

### 3.1.6.   Class 1F - Convertible Subordinated Debenture Claims

(a)   Classification: Class 1F consists of all Allowed Claims arising under, evidenced by, or based upon the Convertible Subordinated Debentures, which shall be deemed Allowed in the total amount of $211,042,367.00; provided, however, to the extent that holders of Convertible Subordinated Debentures convert such securities to Federal-Mogul Corporation common stock on or before the Record Date or are deemed to have so converted such securities pursuant to Section 8.3.2, then such holders will be treated as holders of Class 1O Federal-Mogul Corporation common stock and receive the distribution, if any, to be made on account of such Class 1O Equity Interests under the Plan.

(b)   Treatment: On the Distribution Date, in full and complete satisfaction of the Allowed Class 1F Claims (including, without limitation, any guarantees related to or arising from the Convertible Subordinated Debentures) the Disbursing Agent shall issue and deliver to the indenture trustee for the Convertible Subordinated Debentures, a Pro Rata portion of the Reorganized Federal-Mogul Class A Common Stock, which portion shall be determined by multiplying the total number of shares representing such Class A Common Stock times a fraction, the numerator of which equals the Allowed Amount of all Class 1F Claims, and the denominator of which equals the Allowed Amount of all Class 1D and 1F Claims, provided, however, to the extent necessary to comply with the contractual subordination provisions in the indentures for the Convertible Subordinated Debentures, the Disbursing Agent shall hold in trust and cause all distributions allocable to the Allowed Convertible Subordinated Debenture Claims to be paid directly to the applicable Indenture Trustees on behalf of the Allowed Class 1D Noteholder Claims in accordance with the formula set forth in Section 3.1.4.(b). Solely for purposes of the Declaration of Trust of Federal-Mogul Financing Trust regarding the Convertible Subordinated Debentures, the bankruptcy of Federal-Mogul Corporation shall be deemed to have

occurred on the Effective Date, and the Federal-Mogul Financing Trust shall thereupon be deemed dissolved as provided in such Declaration of Trust.

(c)     Voting. Class 1F is impaired and each holder of an Allowed Class 1F Claim is entitled to vote to accept or reject the Plan.

### 3.1.7.     Class 1G – On-Site Environmental Claims

(a)     Classification: Class 1G consists of all On-Site Environmental Claims against Federal-Mogul Corporation.

(b)     Treatment: Each holder of an Allowed On-Site Environmental Claim in Class 1G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting: Class 1G is unimpaired and holders of Class 1G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.1.8.     Class 1H – Unsecured Claims

(a)     Classification: Class 1H consists of all Unsecured Claims against Federal-Mogul Corporation, other than any unsecured portion of Noteholder Claims, any unsecured portion of Bonded Asbestos Personal Injury Claims, the Convertible Subordinated Debenture Claims or other Claims specifically included in any other Class.

(b)     Treatment: Subject to Section 8.17 of the Plan, each holder of an Allowed Class 1H Unsecured Claim shall receive a total Cash payment equal to 35% of such holder's Allowed Unsecured Claim, with such total amount to be paid in three equal, annual installments, the first of which shall be paid on the Distribution Date and the second and third on the first and second anniversaries of the Distribution Date, respectively.

(c)     Voting: Class 1H is impaired and each holder of an Allowed Class 1H Claim is entitled to vote to accept or reject the Plan.

### 3.1.9.     Class 1I – Non-Priority Employee Benefit Claims

(a)     Classification: Class 1I consists of all Non-Priority Employee Benefit Claims against Federal-Mogul Corporation.

(b)     Treatment: On the Effective Date, Reorganized Federal-Mogul shall continue, automatically and without further act, deed or Court order, the Employee Benefit Plans maintained by Federal-Mogul Corporation, and each holder of an Allowed Non-Priority Employee Benefit Claim shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Non-Priority Employee Benefit Claim entitles such holder.

(c)     Voting: Class 1I is unimpaired and holders of Class 1I Claims are thus not entitled to vote to accept or reject the Plan.

### 3.1.10.    Class 1J – Asbestos Personal Injury Claims

(a)    Classification:  Class 1J consists of all Asbestos Personal Injury Claims against Federal-Mogul Corporation.

(b)    Treatment: As of the Effective Date, liability for all Class 1J Asbestos Personal Injury Claims shall be automatically and without further act, deed or Court order, transferred to, vested in and assumed by the Trust.  Each Asbestos Personal Injury Claim in Class 1J shall be addressed (i.e., Allowed or disallowed, and if Allowed, then paid) solely by the Trust pursuant to and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.  If Classes 1D and 1J vote to accept the Plan, and at least one of Classes 1M, 1N or 1O votes to accept the Plan, then Class 1J shall also receive 50% of the Warrants to be issued and distributed under the Plan; provided, however, Class 1J has agreed to distribute any and all such Warrants to the holders of Class 1M, 1N and/or 1O Claims and/or interests in accordance with Sections 3.1.13 , 3.1.14 and 3.1.15 of the Plan; provided, further, however, the distribution of the Warrants shall be subject to the requirements of Section 8.3.5 of the Plan.

(c)    Voting:  Class 1J is impaired and each holder of an Allowed Class 1J Claim is entitled to vote to accept or reject the Plan.

### 3.1.11.    Class 1K – Bonded Claims

(a)    Classification:  Class 1K consists of all Bonded Claims against Federal-Mogul Corporation.

(b)    Treatment:  Each holder of an Allowed Bonded Claim in Class 1K shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Bonded Claim entitles the holder.

(c)    Voting:  Class 1K is unimpaired and holders of Class 1K Claims are thus not entitled to vote to accept or reject the Plan.

### 3.1.12.    Class 1L - Affiliate Claims

(a)    Classification:  Class 1L consists of all Affiliate Claims against Federal-Mogul Corporation.

(b)    Treatment:  On the Effective Date, at the option of the Plan Proponents, all Affiliate Claims in Class 1L shall either be (a) reinstated, in full or in part, or (b) discharged and extinguished, in full or in part, in which case such discharged and extinguished portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any property or interest on account of such portion under the Plan; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents.  If any such Class 1L Claim is reinstated, in full or in part, such reinstated Claim may, at the option of the Plan Proponents, be subordinated in legal right and priority of payment to all non-Affiliate Claims against Federal-Mogul Corporation.  Any and all Class 1L Claims, or portions thereof,

34

being reinstated and, to the extent, if any, that such Claims are being subordinated to non-Affiliate Claims, are set forth in Exhibit 3.1.12.

(c)     Voting: Class 1L is impaired and each holder of an Allowed Class 1L Claim is entitled to vote to accept or reject the Plan.

### 3.1.13.   Class 1M - Federal-Mogul Corporation Preferred Stock

(a)     Classification: Class 1M consists of all shares of the Series C ESOP Convertible Preferred Stock of Federal-Mogul Corporation, having a liquidation preference of $63.75 per share, of which there are 439,937 shares outstanding.

(b)     Treatment: All existing shares of outstanding Federal-Mogul Corporation preferred stock and all rights related to such stock shall be cancelled, annulled and extinguished on the Effective Date. If Classes 1D, 1J and 1M all vote to accept the Plan, then each holder of Class 1M interest shall receive, in exchange for and in full satisfaction of its Class 1M interest, Warrants calculated as follows: for each outstanding share of Federal-Mogul Corporation preferred stock held as of the Record Date, the holder shall receive Warrants in an amount equal to (A)(i) two, divided by (ii) the sum of (a) two times the total number of outstanding shares of Federal-Mogul Corporation preferred stock plus (b) the total number of shares of Federal-Mogul Corporation common stock deemed held by holders of Allowed Class 1N Claims (but only if Class 1N accepts the Plan) plus (c) the total number of outstanding shares of Federal-Mogul Corporation common stock, including any shares deemed issued pursuant to Section 8.3.2 (but only if Class 1O accepts the Plan), times (B) the total number of Warrants. If Class 1M rejects the Plan, then no distributions shall be made on account of Class 1M interests. Notwithstanding the foregoing or anything to the contrary in this Plan, the distribution of the Warrants shall be subject to the requirements of Section 8.3.5 of the Plan.

(c)     Voting: Class 1M is impaired and each holder of an allowed Class 1M Equity Interest is entitled to vote to accept or reject the Plan.

### 3.1.14.   Class 1N - Subordinated Securities Claims

(a)     Classification: Class 1N consists of all Subordinated Securities Claims, if any, against Federal-Mogul Corporation.

(b)     Treatment: If Classes 1D, 1J and 1N all vote to accept the Plan, each holder of a Subordinated Securities Claim shall receive, in exchange for and in full satisfaction of its Class 1N Subordinated Securities Claim, its Pro Rata share of any applicable insurance and, with respect to any deficiency, the holder shall receive Warrants calculated as follows: for each share of Federal-Mogul Corporation common stock deemed held, the holder shall receive Warrants in an amount equal to (A)(i) one, divided by (ii) the sum of (a) two times the total number of outstanding shares of Federal-Mogul Corporation preferred stock (but only if Class 1M accepts the Plan) plus (b) the total number of shares of Federal-Mogul Corporation common stock deemed held by holders of Allowed Class 1N Claims plus (c) the total number of outstanding shares of Federal-Mogul Corporation common stock, including any shares deemed issued pursuant to Section 8.3.2 (but only if Class 1O accepts the Plan), times (B) the total number of Warrants. For purposes of calculating such distributions of Warrants, the holder of a

Subordinated Securities Claim shall be deemed to hold one share of Federal-Mogul Corporation common stock for each $28.00 of (i) its Subordinated Securities Claim minus (ii) any insurance proceeds actually received in respect of such Subordinated Securities Claim. If, however, Class 1N rejects the Plan, then no distributions of Warrants shall be made on account of such Class 1N Claims. Notwithstanding the foregoing or anything to the contrary in this Plan, the distribution of the Warrants shall be subject to the requirements of Section 8.3.5 of the Plan.

(c)      Voting: Class 1N is impaired and each holder of an allowed Class 1N Subordinated Securities Claim is entitled to vote to accept or reject the Plan.

### 3.1.15.    Class 1O – Federal-Mogul Corporation Common Stock

(a)      Classification: Class 1O consists of all outstanding shares of Federal-Mogul common stock, of which there were 87,131,298 shares outstanding as of November 3, 2003, and shall also include up to 4,097,910 additional shares which may be deemed to be issued pursuant to Section 8.3.2.

(b)      Treatment: All existing shares of outstanding Federal-Mogul Corporation common stock and all rights related to such stock shall be cancelled, annulled and extinguished on the Effective Date. If Classes 1D, 1J, and 1O all vote to accept the Plan, then each holder of a Class 1O interest shall receive, in exchange for and in full satisfaction of its Class 1O interest, Warrants calculated as follows: for each outstanding share of Federal-Mogul common stock held as of the Record Date, the holder shall receive Warrants in an amount equal to (A)(i) one, divided by (ii) the sum of (a) two times the total number of outstanding shares of Federal-Mogul Corporation preferred stock (but only if Class 1M accepts the Plan) plus (b) the total number of shares of Federal-Mogul Corporation common stock deemed held by holders of Allowed Class 1N Claims (but only if Class 1N accepts the Plan) plus (c) the total number of outstanding shares of Federal-Mogul Corporation common stock, including shares deemed issued pursuant to 8.3.2, times (B) the total number of Warrants. If Class 1O rejects the Plan, then no distribution shall be made on account of Class 1O interests. Notwithstanding the foregoing or anything to the contrary in this Plan, the distribution of the Warrants shall be subject to the requirements of Section 8.3.5 of the Plan.

(c)      Voting: Class 1O is impaired and each holder of an Allowed Class 1O Equity Interest is entitled to vote to accept or reject the Plan.

### 3.2.    Federal-Mogul Piston Rings, Inc. ("FMPRI") (Classes 2A through 2P)

#### 3.2.1.    Class 2A – Priority Claims

(a)      Classification: Class 2A consists of all Priority Claims against FMPRI.

(b)      Treatment: On the Distribution Date, each holder of a Class 2A Allowed Priority Claim shall receive either (I) Cash equal to the Allowed Amount of such Priority Claim or (II) such other treatment as may be agreed upon in writing by such holder and Reorganized FMPRI.

(c)     Voting:  Class 2A is impaired and the each holder of an Allowed Class 2A Claim is entitled to vote to accept or reject the Plan.

### 3.2.2.    Class 2B – Secured Bank Claims

(a)     Classification:  Class 2B consists of all Secured Bank Claims against FMPRI.

(b)     Treatment:  In full and complete satisfaction of all Allowed Class 2B Claims, Claims arising under the Bank Credit Agreement (including certain letter of credit obligations) shall be deemed Allowed in the amount of $1,646,681,464.00 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) and FMPRI shall guarantee on a secured basis Reorganized Federal-Mogul's obligations under (y) the Reorganized Federal-Mogul Secured Term Loan Agreement and (z) the Reorganized Federal-Mogul Junior Secured PIK Notes.

(c)     Voting:  Class 2B is impaired and each holder of an Allowed Class 2B Claim is entitled to vote to accept or reject the Plan.

### 3.2.3.    Class 2C – Secured Surety Claims

(a)     Classification:  Class 2C consists of all Secured Surety Claims against FMPRI.

(b)     Treatment:  On the Effective Date, all Claims and interests arising under and related to any indemnity contract or guarantee between FMPRI and any of the Sureties relating to the CCR Surety Bonds, if any, and all Liens on any property of FMPRI in favor of the Sureties, shall be released, extinguished and discharged.  In full and complete satisfaction of all such Class 2C Claims, FMPRI shall guarantee on a secured basis Reorganized Federal-Mogul's obligations, if any, under the Secured Surety Notes and Junior Secured Surety PIK Notes.

(c)     Voting:  Class 2C is impaired and each holder of an Allowed Class 2C Claim is entitled to vote to accept or reject the Plan.

### 3.2.4.    Class 2D – Noteholder Claims

(a)     Classification:  Class 2D consists of all secured and unsecured Noteholder Claims against FMPRI.

(b)     Treatment:  In full and complete satisfaction of all Class 2D Noteholder Claims, the holders of Class 2D Noteholder Claims shall receive 100 percent of the equity of Reorganized FMPRI; provided, however, in consideration of the treatment accorded to Noteholder Claims elsewhere in this Plan, the holders of Class 2D Noteholder Claims shall be deemed to have automatically transferred 100 percent of the common stock of Reorganized FMPRI to Reorganized Federal-Mogul Powertrain, Inc. as of the Effective Date.

(c)     Voting:  Class 2D is impaired and each holder of an Allowed Class 2D Claim is entitled to vote to accept or reject the Plan.

### 3.2.5.    Class 2E – Other Secured Claims

(a)    Classification:  Class 2E consists of all Secured Claims against FMPRI, other than Bank Claims, Surety Claims, Noteholder Claims or Bonded Claims.  Each Secured Claim shall constitute a separate sub-class (designated, for example, as Class 2E-1) for purposes of voting and distribution.

(b)    Treatment:  At the option of the Debtor or the Reorganized Debtor and in accordance with Section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 2E, and each sub-class thereof, will be treated pursuant to one of the following alternatives: (I) the Plan will leave unaltered the legal, equitable and contractual rights to which each Secured Claim in Class 2E entitles the holder; (II) the Debtor shall cure any default that occurred before or after the Petition Date; the maturity of such Secured Claim shall be reinstated as such maturity existed prior to any such default; the holder of such Secured Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the holder on any right to accelerate its claim; and the legal, equitable and contractual rights of such holder will not otherwise be altered; (III) an Allowed Secured Claim shall receive such other treatment as the Debtor and the holder shall agree; or (IV) all of the collateral for such Secured Claim will be surrendered by the Debtor to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)    Voting:  To the extent any Allowed Secured Claims are treated in the manner set forth in clauses (I), (II), (III) or (IV) of the immediately preceding subsection, Class 2E or the particular sub-class is unimpaired and such holders are not entitled to vote to accept or reject the Plan.

### 3.2.6.    Class 2G – On-Site Environmental Claims

(a)    Classification:  Class 2G consists of all On-Site Environmental Claims against FMPRI.

(b)    Treatment:  Each holder of an Allowed On-Site Environmental Claim in Class 2G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)    Voting:  Class 2G is unimpaired and holders of Class 2G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.2.7.    Class 2H – Unsecured Claims

(a)    Classification:  Class 2H consists of all Unsecured Claims against FMPRI, other than any unsecured portion of Noteholder Claims, any unsecured portion of Bonded Asbestos Personal Injury Claims or other Claims specifically included in any other Class.

(b)    Treatment: Subject to Section 8.17 of the Plan, each holder of an Allowed Class 2H Unsecured Claim shall receive a total Cash payment equal to 35% of such holder's Allowed Unsecured Claim, with such total amount to be paid in three equal, annual installments, the first of which shall be paid on the Distribution Date and the second and third on the first and second anniversaries of the Distribution Date, respectively.

(c)     Voting:  Class 2H is impaired and each holder of an Allowed Class 2H Claim is entitled to vote to accept or reject the Plan.

### 3.2.8.     Class 2I – Non-Priority Employee Benefit Claims

(a)     Classification:  Class 2I consists of all Non-Priority Employee Benefit Claims against FMPRI.

(b)     Treatment:  On the Effective Date, Reorganized FMPRI shall continue, automatically and without further act, deed or Court order, the Employee Benefit Plans maintained by FMPRI, and each holder of an Allowed Class 2I Non-Priority Employee Benefit Claim shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Non-Priority Employee Benefit Claim entitles such holder.

(c)     Voting:  Class 2I is unimpaired and holders of Class 2I Claims are thus not entitled to vote to accept or reject the Plan.

### 3.2.9.     Class 2K – Bonded Claims

(a)     Classification:  Class 2K consists of all Bonded Claims against FMPRI.

(b)     Treatment:  Each holder of an Allowed Bonded Claim in Class 2K shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Bonded Claim entitles the holder.

(c)     Voting:  Class 2K is unimpaired and holders Class 2K Claims are thus not entitled to vote to accept or reject the Plan.

### 3.2.10.     Class 2L - Affiliate Claims

(a)     Classification:  Class 2L consists of all Affiliate Claims against FMPRI.

(b)     Treatment: On the Effective Date, at the option of the Plan Proponents, all Affiliate Claims in Class 2L shall either be (a) reinstated, in full or in part, or (b) discharged and extinguished, in full or in part, in which case such discharged and extinguished portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any property or interest on account of such portion under the Plan; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents.  If any such Class 2L Claim is reinstated, in full or in part, such reinstated Claim may, at the option of the Plan Proponents, be subordinated in legal right and priority of payment to all non-Affiliate Claims against FMPRI.  Any and all Class 2L Claims, or portions thereof, being reinstated and, to the extent, if any, that such Claims are being subordinated to non-Affiliate Claims, are set forth in Exhibit 3.1.12.

(c)     Voting:  Class 2L is impaired and each holder of an Allowed Class 2L Claim is entitled to vote to accept or reject the Plan.

### 3.2.11.    Class 2N – Subordinated Securities Claims

(a)    Classification:  Class 2N consists of all Subordinated Securities Claims against FMPRI.

(b)    Treatment:  No distributions shall be made on account of Subordinated Securities Claims against FMPRI.  All such Claims against FMPRI shall be discharged and extinguished on the Effective Date.

(c)    Voting:  Class 2N is impaired and does not receive or retain any Property under the Plan.  Accordingly, the holders of Class 2N Claims are conclusively presumed to reject this Plan and the votes of such holders will not be solicited.

### 3.2.12.    Class 2P – Equity Interests

(a)    Classification:  Class 2P consists of all Equity Interests in FMPRI.

(b)    Treatment:  No distributions shall be made on account of Equity Interests in FMPRI.  All Equity Interests in FMPRI shall be cancelled, annulled and extinguished on the Effective Date.

(c)    Voting:  Class 2P is impaired and does not receive or retain any Property under the Plan.  Accordingly, the holders of Class 2P Equity Interests are conclusively presumed to reject this Plan and the votes of such holders will not be solicited.

### 3.3.  Federal-Mogul Powertrain, Inc. ("FMPI") (Classes 3A through 3P)

### 3.3.1.    Class 3A – Priority Claims

(a)    Classification:  Class 3A consists of all Priority Claims against FMPI.

(b)    Treatment:  On the Distribution Date, each holder of a Class 3A Allowed Priority Claim shall receive either (I) Cash equal to the Allowed Amount of such Priority Claim or (II) such other treatment as may be agreed upon in writing by such holder and Reorganized FMPI.

(c)    Voting:  Class 3A is impaired and each holder of an Allowed Class 3A Claim is entitled to vote to accept or reject the Plan.

### 3.3.2.    Class 3B – Secured Bank Claims

(a)    Classification:  Class 3B consists of all Secured Bank Claims against FMPI.

(b)    In full and complete satisfaction of the Allowed Class 3B Claims, Claims arising under the Bank Credit Agreement (including certain letter of credit obligations) shall be deemed Allowed in the amount of $1,646,681,464.00 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) and FMPI shall guarantee on a secured basis

40

Reorganized Federal-Mogul's obligations under (y) the Reorganized Federal-Mogul Secured Term Loan Agreement and (z) the Reorganized Federal-Mogul Junior Secured PIK Notes.

      (c)    Voting: Class 3B is impaired and each holder of an Allowed Class 3B Claim is entitled to vote to accept or reject the Plan.

### 3.3.3.   Class 3C – Secured Surety Claims

      (a)    Classification: Class 3C consists of all Secured Surety Claims against FMPI.

      (b)    Treatment: On the Effective Date, all Claims and interests arising under and related to any indemnity contract or guarantee between FMPI and any of the Sureties relating to the CCR Surety Bonds, if any, and all Liens on any property of FMPI in favor of the Sureties, shall be released, extinguished and discharged. In full and complete satisfaction of all such Class 3C Claims, FMPI shall guarantee on a secured basis Reorganized Federal-Mogul's obligations, if any, under the Secured Surety Notes and Junior Secured Surety PIK Notes.

      (c)    Voting: Class 3C is impaired and each holder of an Allowed Class 3C Claim is entitled to vote to accept or reject the Plan.

### 3.3.4.   Class 3D – Noteholder Claims

      (a)    Classification: Class 3D consists of all secured and unsecured Noteholder Claims against FMPI.

      (b)    Treatment: On the Distribution Date, all Claims arising under FMPI's Guaranty of the Noteholder Claims shall be released, extinguished and discharged. In consideration of the treatment accorded Class 1D, holders of Class 3D Noteholder Claims shall receive no additional distribution under the Plan on account of such Class 3D Noteholder Claims.

      (c)    Voting: Class 3D is impaired and each holder of an Allowed Class 3D is entitled to vote to accept or reject the Plan.

### 3.3.5.   Class 3E – Other Secured Claims

      (a)    Classification: Class 3E consists of all Secured Claims against FMPI, other than Bank Claims, Surety Claims, Noteholder Claims or Bonded Claims. Each Secured Claim shall constitute a separate sub-class (designated, for example, as Class 3E-1) for purposes of voting and distribution.

      (b)    Treatment: At the option of the Debtor or the Reorganized Debtor and in accordance with Section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 3E, and each sub-class thereof, will be treated pursuant to one of the following alternatives: (I) the Plan will leave unaltered the legal, equitable and contractual rights to which each Secured Claim in Class 3E entitles the holder; (II) the Debtor shall cure any default that occurred before or after the Petition Date; the maturity of such Secured Claim shall be reinstated as such maturity existed

prior to any such default; the holder of such Secured Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the holder on any right to accelerate its claim; and the legal, equitable and contractual rights of such holder will not otherwise be altered; (III) an Allowed Secured Claim shall receive such other treatment as the Debtor and the holder shall agree; or (IV) all of the collateral for such Secured Claim will be surrendered by the Debtor to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)     Voting: To the extent any Allowed Secured Claims are treated in the manner set forth in clauses (I), (II), (III) or (IV) of the immediately preceding subsection, Class 3E or the particular sub-class is unimpaired and such holders are not entitled to vote to accept or reject the Plan.

### 3.3.6.     Class 3G – On-Site Environmental Claims

(a)     Classification: Class 3G consists of all On-Site Environmental Claims against FMPI.

(b)     Treatment: Each holder of an Allowed On-Site Environmental Claim in Class 3G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting: Class 3G is unimpaired and holders of Class 3G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.3.7.     Class 3H – Unsecured Claims

(a)     Classification: Class 3H consists of all Unsecured Claims against FMPI, other than any unsecured portion of Noteholder Claims, any unsecured portion of Bonded Asbestos Personal Injury Claims, or other Claims specifically included in any other Class.

(b)     Treatment: Subject to Section 8.17 of the Plan, each holder of an Allowed Class 3H Unsecured Claim shall receive a total Cash payment equal to 35% of such holder's Allowed Unsecured Claim, with such total amount to be paid in three equal, annual installments, the first of which shall be paid on the Distribution Date and the second and third on the first and second anniversaries of the Distribution Date, respectively.

(c)     Voting: Class 3H is impaired and each holder of an Allowed Class 3H Claim is entitled to vote to accept or reject the Plan.

### 3.3.8.     Class 3I – Non-Priority Employee Benefit Claims

(a)     Classification: Class 3I consists of all Non-Priority Employee Benefit Claims against FMPI.

(b)     Treatment: On the Effective Date, Reorganized FMPI shall continue, automatically and without further act, deed or Court order, the Employee Benefit Plans maintained by FMPI, and each holder of an Allowed Class 3I Non-Priority Employee Benefit

Claim shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Non-Priority Employee Benefit Claim entitles such holder.

(c)   Voting: Class 3I is unimpaired and holders of Class 3I Claims are thus not entitled to vote to accept or reject the Plan.

### 3.3.9.   Class 3K – Bonded Claims

(a)   Classification: Class 3K consists of all Bonded Claims against FMPI.

(b)   Treatment: Each holder of an Allowed Bonded Claim in Class 3K shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Bonded Claim entitles the holder.

(c)   Voting: Class 3K is unimpaired and holders of Class 3K Claims are thus not entitled to vote to accept or reject the Plan.

### 3.3.10.   Class 3L - Affiliate Claims

(a)   Classification: Class 3L consists of all Affiliate Claims against FMPI.

(b)   Treatment: On the Effective Date, at the option of the Plan Proponents, all Affiliate Claims in Class 3L shall either be (a) reinstated, in full or in part, or (b) discharged and extinguished, in full or in part, in which case such discharged and extinguished portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any property or interest on account of such portion under the Plan; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents. If any such Class 3L Claim is reinstated, in full or in part, such reinstated Claim may, at the option of the Plan Proponents, be subordinated in legal right and priority of payment to all non-Affiliate Claims against FMPI. Any and all Class 3L Claims, or portions thereof, being reinstated and, to the extent, if any, that such Claims are being subordinated to non-Affiliate Claims, are set forth in Exhibit 3.1.12.

(c)   Voting: Class 3L is impaired and each holder of an Allowed Class 3L Claim is entitled to vote to accept or reject the Plan.

### 3.3.11.   Class 3P – Equity Interests

(a)   Classification: Class 3P consists of all Equity Interests in FMPI.

(b)   Treatment: Each holder of an Allowed Equity Interest in Class 3P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)   Voting: Class 3P is unimpaired and holders of Class 3P Equity Interests are thus not entitled to vote to accept or reject the Plan.

43

### 3.4. Federal-Mogul Ignition Company ("FMIC") (Classes 4A through 4P)

#### 3.4.1.    Class 4A – Priority Claims

(a)    Classification:  Class 4A consists of all Priority Claims against FMIC.

(b)    Treatment:  On the Distribution Date, each holder of a Class 4A Allowed Priority Claim shall receive either (I) Cash equal to the Allowed Amount of such Priority Claim or (II) such other treatment as may be agreed upon in writing by such holder and Reorganized FMIC.

(c)    Voting:  Class 4A is impaired and each holder of an Allowed Class 4A Claim is entitled to vote to accept or reject the Plan.

#### 3.4.2.    Class 4B – Secured Bank Claims

(a)    Classification:  Class 4B consists of all Secured Bank Claims against FMIC.

(b)    In full and complete satisfaction of all Allowed Class 4B Claims, Claims arising under the Bank Credit Agreement (including certain letter of credit obligations) shall be deemed Allowed in the amount of  $1,646,681,464.00 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) and FMIC shall guarantee on a secured basis Reorganized Federal-Mogul's obligations under (y) the Reorganized Federal-Mogul Secured Term Loan Agreement and (z) the Reorganized Federal-Mogul Junior Secured PIK Notes.

(c)    Voting:  Class 4B is impaired and each holder of an Allowed Class 4B Claim is entitled to vote to accept or reject the Plan.

#### 3.4.3.    Class 4C – Secured Surety Claims

(a)    Classification:  Class 4C consists of all Secured Surety Claims against FMIC.

(b)    Treatment:  On the Effective Date, all Claims and interests arising under and related to any indemnity contract or guarantee between FMIC and any of the Sureties relating to the CCR Surety Bonds, if any, and all Liens on any property of FMIC in favor of the Sureties, shall be released, extinguished and discharged.  In full and complete satisfaction of all such Class 4C Claims, FMIC shall guarantee on a secured basis Reorganized Federal-Mogul's obligations, if any, under the Secured Surety Notes and Junior Secured Surety PIK Notes.

(c)    Voting:  Class 4C is impaired and each holder of an Allowed Class 4C Claim is entitled to vote to accept or reject the Plan.

#### 3.4.4.    Class 4D – Noteholder Claims

(a)    Classification:  Class 4D consists of all secured and unsecured Noteholder Claims against FMIC.

(b)     Treatment:  On the Distribution Date, all Claims arising under FMIC's Guaranty of the Noteholder Claims shall be released, extinguished and discharged.  In consideration of the treatment accorded Class 1D, holders of Class 4D Noteholder Claims shall receive no additional distribution under the Plan on account of such Class 4D Noteholder Claims.

(c)     Voting:  Class 4D is impaired and each holder of an Allowed Class 4D Claim is entitled to vote to accept or reject the Plan.

### 3.4.5.     Class 4E – Other Secured Claims

(a)     Classification:  Class 4E consists of all Secured Claims against FMIC, other than Bank Claims, Surety Claims, Noteholder Claims or Bonded Claims.  Each Secured Claim shall constitute a separate sub-class (designated, for example, as Class 4E-1) for purposes of voting and distribution.

(b)     Treatment:  At the option of the Debtor or the Reorganized Debtor and in accordance with Section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 4E, and each sub-class thereof, will be treated pursuant to one of the following alternatives: (I) the Plan will leave unaltered the legal, equitable and contractual rights to which each Secured Claim in Class 4E entitles the holder; (II) the Debtor shall cure any default that occurred before or after the Petition Date; the maturity of such Secured Claim shall be reinstated as such maturity existed prior to any such default; the holder of such Secured Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the holder on any right to accelerate its claim; and the legal, equitable and contractual rights of such holder will not otherwise be altered; (III) an Allowed Secured Claim shall receive such other treatment as the Debtor and the holder shall agree; or (IV) all of the collateral for such Secured Claim will be surrendered by the Debtor to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)     Voting:  To the extent any Allowed Secured Claims are treated in the manner set forth in clauses (I), (II), (III) or (IV) of the immediately preceding subsection, Class 4E or the particular sub-class is unimpaired and such holders are not entitled to vote to accept or reject the Plan.

### 3.4.6.     Class 4G – On-Site Environmental Claims

(a)     Classification:  Class 4G consists of all On-Site Environmental Claims against FMIC.

(b)     Treatment:  Each holder of an Allowed On-Site Environmental Claim in Class 4G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting:  Class 4G is unimpaired and holders of Class 4G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.4.7.    Class 4H – Unsecured Claims

(a)    Classification:  Class 4H consists of all Unsecured Claims against FMIC, other than any unsecured portion of Noteholder Claims, any unsecured portion of Bonded Asbestos Personal Injury Claims, or other Claims specifically included in any other Class.

(b)    Treatment: Subject to Section 8.17 of the Plan, each holder of an Allowed Class 4H Unsecured Claim shall receive a total Cash payment equal to 35% of such holder's Allowed Unsecured Claim, with such total amount to be paid in three equal, annual installments, the first of which shall be paid on the Distribution Date and the second and third on the first and second anniversaries of the Distribution Date, respectively.

(c)    Voting:  Class 4H is impaired and each holder of an Allowed Class 4H Claim is entitled to vote to accept or reject the Plan.

### 3.4.8.    Class 4I – Non-Priority Employee Benefit Claims

(a)    Classification:  Class 4I consists of all Non-Priority Employee Benefit Claims against FMIC.

(b)    Treatment:  On the Effective Date, Reorganized FMIC shall continue, automatically and without further act, deed or Court order, the Employee Benefit Plans maintained by FMIC, and each holder of an Allowed Class 4I Non-Priority Employee Benefit Claim shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Non-Priority Employee Benefit Claim entitles such holder.

(c)    Voting:  Class 4I is unimpaired and holders of Class 4I Claims are thus not entitled to vote to accept or reject the Plan.

### 3.4.9.    Class 4K – Bonded Claims

(a)    Classification:  Class 4K consists of all Bonded Claims against FMIC.

(b)    Treatment:  Each holder of an Allowed Bonded Claim in Class 4K shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Bonded Claim entitles the holder.

(c)    Voting:  Class 4K is unimpaired and holders of Class 4K Claims are thus not entitled to vote to accept or reject the Plan.

### 3.4.10.    Class 4L - Affiliate Claims

(a)    Classification:  Class 4L consists of all Affiliate Claims against FMIC.

(b)    Treatment:  On the Effective Date, at the option of the Plan Proponents, all Affiliate Claims in Class 4L shall either be (a) reinstated, in full or in part, or (b) discharged and extinguished, in full or in part, in which case such discharged and extinguished portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any

property or interest on account of such portion under the Plan; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents. If any such Class 4L Claim is reinstated, in full or in part, such reinstated Claim may, at the option of the Plan Proponents, be subordinated in legal right and priority of payment to all non-Affiliate Claims against FMIC. Any and all Class 4L Claims, or portions thereof, being reinstated and, to the extent, if any, that such Claims are being subordinated to non-Affiliate Claims, are set forth in Exhibit 3.1.12.

(c)     Voting: Class 4L is impaired and each holder of an Allowed Class 4L Claim is entitled to vote to accept or reject the Plan.

### 3.4.11.     Class 4P – Equity Interests

(a)     Classification: Class 4P consists of all Equity Interests in FMIC.

(b)     Treatment: Each holder of an Allowed Equity Interest in Class 4P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting: Class 4P is unimpaired and holders of Class 4K Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.5.     Federal-Mogul Products, Inc. ("F-M Products") (Classes 5A through 5P)

### 3.5.1.     Class 5A – Priority Claims

(a)     Classification: Class 5A consists of all Priority Claims against F-M Products.

(b)     Treatment: On the Distribution Date, each holder of a Class 5A Allowed Priority Claim shall receive either (I) Cash equal to the Allowed Amount of such Priority Claim or (II) such other treatment as may be agreed upon in writing by such holder and Reorganized F-M Products.

(c)     Voting: Class 5A is impaired and each holder of an Allowed Class 5A Claim is entitled to vote to accept or reject the Plan.

### 3.5.2.     Class 5B – Secured Bank Claims

(a)     Classification: Class 5B consists of all Secured Bank Claims against F-M Products.

(b)     In full and complete satisfaction of all Allowed Class 5B Bank Claims, Claims arising under the Bank Credit Agreement (including certain letter of credit obligations) shall be deemed Allowed in the amount of $1,646,681,464.00 (as adjusted as of the Effective Date to convert any foreign currencies to U.S. dollars) and F-M Products shall guarantee on a secured basis Reorganized Federal-Mogul's obligations under (y) the Reorganized

47

Federal-Mogul Secured Term Loan Agreement and (z) the Reorganized Federal-Mogul Junior Secured PIK Notes.

(c)    Voting: Class 5B is impaired and each holder of an Allowed Class 5B Claim is entitled to vote to accept or reject the Plan.

### 3.5.3. Class 5C - Secured Surety Claims

(a)    Classification: Class 5C consists of all Secured Surety Claims against F-M Products.

(b)    Treatment: On the Effective Date, all Claims and interests arising under and related to any indemnity contract or guarantee between F-M Products and any of the Sureties relating to the CCR Surety Bonds, if any, and all Liens on any property of F-M Products in favor of the Sureties, shall be released, extinguished and discharged. In full and complete satisfaction of all such Class 5C Claims, F-M Products shall guarantee on a secured basis Reorganized Federal-Mogul's obligations, if any, under the Secured Surety Notes and Junior Secured Surety PIK Notes.

(c)    Voting: Class 5C is impaired and each holder of an Allowed Class 5C Claim is entitled to vote to accept or reject the Plan.

### 3.5.4. Class 5D – Noteholder Claims

(a)    Classification: Class 5D consists of all secured and unsecured Noteholder Claims against F-M Products.

(b)    Treatment: On the Distribution Date, all Claims arising under FM Product's Guaranty of the Noteholder Claims shall be released, extinguished and discharged. In consideration of the treatment accorded Class 1D, holders of Class 5D Noteholder Claims shall receive no additional distribution under the Plan on account of such Class 5D Noteholder Claims.

(c)    Voting: Class 5D is impaired and each holder of an Allowed Class 5C Claim is entitled to vote to accept or reject the Plan.

### 3.5.5. Class 5E – Other Secured Claims

(a)    Classification: Class 5E consists of all Secured Claims against FM Products, other than Bank Claims, Surety Claims, Noteholder Claims or Bonded Claims. Each Secured Claim shall constitute a separate sub-class (designated, for example, as Class 5E-1) for purposes of voting and distribution.

(b)    Treatment: At the option of the Debtor or the Reorganized Debtor and in accordance with Section 1124 of the Bankruptcy Code, all Allowed Secured Claims in Class 5E, and each sub-class thereof, will be treated pursuant to one of the following alternatives: (I) the Plan will leave unaltered the legal, equitable and contractual rights to which each Secured Claim in Class 5E entitles the holder; (II) the Debtor shall cure any default that occurred before or after

the Petition Date; the maturity of such Secured Claim shall be reinstated as such maturity existed prior to any such default; the holder of such Secured Claim shall be compensated for any damages incurred as a result of any reasonable reliance by the holder on any right to accelerate its claim; and the legal, equitable and contractual rights of such holder will not otherwise be altered; (III) an Allowed Secured Claim shall receive such other treatment as the Debtor and the holder shall agree; or (IV) all of the collateral for such Secured Claim will be surrendered by the Debtor to the holder of such Claim on the Effective Date or as soon as practicable thereafter.

(c)     Voting:  To the extent any Allowed Secured Claims are treated in the manner set forth in clauses (I), (II), (III) or (IV) of the immediately preceding subsection, Class 5E or the particular sub-class is unimpaired and such holders are not entitled to vote to accept or reject the Plan.

### 3.5.6.     Class 5G – On-Site Environmental Claims

(a)     Classification:  Class 5G consists of all On-Site Environmental Claims against F-M Products.

(b)     Treatment:  Each holder of an Allowed On-Site Environmental Claim in Class 5G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting:  Class 5G is unimpaired and holders of Class 5G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.5.7.     Class 5H – Unsecured Claims

(a)     Classification:  Class 5H consists of all Unsecured Claims against F-M Products, other than any unsecured portion of Noteholder Claims, any unsecured portion of Bonded Asbestos Personal Injury Claims or other Claims specifically included in any other Class.

(b)     Treatment: Subject to Section 8.17 of the Plan, each holder of an Allowed Class 5H Unsecured Claim shall receive a total Cash payment equal to 35% of such holder's Allowed Unsecured Claim, with such total amount to be paid in three equal, annual installments, the first of which shall be paid on the Distribution Date and the second and third on the first and second anniversaries of the Distribution Date, respectively.

(c)     Voting:  Class 5H is impaired and each holder of an Allowed Class 5H Claim is entitled to vote to accept or reject the Plan.

### 3.5.8.     Class 5I – Non-Priority Employee Benefit Claims

(a)     Classification:  Class 5I consists of all Non-Priority Employee Benefit Claims against F-M Products.

(b)     Treatment:  On the Effective Date, Reorganized F-M Products shall continue, automatically and without further act, deed or Court order, the Employee Benefit Plans

maintained by F-M Products, and each holder of an Allowed Class 5I Non-Priority Employee Benefit Claim shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Non-Priority Employee Benefit Claim entitles such holder.

(c)    Voting:  Class 5I is unimpaired and holders of Class 5I Claims are thus not entitled to vote to accept or reject the Plan.

### 3.5.9.    Class 5J – Asbestos Personal Injury Claims

(a)    Classification:  Class 5J consists of all Asbestos Personal Injury Claims against F-M Products.

(b)    Treatment:  As of the Effective Date, liability for all Class 5J Asbestos Personal Injury Claims shall be automatically and without further act, deed or Court order, transferred to, vested in and assumed by the Trust.  Each Asbestos Personal Injury Claim in Class 5J shall be addressed (i.e., Allowed or disallowed, and if Allowed, then paid) solely by the Trust pursuant to and in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

(c)    Voting:  Class 5J is impaired and each holder of an Allowed Class 5J Claim is entitled to vote to accept or reject the Plan.

### 3.5.10.    Class 5K – Bonded Claims

(a)    Classification:  Class 5K consists of all Bonded Claims against F-M Products.

(b)    Treatment:  Each holder of an Allowed Bonded Claim in Class 5K shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Bonded Claim entitles the holder.

(c)    Voting:  Class 5K is unimpaired and holders of Class 5K Claims are thus not entitled to vote to accept or reject the Plan.

### 3.5.11.    Class 5L - Affiliate Claims

(a)    Classification:  Class 5L consists of all Affiliate Claims against F-M Products.

(b)    Treatment: On the Effective Date, at the option of the Plan Proponents, all Affiliate Claims in Class 5L shall either be (a) reinstated, in full or in part, or (b) discharged and extinguished, in full or in part, in which case such discharged and extinguished portion shall be eliminated and the holders thereof shall not be entitled to, and shall not receive or retain, any property or interest on account of such portion under the Plan; provided, however, that prior to such discharge and extinguishment such Affiliate Claims may be contributed to capital, transferred, setoff or subject to any other arrangement at the option of the Plan Proponents.  If any such Class 5L Claim is reinstated, in full or in part, such reinstated Claim may, at the option of the Plan Proponents, be subordinated in legal right and priority of payment to all non-Affiliate

Claims against F-M Products. Any and all Class 5L Claims, or portions thereof, being reinstated and, to the extent, if any, that such Claims are being subordinated to non-Affiliate Claims, are set forth in Exhibit 3.1.12.

(c)     Voting: Class 5L is impaired and each holder of an Allowed Class 5L Claim is entitled to vote to accept or reject the Plan.

### 3.5.12.    Class 5P – Equity Interests

(a)     Classification: Class 5P consists of all Equity Interests in F-M Products.

(b)     Treatment: Each holder of an Allowed Equity Interest in Class 5P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting: Class 5P is unimpaired and holders of Class 5P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.6.    T&N Limited ("T&N") (Classes 6A – 6P)

### 3.6.1.    Class 6A – Priority and Preferential Claims

(a)     Classification: Class 6A consists of all Priority and Preferential Claims against T&N. Class 6A Priority and Preferential Claims shall include, without limitation, all Priority and Preferential Claims against other U.K. Debtors for which T&N is liable under applicable non-bankruptcy law as a result of agency agreements entered into with such Affiliate prior to the Petition Date; provided, however, to ensure that there shall be no double recovery to any holder on account of the inclusion in Class 6A of any Priority or Preferential Claim against T&N as a result of such agency agreements, such holder shall be required to make an election as to whether such Priority or Preferential Claim shall be asserted against T&N as principal, or against the relevant Affiliate of T&N which was acting as the agent of T&N.

(b)     Treatment: Each holder of a Class 6A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting: Class 6A is unimpaired and holders of Class 6A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.6.2.    Class 6E – Other Secured Claims

(a)     Classification: Class 6E consists of all Secured Claims against T&N, other than Bonded Claims. Each Secured Claim shall constitute a separate sub-class (designated, for example, as Class 6C-1) for purposes of Voting and distribution.

(b)     Treatment: In accordance with Section 1124 of the Bankruptcy Code, the Plan will leave unaltered the legal, equitable and contractual rights to which each Allowed Secured Claim in Class 6E entitles the holder.

(c)     Voting:  Class 6E or the particular sub-class is unimpaired, and holders of Claims in such Class or sub-class are thus not entitled to vote to accept or reject the Plan.

### 3.6.3.     Class 6H – Unsecured Claims

(a)     Classification: Class 6H consists of all Unsecured Claims against T&N other than any Claims that are specifically included in any other Class.  Class 6H shall expressly include, without limitation, all Surety Claims against T&N.  Class 6H shall also expressly include, without limitation, all Unsecured Claims against other U.K. Debtors or non-Debtor Affiliates of T&N for which T&N is liable under applicable non-bankruptcy law as a result of agency agreements entered into with such Affiliate prior to the Petition Date; provided that, to ensure that there shall be no double recovery to any holder on account of the inclusion in Class 6H of any Claim against T&N as a result of such agency agreements, such holder shall be required to make an election as to whether such Claim shall be asserted against T&N as principal, or against the relevant Affiliate of T&N which was acting as the agent of T&N. Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 6H shall also include all Class 6I Non-Priority T&N Pension Plan Employee Benefit Claims against T&N.

(b)     Treatment:  Each holder of an Allowed Class 6H Claim shall receive, on the Distribution Date, a Cash payment equal to the Allowed Amount of such holder's Class 6H Claim multiplied by:  (i) T&N Distribution Ratio 1 if the Consensual Marketing Procedures have not been performed or (ii) T&N Distribution Ratio 2 if the Consensual Marketing Procedures have been performed.

(c)     Voting:  Class 6H is impaired and each holder of an Allowed Class 6H Claim is entitled to vote to accept or reject the Plan.

### 3.6.4.     Class 6I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)     Classification: Class 6I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against T&N.

(b)     Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the following shall occur in full satisfaction of all Non-Priority T&N Pension Plan Employee Benefit Claims.

(i)     The T&N Pension Plan shall continue as modified herein.

(ii)     The T&N Pension Plan contribution rate from the Effective Date to April 30, 2012 shall be limited to the annual maintenance cost with respect to services rendered after the Effective Date by current active employees and participants of T&N and other U.K. Debtors with obligations under or relating to the T&N Pension Plan that choose to remain in the T&N Pension Plan (provided such amount is lower than the current annual funding).  No annual contributions will be made to the T&N Pension Plan to amortize the underfunding that relates to prior service by retired, deferred, current and active members.

(iii)    To moderate the impact of post-Effective Date redundancies on the T&N Pension Plan, T&N shall pay an amount -- over a period of not more than two years after a redundancy action -- equal to the additional liability crystallized by each redundancy action (job elimination of less than twenty people at a given site in any one year will be disregarded).

(iv)    Reorganized T&N shall have the right to terminate the T&N Pension Plan at any time on and after April 30, 2012.  If Reorganized T&N does so terminate the T&N Pension Plan, then the T&N Pension Plan Trustees shall receive a Cash payment equal to the Allowed Amount of the Non-Priority T&N Pension Plan Employee Benefit Claims against all U.K. Debtors calculated as of the Petition Date multiplied by T&N Distribution Ratio 1 plus interest at market rate from the Effective Date through the date the T&N Pension Plan is terminated. Such treatment shall be in full and complete satisfaction of all Non-Priority T&N Pension Plan Employee Benefit Claims against all U.K. Debtors having obligations under or relating to the T&N Pension Plan.

(v)     The contingent obligation of Reorganized T&N to pay the dividend set forth above will be embodied in either, at the option of the Plan Proponents, a contingent promissory note from Reorganized T&N or an amendment to the Trust Deed of the T&N Pension Plan.  The note will be delivered to the T&N Pension Plan Trustee or, if applicable, the amendment to the Trust Deed shall take effect on the Effective Date.

(vi)    The T&N Pension Plan Trustees shall, to the extent permitted by applicable law, continue the current investment strategy in consultation with Reorganized T&N and shall not change such investment strategy without approval of Reorganized T&N.

(vii)   As an alternative to (i) through (vi) above, such other treatment as may be agreed to by the T&N Pension Plan Trustees and the Plan Proponents.

(c)     Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan shall be compromised and discharged and all Class 6I Non-Priority T&N Pension Plan Employee Benefit Claims shall be included with and treated as Class 6H Claims.

(d)    Voting: Class 6I is impaired and each holder of an Allowed Class 6I Claim is entitled to vote to accept or reject the Plan.

### 3.6.5.    Class 6J – Asbestos Personal Injury Claims

(a)    Classification: Class 6J consists of all Asbestos Personal Injury Claims against T&N, and shall also include, without limitation, all Asbestos Personal Injury Claims against other U.K. Debtors or non-Debtor Affiliates of T&N for which T&N is liable under applicable non-bankruptcy law as a result of agency agreements entered into with such Affiliates before the Petition Date, to the extent that the holders of such Claims against the Affiliates of T&N so elect. To ensure that there shall be no double recovery to any holder on account of the inclusion in Class 6J of any Asbestos Personal Injury Claim against T&N as a result of such agency agreements, each holder of such Claim against a T&N Affiliate shall be required to make an election as to whether such Asbestos Personal Injury Claim shall be asserted against T&N as principal, or against the relevant Affiliate of T&N which was acting as the agent of T&N.

(b)    Treatment: As of the Effective Date, liability for all Class 6J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Additionally, on the Effective Date, the liability of Reorganized T&N for each Class 6J Claim shall continue but recourse to the assets of Reorganized T&N in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized T&N shall be, without further order of Court, released and discharged from Class 6J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)    Voting: Class 6J is impaired and each holder of an Allowed Class 6J Claim is entitled to vote to accept or reject the Plan.

### 3.6.6.    Class 6L - Affiliate Claims

(a)    Classification: Class 6L consists of all Affiliate Claims against T&N which are subject to the Subordination Deed. Class 6L Affiliate Claims shall include, without limitation, all Affiliate Claims against other U.K. Debtors or non-Debtor Affiliates of T&N which are subject to the Subordination Deed and for which T&N is liable under applicable non-bankruptcy law as a result of agency agreements entered into with such Affiliate prior to the Petition Date; provided that, to ensure that there shall be no double recovery to any holder on account of the inclusion in Class 6L of any Affiliate Claim against T&N as a result of such agency agreements, such holder shall be required to make an election as to whether such Affiliate Claim shall be asserted against T&N as principal, or against the relevant Affiliate of T&N which was acting as the agent of T&N.

(b)     Treatment:  All Affiliate Claims in Class 6L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 6L is unimpaired and holders of Class 6L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.6.7.     Class 6P – Equity Interests

(a)     Classification:  Class 6P consists of all Equity Interests in T&N.

(b)     Treatment:  Each holder of an Allowed Equity Interest in Class 6P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting:  Class 6P is unimpaired and holders of Class 6P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.7.     Federal-Mogul Ignition (U.K.) Limited ("FM Ignition")(Classes 7A – 7P)

### 3.7.1.     Class 7A - Priority and Preferential Claims

(a)     Classification:  Class 7A consists of all Priority and Preferential Claims against FM Ignition.

(b)     Treatment:  Each holder of a Class 7A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting:  Class 7A is unimpaired and holders of Class 7A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.7.2.     Class 7H – Unsecured Claims

(a)     Classification: Class 7H consists of all Unsecured Claims against FM Ignition other than any Claims that are specifically included in any other Class.  Additionally, if the FM Ignition Pension Plan Trustees do not vote in favor of acceptance of the Plan for FM Ignition and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangement for FM Ignition and/or if the Consensual Marketing Procedures are performed with respect to FM Ignition, then Class 7H shall also include all Class 7I Non-Priority FM Ignition Pension Plan Employee Benefit Claims against FM Ignition.

(b)     Treatment:  Each holder of an Allowed Class 7H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of (i) the Allowed Amount of such holder's Class 7H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual

Marketing Procedures are performed and (ii) the Allowed Amount of such holder's Class 7H Claim multiplied by the Company Specific Distribution Ratio for FM Ignition.

(c)    Voting: Class 7H is impaired and each holder of an Allowed Class 7H Claim is entitled to vote to accept or reject the Plan.

### 3.7.3.    Class 7I – Non-Priority FM Ignition Pension Plan Employee Benefit Claims

(a)    Classification: Class 7I consists of all Non-Priority FM Ignition Pension Plan Employee Benefit Claims against FM Ignition.

(b)    Treatment A: If the FM Ignition Pension Plan Trustees vote in favor of acceptance of the Plan for FM Ignition and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangement for FM Ignition and if the Consensual Marketing Procedures are not performed with respect to FM Ignition, then the FM Ignition Pension Plan Trustee may elect either the "Let It Run" treatment or the "Alternate Payout" treatment, each as described below.

1. The following shall occur if the FM Ignition Pension Plan Trustees elect the "Let It Run" Treatment:

(A)    The FM Ignition Pension Plan shall continue as modified herein. Current active employees who are part of the FM Ignition Pension Plan shall be offered a choice with respect to pension benefits relating to services performed post-Effective Date.

(B)    The FM Ignition contribution rate from the Effective Date to April 30, 2012 shall be limited to the annual maintenance cost with respect to services rendered after the Effective Date by current active employee participants of the FM Ignition Pension Plan that choose to remain in the FM Ignition Pension Plan (provided such amount is lower than the current annual funding). No annual contributions will be made to the FM Ignition Pension Plan to amortize the underfunding that relates to prior service by retired, deferred, current and active members.

(C)    Reorganized FM Ignition shall have the right to elect to terminate the FM Ignition Pension Plan at any time on and after April 30, 2012. If Reorganized FM Ignition does so terminate the FM Ignition Pension Plan, then the FM Ignition Pension Plan Trustees shall receive a Cash Payment equal to the Allowed Amount of the Non-Priority FM Ignition Pension Plan Employee Benefit Claims calculated as of the Petition Date multiplied by the greater of T&N Distribution Ratio 1 and the Company Specific Distribution Ratio plus interest at market rate from the Effective Date through the date the FM Ignition Pension Plan is terminated. Such treatment shall be in full and complete satisfaction of all Non-Priority FM Ignition Pension Plan Employee Benefit Claims.

(D)     The contingent obligation of Reorganized FM Ignition to pay the dividend set forth above will be embodied in either, at the option of the Plan Proponents, a contingent promissory note from Reorganized FM Ignition or an amendment to the Trust Deed for the FM Ignition Pension Plan. The note will be delivered to the FM Ignition Pension Trustee or, if applicable, the amendment to the Trust Deed shall take effect on the Effective Date.

(E)     The FM Ignition Pension Plan Trustees shall, to the extent permitted by applicable law, continue the current investment strategy in consultation with Reorganized FM Ignition and shall not change such investment strategy without approval from Reorganized FM Ignition.

2.      The following shall occur if the FM Ignition Pension Plan Trustees elect the "Alternate Payout" treatment:

(A)     On the Effective Date, the FM Ignition Pension Plan shall pay the FM Ignition Pension Plan Trustees an amount sufficient to purchase annuities to secure the benefits of all participants retired and currently receiving pension payments.

(B)     Actuarially equivalent transfer values would be provided to non-pensioner participants (assuming no cost of living adjustments). Actuarial assumptions will be the same as used in that certain August 2003 Transfer Value change assumption calculation.

(C)     Contributions by Reorganized FM Ignition to fund (A) and (B) above shall be limited to no more than £9 million.

(c)     Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the FM Ignition Pension Plan shall be compromised and discharged and all Class 7I Non-Priority FM Ignition Pension Plan Employee Benefit Claims shall be included with and treated as Class 7H Claims.

(d)     Voting:  Class 7I is impaired and each holder of an Allowed Class 7I Claim is entitled to vote to accept or reject the Plan.

### 3.7.4.    Class 7J - Asbestos Personal Injury Claims

(a)     Classification:  Class 7J consists of all Asbestos Personal Injury Claims against FM Ignition as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)     Treatment:  As of the Effective Date, liability for all Class 7J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Additionally, on the Effective Date, the liability of Reorganized FM Ignition for each Class 7J Claim shall continue but recourse to the assets of

Reorganized FM Ignition in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FM Ignition shall be, without further order of Court, released and discharged from Class 7J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)     Voting:  Class 7J is impaired and each holder of an Allowed Class 7J Claim is entitled to vote to accept or reject the Plan.

### 3.7.5.     Class 7L - Affiliate Claims

(a)     Classification:  Class 7L consists of all Affiliate Claims against FM Ignition which are subject to the Subordination Deed.

(b)     Treatment:  All Affiliate Claims in Class 7L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 7L is unimpaired and holders of Class 7L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.7.6.     Class 7P – Equity Interests

(a)     Classification:  Class 7P consists of all Equity Interests in FM Ignition.

(b)     Treatment:  Each holder of an Allowed Equity Interest in Class 7P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting:  Class 7P is unimpaired and holders of Class 7P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.8.   Federal-Mogul Systems Protection Group Limited  (FMSPG") (Classes 8A - 8P)

### 3.8.1.     Class 8A - Priority and Preferential Claims

(a)     Classification:  Class 8A consists of all Priority and Preferential Claims against FMSPG other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment:  Each holder of a Class 8A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)    Voting: Class 8A is unimpaired and holders of Class 8A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.8.2.    Class 8H – Unsecured Claims

(a)    Classification: Class 8H consists of all Unsecured Claims against FMSPG other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H. Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 8H shall also include all Class 8I Non-Priority T&N Pension Plan Employee Benefit Claims against FMSPG.

(b)    Treatment: Each holder of an Allowed Class 8H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 8H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 8H Claim multiplied by the Company Specific Distribution Ratio for FMSPG; or (iii) if FMSPG is a Small Company, the Allowed Amount of such holder's Class 8H Claim multiplied by the Small Company Specific Distribution Ratio for FMSPG.

(c)    Voting: Class 8H is impaired and each holder of an Allowed Class 8H Claim is entitled to vote to accept or reject the Plan.

### 3.8.3.    Class 8I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 8I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMSPG.

(b)    Treatment A: If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 8I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B: If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 8I Non Priority T&N Pension Plan Employee Benefit Claims against FMSPG shall be included in and treated as Class 8H Claims.

(d)    Voting:  Class 8I is impaired and each holder of an Allowed Class 8I Claim is entitled to vote to accept or reject the Plan.

### 3.8.4.    Class 8L - Affiliate Claims

(a)    Classification:  Class 8L consists of all Affiliate Claims against FMSPG which are subject to the Subordination Deed, other than any such Affiliate Claims in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 8L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 8L is unimpaired and holders of Class 8L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.8.5.    Class 8P – Equity Interests

(a)    Classification:  Class 8P consists of all Equity Interests in FMSPG.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 8P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)    Voting:  Class 8P is unimpaired and holders of Class 8P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.9.    Federal-Mogul Aftermarket UK Limited ("FMAUK")(Classes 9A – 9P)

### 3.9.1.    Class 9A - Priority and Preferential Claims

(a)    Classification:  Class 9A consists of all Priority and Preferential Claims against FMAUK other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)    Treatment:  Each holder of a Class 9A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)    Voting:  Class 9A is unimpaired and holders of Class 9A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.9.2.    Class 9H – Unsecured Claims

(a)    Classification: Class 9H consists of all Unsecured Claims against FMAUK other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as

principal, under Class 6H. Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 9H shall also include all Class 9I Non-Priority T&N Pension Plan Employee Benefit Claims against FMAUK.

(b)    Treatment: Each holder of an Allowed Class 9H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 9H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 9H Claim multiplied by the Company Specific Distribution Ratio for FMAUK; or (iii) if FMAUK is a Small Company, the Allowed Amount of such holder's Class 9H Claim multiplied by the Small Company Specific Distribution Ratio for FMAUK.

(c)    Voting: Class 9H is impaired and each holder of an Allowed Class 9H Claim is entitled to vote to accept or reject the Plan.

### 3.9.3.    Class 9I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 9I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMAUK.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 9I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 9I Non Priority T&N Pension Plan Employee Benefit Claims against FMAUK shall be included in and treated as Class 9H Claims.

(d)    Voting:  Class 9I is impaired and each holder of an Allowed Class 9I Claim is entitled to vote to accept or reject the Plan.

### 3.9.4.    Class 9L - Affiliate Claims

(a)    Classification:  Class 9L consists of all Affiliate Claims against FMAUK which are subject to the Subordination Deed, other than any such Affiliate Claims in respect of which the holder has elected to assert the Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 9L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 9L is unimpaired and holders of Class 9L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.9.5.    Class 9P – Equity Interests

(a)    Classification:  Class 9P consists of all Equity Interests in FMAUK.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 9P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)    Voting:  Class 9P is unimpaired and holders of Class 9P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.10. Federal-Mogul Sintered Products Limited ("FMSP") (Classes 10A – 10P)

### 3.10.1.    Class 10A - Priority and Preferential Claims

(a)    Classification:  Class 10A consists of all Priority and Preferential Claims against FMSP, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)    Treatment:  Each holder of a Class 10A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)    Voting:  Class 10A is unimpaired and holders of Class 10A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.10.2.    Class 10H – Unsecured Claims

(a)    Classification: Class 10H consists of all Unsecured Claims against FMSP other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary

Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 10H shall also include all Class 10I Non-Priority T&N Pension Plan Employee Benefit Claims against FMSP.

(b)      Treatment:  Each holder of an Allowed Class 10H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 10H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 10H Claim multiplied by the Company Specific Distribution Ratio for FMSP; or (iii) if FMSP is a Small Company, the Allowed Amount of such holder's Class 10H Claim multiplied by the Small Company Specific Distribution Ratio for FMSP.

(c)      Voting:  Class 10H is impaired and each holder of an Allowed Class 10H Claim is entitled to vote to accept or reject the Plan.

### 3.10.3.    Class 10I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)      Classification: Class 10I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMSP.

(b)      Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 10I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)      Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 10I Non Priority T&N Pension Plan Employee Benefit Claims against FMSP shall be included in and treated as Class 10H Claims.

(d)      Voting:  Class 10I is impaired and each holder of an Allowed Class 10I Claim is entitled to vote to accept or reject the Plan.

### 3.10.4.    Class 10L - Affiliate Claims

(a)      Classification:  Class 10L consists of all Affiliate Claims against FMSP which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert the Claim against T&N, as principal, under Class 6L.

(b)     Treatment:  All Affiliate Claims in Class 10L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 10L is unimpaired and holders of Class 10L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.10.5.     Class 10P – Equity Interests

(a)     Classification:  Class 10P consists of all Equity Interests in FMSP.

(b)     Treatment:  Each holder of an Allowed Equity Interest in Class 10P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting:  Class 10P is unimpaired and holders of Class 10P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.11. Federal-Mogul Sealing Systems (Slough) Limited  ("FMSS-Slough") (Classes 11A – 11P)

### 3.11.1.     Class 11A - Priority and Preferential Claims

(a)     Classification:  Class 11A consists of all Priority and Preferential Claims against FMSS-Slough, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment:  Each holder of a Class 11A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting:  Class 11A is unimpaired and holders of Class 11A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.11.2.     Class 11G -- On-Site Environmental Claims

(a)     Classification:  Class 11G consists of all On-Site Environmental Claims against FMSS-Slough.

(b)     Treatment:  Each holder of an Allowed On-Site Environmental Claim in Class 11G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting:  Class 11G is unimpaired and holders of Class 11G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.11.3.    Class 11H – Unsecured Claims

(a)    Classification: Class 11H consists of all Unsecured Claims against FMSS-Slough other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 11H shall also include all Class 11I Non-Priority T&N Pension Plan Employee Benefit Claims against FMSS-Slough.

(b)    Treatment:  Each holder of an Allowed Class 11H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 11H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 11H Claim multiplied by the Company Specific Distribution Ratio for FMSS-Slough; or (iii) if FMSS-Slough is a Small Company, the Allowed Amount of such holder's Class 11H Claim multiplied by the Small Company Specific Distribution Ratio for FMSS-Slough.

(c)    Voting:  Class 11H is impaired and each holder of an Allowed Class 11H Claim is entitled to vote to accept or reject the Plan.

### 3.11.4.    Class 11I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 11I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMSS-Slough.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 11I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 11I Non Priority T&N Pension Plan Employee Benefit Claims against FMSS-Slough shall be included in and treated as Class 11H Claims.

(d)    Voting:  Class 11I is impaired and each holder of an Allowed Class 11I Claim is entitled to vote to accept or reject the Plan.

### 3.11.5.    Class 11J - Asbestos Personal Injury Claims

(a)    Classification:  Class 11J consists of all Asbestos Personal Injury Claims against FMSS-Slough as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)    Treatment:  As of the Effective Date, liability for all Class 11J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized FMSS-Slough for each Class 11J Claim shall continue but recourse to the assets of Reorganized FMSS-Slough in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FMSS-Slough shall be, without further order of Court, released and discharged from Class 11J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)    Voting:  Class 11J is impaired and each holder of an Allowed Class 11J Claim is entitled to vote to accept or reject the Plan.

### 3.11.6.    Class 11L - Affiliate Claims.

(a)    Classification:  Class 11L consists of all Affiliate Claims against FMSS-Slough which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 11L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 11L is unimpaired and holders of Class 11L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.11.7.    Class 11P – Equity Interests

(a)    Classification:  Class 11P consists of all Equity Interests in FMSS-Slough.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 11P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting: Class 11P is unimpaired and holders of Class 11P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.12. <u>Federal-Mogul Friction Products Limited</u> ("FMFP") (Classes 12A – 12P)

#### 3.12.1.     Class 12A - Priority and Preferential Claims

(a)     Classification: Class 12A consists of all Priority and Preferential Claims against FMFP, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment: Each holder of a Class 12A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting: Class 12A is unimpaired and holders of Class 12A Claims are thus not entitled to vote to accept or reject the Plan.

#### 3.12.2.     Class 12G -- On-Site Environmental Claims

(a)     Classification: Class 12G consists of all On-Site Environmental Claims against FMFP.

(b)     Treatment: Each holder of an Allowed On-Site Environmental Claim in Class 12G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting: Class 12G is unimpaired and holders of Class 12G Claims are thus not entitled to vote to accept or reject the Plan.

#### 3.12.3.     Class 12H – Unsecured Claims

(a)     Classification: Class 12H consists of all Unsecured Claims against FMFP other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 12H shall also include all Class 12I Non-Priority T&N Pension Plan Employee Benefit Claims against FMFP.

(b)     Treatment: Each holder of an Allowed Class 12H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 12H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 12H Claim multiplied by the Company Specific Distribution Ratio for FMFP; or (iii) if FMFP is a Small

Company, the Allowed Amount of such holder's Class 12H Claim multiplied by the Small Company Specific Distribution Ratio for FMFP.

(c)    Voting: Class 12H is impaired and each holder of an Allowed Class 12H Claim is entitled to vote to accept or reject the Plan.

**3.12.4.    Class 12I – Non-Priority T&N Pension Plan Employee Benefit Claims**

(a)    Classification: Class 12I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMFP.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 12I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 12I Non Priority T&N Pension Plan Employee Benefit Claims against FMFP shall be included in and treated as Class 12H Claims.

(d)    Voting:  Class 12I is impaired and each holder of an Allowed Class 12I Claim is entitled to vote to accept or reject the Plan.

**3.12.5.    Class 12J – Asbestos Personal Injury Claims**

(a)    Classification:  Class 12J consists of all Asbestos Personal Injury Claims against FMFP as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)    Treatment:  As of the Effective Date, liability for all Class 12J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized FMFP for each Class 12J Claim shall continue but recourse to the assets of Reorganized FMFP in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FMFP shall be, without further order of Court, released and discharged from Class

68

12J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

   (c) Voting: Class 12J is impaired and each holder of an Allowed Class 12J Claim is entitled to vote to accept or reject the Plan.

### 3.12.6. Class 12L - Affiliate Claims

   (a) Classification: Class 12L consists of all Affiliate Claims against FMFP which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

   (b) Treatment: All Affiliate Claims in Class 12L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

   (c) Voting: Class 12L is unimpaired and holders of Class 12L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.12.7. Class 12P – Equity Interests

   (a) Classification: Class 12P consists of all Equity Interests in FMFP.

   (b) Treatment: Each holder of an Allowed Equity Interest in Class 12P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

   (c) Voting: Class 12P is unimpaired and holders of Class 12P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.13. Federal-Mogul Sealing Systems (Rochdale) Limited ("FMSS-Rochdale") (Classes 13A – 13P)

### 3.13.1. Class 13A - Priority and Preferential Claims

   (a) Classification: Class 13A consists of all Priority and Preferential Claims against FMSS-Rochdale, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

   (b) Treatment: Each holder of a Class 13A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

   (c) Voting: Class 13A is unimpaired and holders of Class 13A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.13.2.    Class 13H – Unsecured Claims

(a)    Classification: Class 13H consists of all Unsecured Claims against FMSS-Rochdale other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 13H shall also include all Class 13I Non-Priority T&N Pension Plan Employee Benefit Claims against FMSS-Rochdale.

(b)    Treatment:  Each holder of an Allowed Class 13H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 13H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 13H Claim multiplied by the Company Specific Distribution Ratio for FMSS-Rochdale; or (iii) if FMSS-Rochdale is a Small Company, the Allowed Amount of such holder's Class 13H Claim multiplied by the Small Company Specific Distribution Ratio for FMSS-Rochdale.

(c)    Voting:  Class 13H is impaired and each holder of an Allowed Class 13H Claim is entitled to vote to accept or reject the Plan.

### 3.13.3.    Class 13I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 13I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMSS-Rochdale.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 13I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 13I Non Priority T&N Pension Plan Employee Benefit Claims against FMSS-Rochdale shall be included in and treated as Class 13H Claims.

(d)    Voting:  Class 13I is impaired and each holder of an Allowed Class 13I Claim is entitled to vote to accept or reject the Plan.

### 3.13.4.    Class 13J - Asbestos Personal Injury Claims

(a)    Classification:  Class 13J consists of all Asbestos Personal Injury Claims against FMSS-Rochdale as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)    Treatment:  As of the Effective Date, liability for all Class 13J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized FMSS-Rochdale for each Class 13J Claim shall continue but recourse to the assets of Reorganized FMSS-Rochdale in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FMSS-Rochdale shall be, without further order of Court, released and discharged from Class 13J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)    Voting:  Class 13J is impaired and each holder of an Allowed Class 13J Claim is entitled to vote to accept or reject the Plan.

### 3.13.5.    Class 13L - Affiliate Claims

(a)    Classification:  Class 13L consists of all Affiliate Claims against FMSS-Rochdale which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 13L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 13L is unimpaired and holders of Class 13L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.13.6.    Class 13P – Equity Interests

(a)    Classification:  Class 13P consists of all Equity Interests in FMSS-Rochdale.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 13P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.