(c)     Voting: Class 13P is unimpaired and holders of Class 13P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.14. Federal-Mogul Camshaft Castings Limited ("FMCC") (Classes 14A – 14P)

#### 3.14.1.     Class 14A - Priority and Preferential Claims

(a)     Classification: Class 14A consists of all Priority and Preferential Claims against FMCC, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment: Each holder of a Class 14A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting: Class 14A is unimpaired and holders of Class 14A Claims are thus not entitled to vote to accept or reject the Plan.

#### 3.14.2.     Class 14H – Unsecured Claims

(a)     Classification: Class 14H consists of all Unsecured Claims against FMCC other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H. Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 14H shall also include all Class 14I Non-Priority T&N Pension Plan Employee Benefit Claims against FMCC.

(b)     Treatment: Each holder of an Allowed Class 14H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 14H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 14H Claim multiplied by the Company Specific Distribution Ratio for FMCC; or (iii) if FMCC is a Small Company, the Allowed Amount of such holder's Class 14H Claim multiplied by the Small Company Specific Distribution Ratio for FMCC.

(c)     Voting: Class 14H is impaired and each holder of an Allowed Class 14H Claim is entitled to vote to accept or reject the Plan.

#### 3.14.3.     Class 14I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)     Classification: Class 14I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMCC.

(b)  Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 14I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)  Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 14I Non Priority T&N Pension Plan Employee Benefit Claims against FMCC shall be included in and treated as Class 14H Claims.

(d)  Voting:  Class 14I is impaired and each holder of an Allowed Class 14I Claim is entitled to vote to accept or reject the Plan.

### 3.14.4.    Class 14J - Asbestos Personal Injury Claims

(a)  Classification:  Class 14J consists of all Asbestos Personal Injury Claims against FMCC as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)  Treatment:  As of the Effective Date, liability for all Class 14J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized FMCC for each Class 14J Claim shall continue but recourse to the assets of Reorganized FMCC in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FMCC shall be, without further order of Court, released and discharged from Class 14J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)  Voting:  Class 14J is impaired and each holder of an Allowed Class 14J Claim is entitled to vote to accept or reject the Plan.

### 3.14.5.    Class 14L - Affiliate Claims

(a)  Classification:  Class 14L consists of all Affiliate Claims against FMCC which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)     Treatment:  All Affiliate Claims in Class 14L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 14L is unimpaired and holders of Class 14L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.14.6.     Class 14P – Equity Interests

(a)     Classification:  Class 14P consists of all Equity Interests in FMCC.

(b)     Treatment:  Each holder of an Allowed Equity Interest in Class 14P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting:  Class 14P is unimpaired and holders of Class 14P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.15. Federal-Mogul Bradford Limited ("Bradford") (Classes 15A – 15P)

### 3.15.1.     Class 15A - Priority and Preferential Claims

(a)     Classification:  Class 15A consists of all Priority and Preferential Claims against Bradford, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment:  Each holder of a Class 15A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting:  Class 15A is unimpaired and holders of Class 15A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.15.2.     Class 15H – Unsecured Claims

(a)     Classification: Class 15H consists of all Unsecured Claims against Bradford other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 15H shall also include all Class 15I Non-Priority T&N Pension Plan Employee Benefit Claims against Bradford.

(b)     Treatment:  Each holder of an Allowed Class 15H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such

holder's Class 15H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 15H Claim multiplied by the Company Specific Distribution Ratio for Bradford; or (iii) if Bradford is a Small Company, the Allowed Amount of such holder's Class 15H Claim multiplied by the Small Company Specific Distribution Ratio for Bradford.

(c)    Voting: Class 15H is impaired and each holder of an Allowed Class 15H Claim is entitled to vote to accept or reject the Plan.

### 3.15.3.    Class 15I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 15I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against Bradford.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 15I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 15I Non Priority T&N Pension Plan Employee Benefit Claims against Bradford shall be included in and treated as Class 15H Claims.

(d)    Voting: Class 15I is impaired and each holder of an Allowed Class 15I Claim is entitled to vote to accept or reject the Plan.

### 3.15.4.    Class 15J - Asbestos Personal Injury Claims

(a)    Classification:  Class 15J consists of all Asbestos Personal Injury Claims against Bradford as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)    Treatment: As of the Effective Date, liability for all Class 15J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized Bradford for each Class 15J Claim shall continue but recourse to the assets of Reorganized Bradford in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically,

without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized Bradford shall be, without further order of Court, released and discharged from Class 15J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)     Voting: Class 15J is impaired and each holder of an Allowed Class 15J Claim is entitled to vote to accept or reject the Plan.

### 3.15.5.     Class 15L - Affiliate Claims

(a)     Classification: Class 15L consists of all Affiliate Claims against Bradford which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)     Treatment: All Affiliate Claims in Class 15L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting: Class 15L is unimpaired and holders of Class 15L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.15.6.     Class 15P – Equity Interests

(a)     Classification: Class 15P consists of all Equity Interests in Bradford.

(b)     Treatment: Each holder of an Allowed Equity Interest in Class 15P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting: Class 15P is unimpaired and holders of Class 15P Equity Interests are thus not entitled to vote to accept or reject the Plan.

## 3.16. Federal-Mogul Camshafts Limited ("FM Camshafts") (Classes 16A – 16P)

### 3.16.1.     Class 16A - Priority and Preferential Claims

(a)     Classification: Class 16A consists of all Priority and Preferential Claims against FM Camshafts, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment: Each holder of a Class 16A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting: Class 16A is unimpaired and holders of Class 16A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.16.2.    Class 16H – Unsecured Claims

(a)    Classification: Class 16H consists of all Unsecured Claims against FM Camshafts other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 16H shall also include all Class 16I Non-Priority T&N Pension Plan Employee Benefit Claims against FM Camshafts.

(b)    Treatment:  Each holder of an Allowed Class 16H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 16H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 16H Claim multiplied by the Company Specific Distribution Ratio for FM Camshafts; or (iii)if FM Camshafts is a Small Company, the Allowed Amount of such holder's Class 16H Claim multiplied by the Small Company Specific Distribution Ratio for FM Camshafts.

(c)    Voting:  Class 16H is impaired and each holder of an Allowed Class 16H Claim is entitled to vote to accept or reject the Plan.

### 3.16.3.    Class 16I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 16I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FM Camshafts.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 16I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 16I Non Priority T&N Pension Plan Employee Benefit Claims against FM Camshafts shall be included in and treated as Class 16H Claims.

(d)    Voting:  Class 16I is impaired and each holder of an Allowed Class 16I Claim is entitled to vote to accept or reject the Plan.

### 3.16.4.    Class 16L - Affiliate Claims

(a)    Classification: Class 16L consists of all Affiliate Claims against FM Camshafts which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment: All Affiliate Claims in Class 16L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting: Class 16L is unimpaired and holders of Class 16L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.16.5.    Class 16P – Equity Interests

(a)    Classification: Class 16P consists of all Equity Interests in FM Camshafts.

(b)    Treatment: Each holder of an Allowed Equity Interest in Class 16P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)    Voting: Class 16P is unimpaired and holders of Class 16P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.17. Federal-Mogul Eurofriction Limited ("FMEL") (Classes 17A – 17P)

### 3.17.1.    Class 17A - Priority and Preferential Claims

(a)    Classification: Class 17A consists of all Priority and Preferential Claims against FMEL, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)    Treatment: Each holder of a Class 17A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)    Voting: Class 17A is unimpaired and holders of Class 17 Claims are thus not entitled to vote to accept or reject the Plan.

### 3.17.2.    Class 17G -- On-Site Environmental Claims

(a)    Classification: Class 17G consists of all On-Site Environmental Claims against FMEL.

(b)    Treatment: Each holder of an Allowed On-Site Environmental Claim in Class 17G shall retain unaltered, the legal, equitable and contractual rights to which such Allowed On-Site Environmental Claim entitles the holder.

(c)     Voting: Class 17G is unimpaired and holders of Class 17G Claims are thus not entitled to vote to accept or reject the Plan.

### 3.17.3.    Class 17H – Unsecured Claims

(a)     Classification: Class 17H consists of all Unsecured Claims against FMEL other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 17H shall also include all Class 17I Non-Priority T&N Pension Plan Employee Benefit Claims against FMEL.

(b)     Treatment:  Each holder of an Allowed Class 17H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 17H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 17H Claim multiplied by the Company Specific Distribution Ratio for FMEL; or (iii) if FMEL is a Small Company, the Allowed Amount of such holder's Class 17H Claim multiplied by the Small Company Specific Distribution Ratio for FMEL.

(c)     Voting:  Class 17H is impaired and each holder of an Allowed Class 17H Claim is entitled to vote to accept or reject the Plan.

### 3.17.4.    Class 17I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)     Classification: Class 17I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against FMEL.

(b)     Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 17I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)     Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 17I Non Priority T&N Pension Plan Employee Benefit Claims against FMEL shall be included in and treated as Class 17H Claims.

(d)     Voting:  Class 17I is impaired and each holder of an Allowed Class 17I Claim is entitled to vote to accept or reject the Plan.

### 3.17.5.     Class 17J– Asbestos Personal Injury Claims

(a)     Classification:  Class 17J consists of all Asbestos Personal Injury Claims against FMEL as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)     Treatment:  As of the Effective Date, liability for all Class 17J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Additionally, on the Effective Date, the liability of Reorganized FMEL for each Class 17J Claim shall continue but recourse to the assets of Reorganized FMEL in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy.  Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized FMEL shall be, without further order of Court, released and discharged from Class 17J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)     Voting:  Class 17J is impaired and each holder of an Allowed Class 17J Claim is entitled to vote to accept or reject the Plan.

### 3.17.6.     Class 17L - Affiliate Claims

(a)     Classification:  Class 17L consists of all Affiliate Claims against FMEL which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)     Treatment:  All Affiliate Claims in Class 17L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 17L is unimpaired and holders of Class 17L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.17.7.     Class 17P – Equity Interests

(a)     Classification:  Class 17P consists of all Equity Interests in FMEL.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 17P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)    Voting:  Class 17P is unimpaired and holders of Class 17P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.18.  Federal-Mogul Powertrain Systems International Limited ("Powertrain") (Classes 18A – 18P)

#### 3.18.1.    Class 18A - Priority and Preferential Claims

(a)    Classification:  Class 18A consists of all Priority and Preferential Claims against Powertrain, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)    Treatment:  Each holder of a Class 18A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)    Voting:  Class 18A is unimpaired and holders of Class 18A Claims are thus not entitled to vote to accept or reject the Plan.

#### 3.18.2.    Class 18H – Unsecured Claims

(a)    Classification: Class 18H consists of all Unsecured Claims against Powertrain other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.  Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 18H shall also include all Class 18I Non-Priority T&N Pension Plan Employee Benefit Claims against Powertrain.

(b)    Treatment:  Each holder of an Allowed Class 18H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 18H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 18H Claim multiplied by the Company Specific Distribution Ratio for Powertrain; or (iii) if Powertrain is a Small Company, the Allowed Amount of such holder's Class 18H Claim multiplied by the Small Company Specific Distribution Ratio for Powertrain.

(c)    Voting:  Class 18H is impaired and each holder of an Allowed Class 18H Claim is entitled to vote to accept or reject the Plan

### 3.18.3.    Class 18I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a)    Classification: Class 18I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against Powertrain.

(b)    Treatment A:  If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 18I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)    Treatment B:  If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 18I Non Priority T&N Pension Plan Employee Benefit Claims against Powertrain shall be included in and treated as Class 18H Claims.

(d)    Voting:  Class 18I is impaired and each holder of an Allowed Class 18I Claim is entitled to vote to accept or reject the Plan.

### 3.18.4.    Class 18L - Affiliate Claims

(a)    Classification:  Class 18L consists of all Affiliate Claims against Powertrain which are subject to the Subordination Deed, other than such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 18L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 18L is unimpaired and holders of Class 18L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.18.5.    Class 18P – Equity Interests

(a)    Classification:  Class 18P consists of all Equity Interests in Powertrain.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 18P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c) Voting: Class 18P is unimpaired and holders of Class 18P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.19. TBA Industrial Products Limited ("TBA-IP") (Classes 19A – 19P)

#### 3.19.1.    Class 19A - Priority and Preferential Claims

(a) Classification: Class 19A consists of all Priority and Preferential Claims against TBA-IP, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b) Treatment: Each holder of a Class 19A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c) Voting: Class 19A is unimpaired and holders of Class 19A Claims are thus not entitled to vote to accept or reject the Plan.

#### 3.19.2.    Class 19H – Unsecured Claims.

(a) Classification: Class 19H consists of all Unsecured Claims against TBA-IP other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H. Additionally, if the T&N Pension Plan Trustees do not vote in favor of acceptance of all of the Plans for the U.K. Debtors that have obligations under or relating to the T&N Pension Plan and have not given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote in favor of approving any relevant Voluntary Arrangements for such U.K. Debtors and/or if the Consensual Marketing Procedures are performed with respect to T&N, then Class 19H shall also include all Class 19I Non-Priority T&N Pension Plan Employee Benefit Claims against TBA-IP.

(b) Treatment: Each holder of an Allowed Class 19H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 19H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 19H Claim multiplied by the Company Specific Distribution Ratio for TBA-IP; or (iii) if TBA-IP is Small Company, the Allowed Amount of such holder's Class 19H Claim multiplied by the Small Company Specific Distribution Ratio for TBA-IP.

(c) Voting: Class 19H is impaired and each holder of an Allowed Class 19H Claim is entitled to vote to accept or reject the Plan.

#### 3.19.3.    Class 19I – Non-Priority T&N Pension Plan Employee Benefit Claims

(a) Classification: Class 19I consists of all Non-Priority T&N Pension Plan Employee Benefit Claims against TBA-IP.

(b)     Treatment A: If the T&N Pension Plan Trustees vote in favor of acceptance of all of the Plans of the U.K. Debtors that have any obligations under or relating to the T&N Pension Plan and have given an irrevocable undertaking at least 14 Business Days before the Confirmation Hearing that they will vote to approve any relevant Voluntary Arrangements for such U.K. Debtors and if the Consensual Marketing Procedures are not performed with respect to T&N, then the Class 19I Claims shall be deemed fully satisfied by virtue of the treatment afforded to the Non-Priority T&N Pension Plan Employee Benefit Claims in Class 6I.

(c)     Treatment B: If the conditions for Treatment A as set forth above are not met, then all obligations with respect to the T&N Pension Plan will be compromised and discharged and all Class 19I Non Priority T&N Pension Plan Employee Benefit Claims against TBA-IP shall be included in and treated as Class 19H Claims.

(d)     Voting: Class 19I is impaired and each holder of an Allowed Class 19I Claim is entitled to vote to accept or reject the Plan.

### 3.19.4.    Class 19J – Asbestos Personal Injury Claims

(a)     Classification: Class 19J consists of all Asbestos Personal Injury Claims against TBA-IP as to which the holder has not made an election to assert such Claim against T&N as principal and to have such Claim included in Class 6J.

(b)     Treatment: As of the Effective Date, liability for all Class 19J Asbestos Personal Injury Claims shall automatically and without further act, deed or Court order, be assumed by the Trust in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Additionally, on the Effective Date, the liability of Reorganized TBA-IP for each Class 19J Claim shall continue but recourse to the assets of Reorganized TBA-IP in respect of such liability shall, by operation of the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement and the Confirmation Order, be limited in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan and the provisions relating to the Hercules Policy and any EL Policy. Upon the Hercules Policy Expiry Date and/or the EL Coverage Expiry Date, Reorganized TBA-IP shall be, without further order of Court, released and discharged from Class 19J Asbestos Personal Injury Claims in accordance with and to the extent set forth in Article IV of the Plan, including specifically, without limitation, Section 4.5 of the Plan.

(c)     Voting: Class 19J is impaired and each holder of an Allowed Class 19J Claim is entitled to vote to accept or reject the Plan.

### 3.19.5.    Class 19L - Affiliate Claims

(a)     Classification: Class 19L consists of all Affiliate Claims against TBA-IP which are subject to the Subordination Deed, other than any such Affiliate Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)     Treatment:  All Affiliate Claims in Class 19L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)     Voting:  Class 19L is unimpaired and holders of Class 19L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.19.6.     Class 19P – Equity Interests

(a)     Classification:  Class 19P consists of all Equity Interests in TBA-IP.

(b)     Treatment:  Each holder of an Allowed Equity Interest in Class 19P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)     Voting:  Class 19P is unimpaired and holders of Class 19P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.20. Federal-Mogul Export Services Limited ("FM Export") (Classes 20A – 20P)

### 3.20.1.     Class 20A - Priority and Preferential Claims

(a)     Classification:  Class 20A consists of all Priority and Preferential Claims against FM Export, other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6A.

(b)     Treatment:  Each holder of a Class 20A Allowed Claim shall retain unaltered the legal, equitable and contractual rights to which such Claim entitles the holder.

(c)     Voting:  Class 20A is unimpaired and holders of Class 20A Claims are thus not entitled to vote to accept or reject the Plan.

### 3.20.2.     Class 20H – Unsecured Claims.

(a)     Classification: Class 20H consists of all Unsecured Claims against FM Export other than any Claims that are specifically included in any other Class and other than any Claim in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6H.

(b)     Treatment:  Each holder of an Allowed Class 20H Claim shall receive, on the Distribution Date, a Cash payment equal to the greater of: (i) the Allowed Amount of such holder's Class 20H Claim multiplied by either (y) T&N Distribution Ratio 1 if the Consensual Marketing Procedures are not performed or (z) T&N Distribution Ratio 2 if the Consensual Marketing Procedures are performed; (ii) the Allowed Amount of such holder's Class 20H Claim multiplied by the Company Specific Distribution Ratio for FM Export; or (iii) if FM-Export is a Small Company, the Allowed Amount of such holder's Class 20H Claim multiplied by the Small Company Specific Distribution Ratio for FM-Export.

(c)    Voting:  Class 20H is impaired and each holder of an Allowed Class 20H Claim is entitled to vote to accept or reject the Plan.

### 3.20.3.    Class 20L - Affiliate Claims

(a)    Classification:  Class 20L consists of all Affiliate Claims against FM Export which are subject to the Subordination Deed, other than any such Affiliate Claims in respect of which the holder has made an election to assert such Claim against T&N, as principal, under Class 6L.

(b)    Treatment:  All Affiliate Claims in Class 20L shall be subject to the Subordination Deed which shall become effective on the Effective Date, but not as a result of the provisions of the Plan, the Confirmation Order, the Voluntary Arrangement and/or the Scheme of Arrangement or the order of the U.K. Court sanctioning the Scheme of Arrangement.

(c)    Voting:  Class 20L is unimpaired and holders of Class 20L Claims are thus not entitled to vote to accept or reject the Plan.

### 3.20.4.    Class 20P – Equity Interests

(a)    Classification:  Class 20P consists of all Equity Interests in FM Export.

(b)    Treatment:  Each holder of an Allowed Equity Interest in Class 20P shall retain unaltered, the legal, equitable and contractual rights to which such Allowed Equity Interest entitles the holder.

(c)    Voting:  Class 20P is unimpaired and holders of Class 20P Equity Interests are thus not entitled to vote to accept or reject the Plan.

### 3.21. Remaining Debtors

The remaining U.S. Debtors and U.K. Debtors not listed above in Sections 3.1 through 3.20, inclusive, of the Plan, are either holding companies or Inactive Debtor Subsidiaries. Accordingly, in the interest of brevity and convenience, the Classification of Claims against and Equity Interests in such remaining Debtors, as well as the treatment of such claims and interests, are set forth in summary fashion in Exhibit 3.21 to the Plan with the same legal force and effect as if such Classification and Treatment terms and provisions were set forth at length herein.

### ARTICLE IV
### THE TRUST

**4.1.  Establishment Of Trust**.  On the Effective Date, the Trust shall be established pursuant to Section 524(g) of the Bankruptcy Code.  The provisions of Sections 4.2, 4.3 and 4.4 hereof which follow shall take effect subject to, and only to the extent not inconsistent with, the provisions of Section 4.5 hereof.

**4.2.  Purpose of Trust**.  The Trust shall on the Effective Date assume liability for all Asbestos Personal Injury Claims.  The Trust shall, in accordance with the Trust Documents, hold

and administer the Trust Assets, liquidate such Claims, and make distributions to holders of Allowed Asbestos Personal Injury Claims from the Trust Assets. The Trust is a "qualified settlement fund" within the meaning of Section 468B of the IRC and the regulations promulgated thereunder. The Asbestos Personal Injury Trust Distribution Procedures provide, among other things, for the allowance and payment, or disallowance, of Asbestos Personal Injury Claims pursuant to the terms of the Trust Documents, and that resolution of an Asbestos Personal Injury Claim by the Trust will result in a full release of such Claim against the Trust. The Trust shall pay Allowed Asbestos Personal Injury Claims in accordance with the Trust Documents. While Indirect Asbestos Personal Injury Claims against the Debtors may be disallowed pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, any right of a holder of such disallowed Claim under applicable non-bankruptcy law, to setoff payments by the Trust against such holder's liability to an asbestos personal injury claimant, shall be preserved. Additionally, the Trust shall advocate in any and all actions and proceedings brought against the Debtors and/or Reorganized Debtors which involve Asbestos Personal Injury Claims, that Asbestos Personal Injury Claims shall be channeled to the Trust, and the Trust Documents shall provide that the Trust shall cooperate with the Debtors and/or Reorganized Debtors in any and all such actions and proceedings.

**4.3.** **Receipt Of Trust Assets.** On the Effective Date, all Trust Assets shall be automatically and without further act or deed, transferred to, vested in and assumed by the Trust, subject to the notification requirements contained in Sections 10.3 and 10.5 of the Plan; provided, however, that to the extent that certain Trust Assets, because of their nature or because such assets will accrue or become transferable subsequent to the Effective Date, cannot be transferred to, vested in and assumed by the Trust on the Effective Date, such Trust Assets shall be automatically, and without further act or deed, transferred to, vested in and assumed by the Trust as soon as practicable after the Effective Date.

**4.4.** **Discharge Of Liabilities To Holders Of Asbestos Personal Injury Claims.** Except as provided in the Plan (including, without limitation, the exceptions provided in Section 4.5 hereof and Sections 9.3.1(b)(v) and 9.3.2(b)(v) of the Plan concerning non-Debtor Affiliates), the transfer to, vesting in and assumption by the Trust of the Trust Assets as contemplated by the Plan shall, as of the Effective Date, discharge all obligations and liabilities of and bar recovery or any action against the Released Parties and their respective estates, Affiliates and subsidiaries, for or in respect of all Asbestos Personal Injury Claims and Demands, including, but not limited to, all Indirect Asbestos Personal Injury Claims and Demands, against the Debtors, the Reorganized Debtors, and their respective Estates, Affiliates and subsidiaries (and the Confirmation Order shall so provide for such discharge). Except as provided in Section 4.5 hereof, the Trust shall as of the Effective Date assume sole and exclusive responsibility and liability for all Asbestos Personal Injury Claims, including, but not limited to, Indirect Asbestos Personal Injury Claims, against the Debtors, the Reorganized Debtors, and their respective Estates, Affiliates and subsidiaries and such Claims, to the extent Allowed, shall be paid solely by the Trust from the Trust Assets. Additionally, the Trust shall indemnify and hold the Reorganized Debtors and their non-Debtor Affiliates harmless from and against any and all Asbestos Personal Injury Claims, as well as all associated costs and expenses, to the extent set forth in Section 4.11 below; provided, however, any indemnity by the Trust in favor of the Hercules-Protected Entities shall only apply after the later of (a) the Hercules Policy Expiry Date and (b) the EL Coverage Expiry Date; provided, further, however, pending the occurrence of the

later of such two dates, Reorganized Federal-Mogul shall be conclusively deemed to have suffered a loss in the amount of indemnity that would have come due to the Reorganized Hercules-Protected Entities under Section 4.11 of the Plan but for the immediately preceding provision and the Trust shall indemnify Reorganized Federal-Mogul in respect of such loss to the extent set forth in Section 4.11 below. Additionally, notwithstanding the foregoing and anything to the contrary in the Plan or the Trust Documents, Reorganized Federal-Mogul shall also be conclusively deemed to have suffered a loss (y) in the amount of any and all fees, costs and expenses incurred by the Reorganized Hercules-Protected Entities in defending against Asbestos Personal Injury Claims (to the extent such fees, costs and expenses are not recovered by the Hercules-Protected Entities from the Hercules Insurers under the Hercules Policy) and (z) in the amount of any fees, costs, expenses, indemnity payments, reimbursement amounts, additional premiums or other amounts paid by the Hercules-Protected Entities related to the Hercules Policy or the EL Coverage and the Trust shall indemnify Reorganized Federal-Mogul in respect of such loss in full (without regard to any limitation in Section 4.11 below) on a semi-annual basis in Cash or more frequently as may be reasonably requested by Reorganized Federal-Mogul.

**4.5.    Special Provisions Applicable to the Reorganized Debtors that are Hercules-Protected Entities**. Notwithstanding any other provisions of the Plan to the contrary, the following provisions regarding the Trust and certain Asbestos Personal Injury Claims shall apply to the Reorganized Debtors that are Hercules-Protected Entities.

**4.5.1.**    On the Effective Date, the Trust will assume all liability for Asbestos Personal Injury Claims against the Reorganized Hercules-Protected Entities in excess of both (i) the £690 million retention and the £500 million layer of coverage under the Hercules Policy and (ii) all other sums as are attributable to or otherwise represent the Hercules Insurance Recoveries to the extent such amounts exceed the £500 million layer of coverage; provided, however, the Trust shall not assume liability for Asbestos Personal Injury Claims to the extent such Claims are covered by the indemnity provisions of the EL Coverage. From and after the Hercules Policy Expiry Date, the Trust will assume sole and exclusive liability for all remaining Asbestos Personal Injury Claims against the Reorganized Hercules-Protected Entities (other than Claims covered by the indemnity provisions of the EL Coverage, to the extent so covered) and the Reorganized Hercules-Protected Entities shall be discharged and released from any and all liability with respect to Asbestos Personal Injury Claims (other than Claims covered by the indemnity provisions of the EL Coverage, to the extent so covered). From and after the Hercules Policy Expiry Date, all rights of the Reorganized Hercules-Protected Entities to assert any defenses, counterclaims, offsets, rights of contribution or similar rights and remedies for the purpose of reducing or defeating any Asbestos Personal Injury Claim (other than Claims covered by the indemnity provisions of the EL Coverage, to the extent so covered) shall be transferred from the Reorganized Hercules-Protected Entities to the Trust. From and after the date on which all of the obligations of the EL Insurers with respect to all Asbestos Personal Injury Claims cease to have effect, whether by commutation or otherwise (the "EL Coverage Expiry Date"), the Trust will assume sole and exclusive liability for all remaining Asbestos Personal Injury Claims against the Reorganized Hercules-Protected Entities in excess of both (i) the £690 million retention and the £500 million layer of coverage under the Hercules Policy and (ii) all other sums as are attributable to or otherwise represent the Hercules Insurance Recoveries to the extent such amounts exceed the £500 million layer of coverage, and the Reorganized Hercules-Protected Entities shall be discharged and released from any and all liability with respect to Asbestos

Personal Injury Claims in excess of both (i) the £690 million retention and the £500 million layer of coverage under the Hercules Policy and (ii) all other sums as are attributable to or otherwise represent the Hercules Insurance Recoveries to the extent such amounts exceed the £500 million layer of coverage. Upon the occurrence of the later of (i) the EL Coverage Expiry Date and (ii) the Hercules Policy Expiry Date, all rights of the Reorganized Hercules-Protected Entities to assert any defenses, counterclaims, offsets, rights of contribution, or similar rights and remedies for the purpose of reducing or defeating any Asbestos Personal Injury Claim shall be transferred from the Reorganized Hercules-Protected Entities to the Trust.

        **4.5.2.**      On the Effective Date, the Trust will subscribe for 72% of the Reorganized Federal-Mogul Class B Common Stock for the subscription price of £361,802,160.00, such sum being left outstanding as a debt owing by the Trust to Reorganized Federal-Mogul. Immediately following such subscription and the issue to the Trust (specifically, the T&N Worldwide Fund within the Trust), Reorganized Federal-Mogul shall be deemed to have assigned and transferred to Reorganized T&N by way of capital contribution all of its right, title and interest in and to such debt (the "Stock Repayment Obligation"). The Stock Repayment Obligation shall be payable by offset, in whole or in part, as provided in Section 4.5.7 hereof, upon notice by Reorganized T&N to the Trust, or otherwise payable 20 years after the Effective Date.

        **4.5.3.**      Subject to Section 4.5.8 hereof, the Hercules Policy and the EL Coverage shall remain in full force and effect following the Effective Date. On and from the Effective Date, the liability of the Reorganized Hercules-Protected Entities for Asbestos Personal Injury Claims and for any costs and interest awarded in relation thereto shall continue in full, but recourse to the assets of the respective Reorganized Debtors in respect of such liability shall, automatically and by operation of the Plan, the Scheme of Arrangement and/or Voluntary Arrangement and the Confirmation Order, be limited in and to (i) all amounts actually recovered by Reorganized T&N under or with respect to the Hercules Policy (including all amounts actually recovered to the extent of the £500m layer of coverage under the Hercules Policy), (ii) the outstanding amount of the Stock Repayment Obligation and (iii) such sums as may have been provided to the relevant Reorganized Hercules-Protected Entity by the Trust or any other person, whether by loan or otherwise, for the purpose of enabling Asbestos Personal Injury Claims to be paid, and shall otherwise be without recourse as to the applicable Reorganized Hercules-Protected Entities and all of their property and interests in property. From and after the Hercules Policy Expiry Date, the discharge of T&N Limited and the other Debtors that are Hercules-Protected Entities under Article IX of the Plan shall automatically and without further order of Court become full and complete (other than with respect to Claims covered by the indemnity provisions of the EL Coverage and for which indemnity is actually recoverable under the EL Coverage, to the extent so recoverable).

        **4.5.4.**      On the Effective Date, and pursuant to the Plan, the Scheme of Arrangement and/or the Voluntary Arrangement, each holder of an Asbestos Personal Injury Claim will be deemed to have assigned to the Trust his/her rights to the proceeds of his/her Asbestos Personal Injury Claim. Similarly, on the Effective Date, each holder of an Asbestos Personal Injury Claim will be deemed to have assigned to (i) Reorganized T&N, any rights respecting the Hercules Policy, and (ii) the Trust any rights respecting the EL Coverage, in each case being rights transferred to him/her by operation of law under the Third Parties (Rights

Against Insurers) Act 1930 of the United Kingdom. For the avoidance of doubt, no such holder will be entitled after the Effective Date to commence or continue any proceedings against the Hercules Insurers or the EL Insurers in exercise or purported exercise of its rights under the Third Parties (Rights Against Insurers) Act 1930 of the United Kingdom. Reorganized T&N shall hold the benefit of this undertaking on trust for itself and for the Hercules Insurers and the Trust shall hold the benefit of this undertaking on trust for itself and for the relevant EL Insurers such that the Hercules Insurers or the relevant EL Insurers (as the case may be) shall be entitled to enforce this undertaking directly against each of such holders. In consideration of the assignments deemed to have been made by the holder of each Asbestos Personal Injury Claim pursuant to this Section 4.5.4 and the appointment and undertaking contained in Section 4.5.5 hereof, such holder shall be entitled to a claim against the Trust (a "Trust Claim") which shall be separate and distinct from the Asbestos Personal Injury Claim itself (which, subject to Section 4.5.1 hereof, is a claim against the relevant Reorganized Hercules-Protected Entity). The Trust Claim shall confer on the holder thereof the right to elect either (i) to receive any payment that is offered by the Trust in satisfaction of the Trust Claim or (ii) to pursue alternative remedies against the Trust in respect of the Trust Claim in either case in accordance with and subject to the terms of the Asbestos Personal Injury Trust Distribution Procedures and the other Trust Documents. The Trust Claim shall be a sum payable by the Trust for the right to assert, as the agent of the relevant asbestos personal injury claimant, Asbestos Personal Injury Claims against the Reorganized Hercules-Protected Entities and for the right of the claimant to assert claims under the Third Parties (Rights Against Insurers) Act 1930 of the United Kingdom against the EL Insurers.

**4.5.5.** From and after the Effective Date, each holder of an Asbestos Personal Injury Claim irrevocably appoints the Trust as its agent, in the name of such holder or otherwise, to assert such Asbestos Personal Injury Claim against the Reorganized Hercules-Protected Entities in any appropriate forum, and such holder shall not be entitled to assert such Asbestos Personal Injury Claim except through the agency of the Trust (unless the Trust otherwise agrees). The Trust shall indemnify each holder of an Asbestos Personal Injury Claim against any costs that may be awarded against such holder in any legal proceedings brought by the Trust on behalf of such holder. The Trust Claim shall be separate and distinct from the Asbestos Personal Injury Claim. Accordingly, if the holder of an Asbestos Personal Injury Claim against the Reorganized Hercules-Protected Entity elects to receive any payment that is offered by the Trust in satisfaction of the Trust Claim, or elects to pursue alternative remedies against the Trust in respect of the Trust Claim in accordance with the terms of the Asbestos Personal Injury Trust Distribution Procedures and the other Trust Documents as mentioned in Section 4.5.4 hereof, such process shall be separate and distinct from and without prejudice to the Trust's assertion on behalf of the claimant of his/her rights against the applicable Reorganized Hercules-Protected Entity in respect of that claimant's particular Asbestos Personal Injury Claim, and no sum received in respect of a Trust Claim shall reduce or extinguish the liability of the applicable Reorganized Hercules-Protected Entity in respect of the Asbestos Personal Injury Claim. Subject to the claims handling rights of the Hercules Insurers (whatever they may be), the Reorganized Hercules-Protected Entities shall retain the right to assert any defenses, counterclaims, offsets, rights of contribution or similar rights and remedies for the purpose of reducing or defeating their liability on any Asbestos Personal Injury Claim; provided, however, that none of the Reorganized Hercules-Protected Entities shall assert a defense to a claim based upon the Trust's prosecution of such claim as an agent of the holder of the Asbestos

Personal Injury Claim or based upon the assignment of the rights to the proceeds of any such claim as provided in Section 4.5.4 hereof. In recognition of the Hercules Insurers' asserted claim handling rights: (i) the Reorganized Hercules-Protected Entities will, to the extent required by the Hercules Policy, refer Asbestos Personal Injury Claims to the Hercules Insurers or their appointed claims handling designee for their further administration, defense and disposition and the Hercules Insurers will be entitled to exercise all claims handling rights under the Hercules Policy in relation to such proceedings, including defense or settlement of the Claim; and (ii) the claimant's action against the Reorganized Hercules-Protected Entities shall be allowed to proceed to judgment or settlement, but the claimant will not be permitted to enforce any judgment or settlement except in accordance with the provisions of this Section 4.5 hereof, including the claimant's assignment of his/her rights to proceeds from such claim to the Trust. The rights of the holder of an Asbestos Personal Injury Claim to payment from the Trust in respect of a Trust Claim shall be determined solely under and in accordance with the Asbestos Personal Injury Trust Distribution Procedures and other Trust Documents.

**4.5.6.**    An Asbestos Personal Injury Claim is established for the purpose of this Section 4.5 when it is established as owing by a Reorganized Hercules-Protected Entity by final judgment or award of a court or arbitrator of competent jurisdiction or when (to the extent required by the Hercules Policy, with the consent of the Hercules Insurers) an agreement is entered into between the claimant and the applicable Reorganized Hercules-Protected Entity under which the Asbestos Personal Injury Claim is so established.

**4.5.7.**    Once an Asbestos Personal Injury Claim has been established as set forth in Section 4.5.6, the liability of any Reorganized Hercules-Protected Entity concerned in respect of that Claim, if and to the extent not recovered from an EL Insurer under an EL Policy, may be satisfied and discharged by payment or deemed payment to the Trust as agent of the holder of the Claim, as follows: (a) (at the option of either the Trust or Reorganized T&N, and notwithstanding that the obligation to the Trust is in its capacity as agent of the holder of that Claim against the Hercules-Protected Entity) by setting off against that liability an equivalent amount of the Stock Repayment Obligation (and for this purpose Reorganized T&N shall be deemed, if necessary, to have assigned, for no consideration at the time the option is exercised, to the applicable Reorganized Hercules-Protected Entity an equivalent amount of the Stock Repayment Obligation); (b) by the Trust repaying part of the Stock Repayment Obligation to Reorganized T&N for the purpose of enabling Reorganized T&N to satisfy, or arrange for the relevant Hercules-Protected Entity to satisfy, the liability (any such sum to be received and held by Reorganized T&N in trust for that purpose), (c) by payment by Reorganized T&N out of funds received under the Hercules Policy or (d) by payment by Reorganized T&N or the relevant Reorganized Hercules-Protected Entity out of funds made available, by loan or otherwise, for the specific purpose of satisfying Asbestos Personal Injury Claims, by the Trust, Reorganized T&N or any third party. To the extent that any Asbestos Personal Injury Claim has been established and is payable to the Trust in a currency other than British Pounds Sterling, and that liability is to be satisfied by setting off the sum due against the outstanding Stock Repayment Obligation, such Asbestos Personal Injury Claim shall be converted at the London Spot Mid-Point Rate prevailing on the date when the set-off is made or, if such date is not a business day, on the previous business day, as published in the Financial Times of London. Any loan made by the Trust to a Reorganized Hercules-Protected Entity shall be free of interest and recourse to that Reorganized Hercules-Protected Entity in respect of such loan shall be limited to 94.25% of the amount

recovered in respect of the relevant Asbestos Personal Injury Claim under the Hercules Policy (disregarding for this purpose any reduction in that amount caused by the Hercules Insurers setting off any sum to which they are entitled from Reorganized T&N under any other agreement).

**4.5.8.** Reorganized T&N will hold any amount received from the Hercules Insurers in respect of an established Asbestos Personal Injury Claim (including any amount received by virtue of the reassignment to it of the holder's rights under the Third Parties (Rights Against Insurers) Act 1930 of the United Kingdom pursuant to Section 4.5.4 hereof) in trust to meet any claims handling costs or expenses incurred by or on behalf of Reorganized T&N or any other Reorganized Hercules Protected Entity. Subject to that, Reorganized T&N will hold all amounts received from the Hercules Insurers in respect of an Asbestos Personal Injury Claim in trust to repay to the Trust the amount borrowed by Reorganized T&N or other Reorganized Hercules-Protected Entity to fund the payment of that Asbestos Personal Injury Claim pursuant to Section 4.5.7 hereof. Reorganized T&N will hold any balance of the amounts received from the Hercules Insurers in trust, at the direction of the Trust, to pay further Asbestos Personal Injury Claims established by settlement or judgment. Until the Hercules Policy Expiry Date, all such amounts received from the Hercules Insurers under the Hercules Policy shall be kept in a separately designated bank account in the name of Reorganized T&N pending application in accordance with the trusts established under this Section 4.5.8. Upon (i) the occurrence of the Hercules Policy Expiry Date and (ii) satisfaction of the payments to be made under the foregoing trusts established under this Section 4.5.8, Reorganized T&N shall be entitled to any outstanding balance received from the Hercules Insurers absolutely; in that event Reorganized T&N will pay to the Trust a sum equivalent to the amount of the outstanding balance retained by Reorganized T&N (but without creating any trust affecting such outstanding balance). Any payment by the Hercules Insurers under the Hercules Policy or by any EL Insurer under an EL Policy to the holder of an Asbestos Personal Injury Claim pursuant to judgment or settlement of a Claim shall be held by the holder of the relevant Claim in trust for the sole and exclusive benefit of (in the case of a payment by the Hercules Insurers under the Hercules Policy) Reorganized T&N and (in the case of a payment by any EL Insurers under an EL Policy) the Trust (specifically, the T&N Worldwide Fund as defined within the Trust Documents), and paid to Reorganized T&N or, as the case may be, the Trust at its request, and the holder's recovery against the Trust shall be determined solely under and in accordance with the Asbestos Personal Injury Trust Distribution Procedures and other Trust Documents.

**4.5.9.** Notwithstanding anything to the contrary in this Plan or the Trust Documents, to the extent that any Non-Debtor Hercules-Protected Entity is sued or otherwise pursued on a liability or alleged liability for which coverage is provided under the Hercules Policy or any EL Policy, Reorganized T&N shall be entitled to seek and obtain coverage for such liability under or with respect to the Hercules Policy or any EL Policy and retain any and all proceeds, if any, paid on account of such liability by the Hercules Insurers or any EL Insurer.

**4.6. Investment Guidelines**. Pursuant to Section 3.2 of the Trust Agreement, all monies held in the Trust shall be invested, subject to the investment limitations and provisions enumerated in the Trust Agreement, and shall not be limited to the types of investments described in Section 345 of the Bankruptcy Code.

**4.7. Excess Trust Assets**. To the extent there are any Trust Assets remaining at such time as the Trust is terminated, such excess Trust Assets shall be transferred to such charitable purposes as the Trustees, in their reasonable discretion, shall determine, provided that, if practicable, the charity or charities to which such excess Trust Assets are transferred shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related lung disorders.

**4.8. Trust Expenses**. The Trust shall pay all Trust Expenses from the Trust Assets, including proceeds of applicable Asbestos Insurance Policies. Neither the Debtors' Estates nor the Reorganized Debtors shall have any obligation to pay any Trust Expenses. Additionally, the Trust shall promptly pay all Trust Expenses of Reorganized Debtors for any and all liabilities, costs or expenses incurred in taking any action on behalf of or at the direction of the Trustees.

**4.9. Selection Of The Initial Trustees**. The three initial Trustees of the Trust shall be the persons identified in the Trust Agreement. All successor Trustees shall be appointed in accordance with the terms of the Trust Agreement. For purposes of performing their duties and fulfilling their obligations under the Trust Agreement and the Plan, each Trustee shall be deemed to be (and the Confirmation Order shall so provide) a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code.

**4.10. Advising The Trust**

**4.10.1. The Trust Advisory Committee.** The Trust Advisory Committee shall be established pursuant to the Trust Agreement. The TAC shall have four members and shall have the functions, duties and rights provided in the Trust Agreement. On or before the Confirmation Date, the four initial members of the TAC shall be selected by the Asbestos Claimants Committee.

**4.10.2. Successor Committee Members.** Each member of the Trust Advisory Committee shall serve in accordance with the terms and conditions contained in the Trust Agreement.

**4.10.3. Future Claimants Representative.** From and after the Effective Date, the Future Claimants Representative shall continue to serve in that capacity as an advisor to the Trust.

**4.10.4. U.K. Legal Advisors.** As required by the Trust Agreement, the Trustees shall retain U.K. legal advisors and consult with such advisors with respect to issues involving those aspects of U.K. law that would affect the processing, liquidation or payment of U.K. claims. Such U.K. legal advisors shall include at least one expert in English law and one expert in Scottish law.

**4.11. Trust Indemnity Obligations.** Notwithstanding anything to the contrary in the Trust Documents, the Trust shall have the indemnification obligations set forth in Article IV of the Plan, including, without limitation, the indemnification obligations set forth below.

**4.11.1.** Except as provided in 4.11.2 below with respect to Non-Debtor Asbestos Claims, if, on or after the Effective Date, the Reorganized Debtors and/or any of their

non-Debtor Affiliates are held liable for any Asbestos Personal Injury Claim that is not successfully channeled to the Trust, for any reason, whether such Asbestos Personal Injury Claim is asserted in the U.S., the U.K. or anywhere else in the world, the Trust shall indemnify the Reorganized Debtors and/or any of their non-Debtor Affiliates, as applicable, in an amount equal to (i) the value of such Asbestos Personal Injury Claim as determined by settlement or judgment times (ii) the applicable payment percentage under the Asbestos Personal Injury Trust Distribution Procedures. For purposes of determining the amount of indemnification due under this Section 4.11 and only for such purpose, the value of such Asbestos Personal Injury Claim as set forth in (i) shall be the amount of any settlement or judgment plus all costs of defenses and expenses related to such Asbestos Personal Injury Claim. Notwithstanding anything to the contrary, if the Asbestos Personal Injury Claim for which indemnity is due under this Section 4.11 is an Other Asbestos Disease (Disease Level I – Cash Discount Payment) as defined in the Asbestos Personal Injury Trust Distribution Procedures, then the Trust shall indemnify the Reorganized Debtors and/or any of their non-Debtor Affiliates, as applicable, in an amount equal to the Scheduled Value for such Asbestos Personal Injury Claim.

      **4.11.2.**    If, on or after the Effective Date, the Reorganized Debtors and/or any of their non-Debtor Affiliates are held liable for any claim attributable to, directly or indirectly, injuries or other damages caused or allegedly caused by the presence of, or exposure to, asbestos and arising or allegedly arising, in whole or in part, directly or indirectly, from acts or omissions of one or more of the non-Debtor Affiliates, whether such claim is asserted in the U.S., the U.K. or anywhere else in the world (a "Non-Debtor Asbestos Claim"), the Trust shall indemnify the Reorganized Debtors and/or any of their non-Debtor Affiliates in an amount equal to the lesser of (i) the amount actually paid on such Non-Debtor Asbestos Claim by the Reorganized Debtors and/or the non-Debtor Affiliates, as applicable, plus fees and costs related to such Non-Debtor Asbestos Claim, times the applicable payment percentage under the Asbestos Personal Injury Trust Distribution Procedures and (ii) what the holder of such Non-Debtor Asbestos Claim would have received from the applicable sub-fund if the Non-Debtor Asbestos Claim had been channeled to the Trust and did not proceed to judgment. In the event the Asbestos Personal Injury Trust Distribution Procedures do not contain a matrix for any such Non-Debtor Asbestos Claim, the amount of indemnity due under this Section 4.11.2 shall be determined by using the T&N/U.S. Claims matrix set forth in the Asbestos Personal Injury Trust Distribution Procedures.

      **4.11.3.**    Notwithstanding Sections 4.11.1 and 4.11.2 above, if, on or after the Effective Date, the Reorganized Debtors and/or any of their non-Debtor Affiliates are sued on account of an Asbestos Personal Injury Claim or a Non-Debtor Asbestos Claim that relates to a stream of liability for which there is no applicable payment percentage and such Asbestos Personal Injury Claims and/or Non-Debtor Asbestos Claims may be tendered to an insurance company for handling and payment, the applicable Reorganized Debtor and/or non-Debtor Affiliate shall tender such Asbestos Personal Injury Claim or Non-Debtor Asbestos Claim, as applicable, to the Trust so the Trust can properly access any available insurance. The Trust shall use its best efforts to have such Asbestos Personal Injury Claim and/or Non-Debtor Asbestos Claim paid by any applicable insurance and, if the Trust obtains any insurance proceeds on account of such claims, the Trust shall remit such proceeds to the applicable Reorganized Debtor and/or non-Debtor Affiliate.

**4.11.4.**     The Trust shall indemnify Reorganized Federal-Mogul on an after-tax basis for all and any adverse tax consequences suffered by any of the Hercules - Protected Entities arising (either directly or indirectly) as a result of or attributable to the implementation of Article IV of the Plan.  For this purpose, Reorganized Federal-Mogul shall be conclusively deemed to have suffered a loss in an amount equal to the adverse tax consequences suffered by the relevant Hercules-Protected Entity.

**4.11.5.**     Notwithstanding anything in the Trust Agreement, including, without limitation, Section 3.1 of the Trust Agreement, the Trust shall (i) be obligated to pay the indemnification as required under the Plan without regard to which stream of asbestos liability the indemnification relates to and (ii) pay such indemnification from any and all available assets in any of the Funds (as such term is defined in the Trust Agreement) without regard to which Fund or stream of asbestos liability such indemnification relates to.

**4.11.6.**     For the avoidance of doubt, any indemnity due to the Hercules-Protected Entities under this Section 4.11 shall be subject to the limitations set forth in Section 4.4 above.

**4.11.7.**     Notwithstanding anything to the contrary in the Plan or the Trust Documents, the Trust shall not assume any agency obligation with respect to any Asbestos Personal Injury Claims against the Reorganized Debtors on behalf of the EL Insurers, the Hercules Insurers and/or the CRU and these Entities may only assert any such Asbestos Personal Injury Claims they may hold, if any, against the Trust.  Additionally, if the EL Insurers, the Hercules Insurers and/or the CRU assert any Claim against the Reorganized Debtors and such Claim is not successfully channeled to the Trust, then the Trust shall indemnify the Reorganized Debtors the full amount of any and all damages, losses, fees and expenses incurred with respect to such Claim.

### ARTICLE V
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

#### 5.1.  Assumption And Rejection Of Unexpired Leases And Executory Contracts

**5.1.1.     Assumption.**  All unexpired leases and executory contracts that (a) have not been expressly rejected by the U.S. Debtors with approval of the Bankruptcy Court on or prior to the Effective Date or (b) are not rejected pursuant to Section 5.1.2. below shall, as of the Effective Date (and subject to the occurrence of the Effective Date), be assumed by the Debtors.  Not later than ninety (90) days prior to the scheduled date for the Confirmation Hearing, the Debtors will file with the Bankruptcy Court an exhibit (the "Cure Exhibit") setting forth those unexpired leases and executory contracts which are being assumed by the U.S. Debtors and as to which the U.S. Debtors believe that cure amounts are owing, together with the respective cure amounts due for each such assumed lease or executory contract.  With respect to any unexpired leases or executory contracts which are being assumed by the U.S. Debtors but as to which the U.S. Debtors contend that no cure amounts are due, such unexpired leases and executory contracts will not be included on the Cure Exhibit.  The U.S. Debtors may modify,

supplement or amend the Cure Exhibit up to and including the Confirmation Date. Not later than the earlier of (i) sixty (60) days prior to the scheduled Confirmation Hearing or (ii) if the proposed cure amount for any particular unexpired lease or executory contract is amended by any U.S. Debtor following the filing of the initial Cure Exhibit, thirty (30) days after such amendment is filed by the U.S. Debtors with the Bankruptcy Court, the non-Debtor party to any such unexpired lease or executory contract which the U.S. Debtors propose to assume may dispute the cure amount, if any, set forth by the U.S. Debtors with respect to the assumption of such unexpired lease or executory contract by filing an appropriate objection with the Bankruptcy Court.

**5.1.2.** **Rejection.** Notwithstanding Section 5.1.1 above, the U.S. Debtors shall reject each and all of the executory contracts and unexpired leases designated in the list of rejected contracts (as such list may be amended or supplemented up to and including the Confirmation Date) that will be included in Exhibit 5.1.2 of the Plan filed with the Bankruptcy Court prior to the Plan Confirmation hearing.

**5.1.3.** **Reservation.** Notwithstanding Sections 5.1.1 and 5.1.2 above, Section 5.2 shall not apply to any unexpired lease or executory contract that is specifically identified and dealt with otherwise under the Plan.

**5.2.** **Rejected Unexpired Leases And Executory Contracts.** Notwithstanding anything to the contrary set forth in Section 5.1 hereof, the U.S. Debtors hereby expressly reject, pursuant to Section 365 of the Bankruptcy Code, the following executory contracts and unexpired leases: (a) all product warranties, indemnity agreements and similar agreements of the U.S. Debtors (including any obligation of the U.S. Debtors to pay any costs or expenses related to such product warranties) which relate to asbestos or asbestos-related products that were made, mined, manufactured, produced, distributed, sold, marketed or supplied by the U.S. Debtors, whether or not the liabilities or obligations resulting thereunder constitute or will be treated as Asbestos Personal Injury Claims pursuant to the Plan; (b) all product warranties of the U.S. Debtors (including any obligation to pay any costs or expenses related to such warranties), which relate to products no longer made, manufactured, produced, distributed, sold, marketed or supplied by the U.S. Debtors; and (c) the Dan=Loc Deed of Special Indemnity and the Dan=Loc Deed of Guarantee except as set forth in Section 8.20 of the Plan.

**5.3.** **Continuation Of Product Warranties.** The Reorganized U.S. Debtors may elect to honor any product warranty as to non-asbestos products rejected pursuant to Section 5.2 of the Plan if honoring such product warranty would, in the judgment of the Reorganized U.S. Debtors confer a reasonably comparable benefit upon the Reorganized U.S. Debtors.

**5.4.** **Collective Bargaining Agreements and Retiree Benefit Plans.** Notwithstanding any other provisions of the Plan or of this Article V, the Plan Proponents reserve the right to seek to reject, modify and or terminate any collective bargaining agreements with respect to which any of the Debtors is a party in accordance with Section 1113 of the Bankruptcy Code, any retiree benefit plans of any or all of the Debtors in accordance with Section 1114 of the Bankruptcy Code and any other employee benefit programs in accordance with applicable law.

**5.5.**    **Damages Upon Rejection**. The Bankruptcy Court shall determine the dollar amount, if any, of the Claim of the non-Debtor party for damages resulting from the rejection of any executory contract or unexpired lease; provided, however, that any such Entity that holds or asserts a Claim against a U.S. Debtor or its Estate, must file a Proof of Claim with the Bankruptcy Court within thirty (30) calendar days following the Confirmation Date, or as otherwise ordered by the Bankruptcy Court. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Plan as an Unsecured Claim, or, as applicable, an Asbestos Personal Injury Claim, in the Reorganization Case of the particular U.S. Debtor which is a party to such contract or lease, and the holder thereof shall receive distributions under the Plan as a holder of an Allowed Unsecured Claim or Asbestos Personal Injury Claim. The Plan shall constitute notice to Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the bar date for filing a Proof of Claim in connection therewith; provided, however, that the U.S. Debtors shall have no obligation to notify such Entities that Confirmation has occurred.

**5.6.**    **Corporate Indemnities**

**5.6.1**    **Prepetition Indemnification and Reimbursement Obligations**. For purposes of the Plan, the respective obligations of Federal-Mogul and its Affiliated Debtors to indemnify and reimburse Persons who are or were directors, officers or employees of the Debtors on the Petition Date or at any time thereafter, against and for any obligations pursuant to the articles of incorporation, codes of regulation, bylaws (including, without limitation, the obligations of Federal-Mogul Corporation pursuant to Article IV of the By-Laws of Federal-Mogul Corporation), applicable state or non-bankruptcy law, or specific agreement or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged under Section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with any event occurring before, on or after the Petition Date. In furtherance of, and to implement the foregoing, the Reorganized Debtors shall maintain insurance (also referred to as tail coverage) for the benefit of each and all of the above-indemnified directors, officers and employees, at levels no less favorable than those existing as of the date of entry of the Confirmation Order, and for a period of no less than three years following the Effective Date.

**5.6.2.**    **Plan Indemnity**. In addition to the matters set forth in Section 5.5.1 and not by way of limitation thereof, the Reorganized Debtors shall indemnify and hold harmless all Persons who are or were officers or directors of the Debtors on the Petition Date or thereafter on account of and with respect to any claim, cause of action, liability, judgment, settlement, cost or expense (including attorney's fees) on account of claims or causes of action threatened or asserted by any third party against such officers or directors that seek contribution, indemnity, equitable indemnity, or any similar claim, based upon or as the result of the assertion of primary claims against such third party by any representative of the Debtors' Estates.

**5.6.3. Limitation on Indemnification.** Notwithstanding anything to the contrary set forth in this Plan or elsewhere, the Reorganized Debtors shall not be obligated to indemnify and hold harmless any Person or Entity for any claim, cause of action, liability, judgment, settlement, cost or expense that results primarily from such Person's or Entity's bad faith, gross negligence or willful misconduct.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF THE PLAN

**6.1. Each Impaired Class Entitled To Vote Separately.** The holders of Claims or Equity Interests in each impaired Class of Claims or Equity Interests that receive or retain property pursuant to the Plan shall be entitled to vote separately to accept or reject the Plan; provided, however, holders of Claims in impaired Classes against multiple Debtors must vote the same way with respect to each Debtor.

**6.2. Acceptance By Impaired Classes Of Claims.** Pursuant to Section 1126(c) of the Bankruptcy Code, but subject to Section 6.3 below, an impaired Class of Claims shall have accepted the Plan if, after excluding any Claims held by any holder designated pursuant to Section 1126(e) of the Bankruptcy Code, (a) the holders of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) more than one-half in number of such Allowed Claims actually voting in such Class have voted to accept the Plan.

**6.3. Acceptance Pursuant To Section 524 Of The Bankruptcy Code.** Pursuant to Section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code, the respective Classes of Asbestos Personal Injury Claims shall have accepted the Plan only if the holders of at least 75 percent of the Claims entitled to vote in such Classes have voted to accept the Plan.

**6.4. Presumed Acceptance Of Plan.** Classes of Claims or Equity Interests designated as unimpaired are conclusively presumed to have voted to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**6.5. Presumed Rejection Of Plan.** Impaired Classes of Claims or Equity Interests that do not receive or retain any property under the Plan are conclusively presumed to have voted to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

**6.6. Votes With Respect to U.K. Debtors.** In addition to voting on the Plan as set forth in Section 6.1 above, holders of Claims against the U.K. Debtors shall also determine whether to demand that the Administrators summon meetings of creditors of the U.K. Debtors pursuant to Section 17(3) of IA 1986 for the purposes of considering and voting on the following resolutions: (a) that the Administrators (i) immediately propose Schemes of Arrangement and/or Voluntary Arrangements substantially similar to the forms attached to the Disclosure Statement and take all necessary steps to summon meetings of creditors and members to consider and vote on such Schemes of Arrangement and/or Voluntary Arrangements or (ii) apply to the U.K. Court for discharge of the U.K. administration orders and give the Plan Proponents fourteen (14) days notice of such application; and (b) that the expenses of summoning and holding any such meetings of creditors are to be payable out of the estates of the U.K. Debtors as an expense of the

administration proceedings (collectively, "the Resolutions"). The holders of Claims against the U.K. Debtors shall also be entitled to appoint [Joseph F. Rice] or in the alternative [Steven Kazan] to be the agent and proxy holder of such holders at the meetings of creditors or at any adjournment of those meetings to vote in favor of the Resolutions or any modifications with respect thereto that the agent and proxy holder deems appropriate. Additionally, the Plan Proponents shall be authorized, as agents of the holders of Claims voting in favor of making the demand set forth in full above, to take all steps that the Plan Proponents consider necessary or desirable in order to facilitate the Consensual Marketing Procedures including, without limitation, issuing proceedings and/or making applications to the U.K. Court.

### 6.7.  Confirmability And Severability Of The Plan.

**6.7.1.    Consensual Confirmation.** The Confirmation requirements of Section 1129(a) of the Bankruptcy Code must be satisfied separately with respect to each Debtor. Therefore, notwithstanding the combination of the separate plans of reorganization of all U.S. Debtors and U.K. Debtors in this Plan for purposes of, among other things, economy and efficiency, the Plan shall be deemed a separate Chapter 11 plan for each such Debtor.

**6.7.2.    Cramdown.** With respect to any impaired Class of Claims or Equity Interests that fails to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, including such classes as may be created pursuant to amendments to the Plan, the Plan Proponents request that the Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code with respect to such non-accepting classes, in which case or cases, the Plan shall constitute a motion for such relief.

### 6.7.3.    Reservation of Rights

(a)    The Plan Proponents reserve the right to modify or withdraw the Plan, any other plan, or the Plan in its entirety, for any reason, including, without limitation, in the event that any separate plan for a particular Debtor is not confirmed. In addition, should the Plan, or any individual Debtor's plan, fail to be accepted by the requisite number and amount of Claims and Equity Interests voting, as required to satisfy Sections 524(g) (in the case of any Debtor subject to Asbestos Personal Injury Claims) and 1129 of the Bankruptcy Code, and notwithstanding any other provision of the Plan to the contrary, the Plan Proponents reserve the right to amend, modify or withdraw such plan or the Plan in its entirety. Also, in the event the Plan of a U.K. Debtor is confirmed over the objection of a Class of creditors of such U.K. Debtor pursuant to Section 1129(b) of the Bankruptcy Code but the Scheme of Arrangement and/or Voluntary Arrangement for such U.K. Debtor is not approved, the Plan Proponents reserve the right to seek the dismissal of the U.K. administration proceedings for such U.K. Debtor or to have the Confirmation Order recognized by the U.K. Court as a matter of comity.

(b)    In the event that the conditions to effectiveness set out in Sections 7.2.5 and 7.2.6 are not satisfied in relation to all or any of the U.K. Debtors, the Plan Proponents may waive each of the conditions in whole or in part, and/or impose any new condition or conditions to the effectiveness of the Plan, and, in any such event, the Plan Proponents reserve the right to amend or modify the Plan and/or to propose any substitute Section 425 Scheme and/or Voluntary Arrangement.

**ARTICLE VII**
**CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**

**7.1.**  **Conditions To Confirmation**.  Confirmation of the Plan shall not occur unless each of the following conditions has been satisfied or waived by the Plan Proponents. These conditions to confirmation, which are designed, among other things, to ensure that the Injunctions, releases and discharges set forth in Article IX shall be effective, binding and enforceable, are as follows:

**7.1.1.**  **Findings of Fact**.  The Bankruptcy Court and/or the District Court, as applicable, shall have made the following findings in substantially the following form:

(a)  The Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction are to be implemented in connection with the Trust;

(b)  As of the Petition Date, certain of the Debtors had been named as defendants in personal injury, wrongful death or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(c)  Subject to Article IV of the Plan, upon Confirmation, the Trust shall assume the liabilities of the Debtors with respect to Asbestos Personal Injury Claims;

(d)  The Trust will be funded in part by the Reorganized Federal-Mogul Class B Common Stock, and all rights to receive dividends or other distributions on account of such Class B Common Stock;

(e)  On the Effective Date, the Trust will own a majority of the voting shares of Reorganized Federal-Mogul;

(f)  The Trust will use its assets or income to pay Asbestos Personal Injury Claims;

(g)  The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims, that are addressed by the Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction;

(h)  The actual amounts, numbers and timing of future Demands cannot be determined;

(i)  Pursuit of Asbestos Personal Injury Claims, including Demands, outside the procedures prescribed by the Plan is likely to threaten the Plan's purpose to deal equitably with Claims and future Demands;

(j)  The terms of the Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

(k)     Pursuant to court orders or otherwise, the Trust shall operate through mechanisms such as structured, periodic or supplemental payments, Pro Rata distributions, matrices or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims or other comparable mechanisms, that provide reasonable assurance that the Trust will value, and be in a financial position to pay, present Asbestos Personal Injury Claims and future Asbestos Personal Injury Claims and Demands that involve similar Claims in substantially the same manner;

(l)     The Future Claimants Representative was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction, and transferred to and assumed by the Trust;

(m)     The inclusion of each Debtor or beneficiary within the protection afforded by the Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction, as applicable, is fair and equitable with respect to the persons that might subsequently assert Demands against each such Debtor or beneficiary in light of the benefits provided, or to be provided, to the Trust on behalf of such Debtor or such beneficiary;

(n)     The Plan complies with Section 524(g) of the Bankruptcy Code in all respects;

(o)     The receipt of Trust Assets in accordance with Article IV of the Plan does not violate any obligation of the Debtors or breach any terms, obligations, or duties under any applicable Asbestos Insurance Policy, including any obligation of the Debtors to cooperate, any management of claims provisions, any consent to assignment provisions, or any consent to settlement in any provision of any Asbestos Insurance Policy;

(p)     The assignment of rights under the Asbestos Insurance Policies to the Trust do not materially increase any Asbestos Insurance Company's risk in providing coverage for Asbestos Personal Injury Claims compared to the risk that was otherwise being borne by the Asbestos Insurance Companies prior to the Effective Date;

(q)     Upon confirmation and consummation of this Plan, the Trust shall have access to the Asbestos Insurance Policies for the purpose of meeting the Trust's obligations to defend, resolve, and satisfy Asbestos Personal Injury Claims and to satisfy existing or future obligations of the Trust for Asbestos Personal Injury Claims in the same manner the Debtors have had access to the Asbestos Insurance Polices to respond to Asbestos Personal Injury Claims prior to the Effective Date; and

(r)     The Supplemental Injunction, the Third Party Injunction and the Asbestos Insurance Entity Injunction are essential to this Plan and the Debtors' reorganization efforts.

**7.1.2.     Confirmation Order.** The Bankruptcy Court and/or District Court, as applicable, shall have made such findings and determinations regarding the Plan as shall enable

the entry of the Confirmation Order and any other order entered in conjunction therewith in form and substance acceptable to the Plan Proponents.

      **7.1.3.**     **Exit Facilities**. The Debtors shall have obtained a binding commitment(s) for the Exit Facilities on terms reasonably acceptable to the Plan Proponents.

      **7.2.**   <u>**Conditions To Effectiveness**</u>. Notwithstanding any other provision of the Plan or the Confirmation Order, the Effective Date of the Plan shall not occur unless and until each of the following conditions has been satisfied or waived by the Plan Proponents:

      **7.2.1.**     **Confirmation Order**. The Confirmation Order shall have been issued or affirmed by the District Court, and the Confirmation Order shall have become a Final Order; provided, however, that the Effective Date may occur at a point in time when the Confirmation Order is not a Final Order at the sole option of the Plan Proponents unless the effectiveness of the Confirmation Order has been stayed or vacated, in which case the Effective Date may be, again at the sole option of the Plan Proponents, the first Business Day immediately following the expiration or other termination of any stay of effectiveness of the Confirmation Order.

      **7.2.2.**     **Trust**. The Trust Assets shall have been transferred to, vested in and assumed by the Trust in accordance with Section 4.3 of the Plan, other than any Trust Assets to be transferred to, vested in and assumed by the Trust after the Effective Date.

      **7.2.3.**     **Corporate Documents**. The Trust Documents and the other applicable corporate documents necessary or appropriate to implement the Plan shall have been executed, delivered and, where applicable, filed with the appropriate governmental authorities.

      **7.2.4.**     **United States Trustee's Fees**. The fees of the United States Trustee then owing by the Debtors shall have been paid in full.

      **7.2.5.**     **Sanctioning of Scheme of Arrangement**. If and to the extent that the Plan Proponents determine that there should be a Scheme of Arrangement in respect of all or any of the U.K. Debtors, (i) the U.K. Court shall have sanctioned the Scheme(s) of Arrangement, and an office copy of the Order of the U.K. Court sanctioning the Scheme(s) of Arrangement shall have been delivered for registration to the Registrar of Companies as required by Section 425(3) of the Companies Act 1985 of the United Kingdom and (ii) all of the conditions to such Scheme(s) of Arrangement shall have been satisfied in accordance with the terms of the respective Scheme(s) of Arrangement except with respect to any conditions relating to the effectiveness of the Plan, provided however, in respect of any or all of the U.K. Debtors, if the relevant Scheme of Arrangement fails to be sanctioned in accordance with the provisions set out above, the Plan Proponents shall have the right to waive this provision in its entirety or in relation to any individual U.K. Debtor.

      **7.2.6.**     **Approval of Voluntary Arrangement**. If and to the extent that the Plan Proponents determine that there should be a Voluntary Arrangement in respect of all or any of the U.K. Debtors, (i) the requisite approval for the Voluntary Arrangement(s) (in accordance with the IA 1986 and the IR 1986), if applicable, shall have been obtained, the chairperson of the relevant meetings shall have reported the results of the meetings to the U.K. Court pursuant to Section 4(6) of the IA 1986 and, within the period of 28 days beginning with the first day on

which such reports are made to the U.K. Court, no challenge or appeal shall have been made against the decision of the chairperson of the relevant meetings under Rule 1.17 of the IR 1986 or against the Voluntary Arrangement(s) under Section 6 of the IA 1986 and (ii) all conditions to such Voluntary Arrangement(s) have been satisfied in accordance with the terms of the respective Voluntary Arrangement, except with respect to any conditions relating to the effectiveness of the Plan, provided however, that with respect to any or all of the U.K. Debtors, if the relevant Voluntary Arrangement fails to be approved in accordance with the provisions set forth above, the Plan Proponents shall have the right to waive this provision in its entirety or in relation to any such individual U.K. Debtor.

       **7.2.7.**     **Other Assurances.** The Plan Proponents shall have obtained tax rulings, decisions, opinions or other assurances regarding certain tax consequences of the Plan, as they deem satisfactory.

       **7.2.8.**     **Exit Facilities.** The Reorganized Debtors shall have entered into agreements with respect to the Exit Facilities and the Closing Date, as to be defined in the Exit Facilities, shall have occurred.

## ARTICLE VIII
## IMPLEMENTATION OF THE PLAN

### 8.1.  Matters Involving U.K. Debtors

       **8.1.1.**     **Schemes of Arrangement and/or Voluntary Arrangements.** Attached to the Disclosure Statement as Exhibits D and E thereto are forms of Schemes of Arrangement and/or Voluntary Arrangements that parallel, to the extent possible under English and/or Scottish law, the provisions of the Plan with respect to the classification and treatment of certain Claims against the U.K. Debtors listed in Exhibits 1.1.133 and 1.1.168 to the Plan. In the event the Administrators propose the Schemes of Arrangement and/or Voluntary Arrangements, the Administrators will seek approval of such Schemes of Arrangement and/or Voluntary Arrangements in accordance with English and/or Scottish insolvency laws. If the Administrators do not propose, or in the opinion of the Plan Proponents are unlikely to propose, the Schemes of Arrangement or Voluntary Arrangements, then the Plan Proponents will attempt to reach an agreement on Consensual Marketing Procedures with the Administrators in accordance with and as set forth in Section 8.16.1 of the Plan. In the event no agreement with the Administrators can be reached, then one or more of the following may occur with respect to each U.K. Debtor: (a) meetings of creditors shall be convened in accordance with the demands of creditors given pursuant to Section 6.6 of the Plan in order to resolve, pursuant to the proxies given pursuant to Section 6.6 of the Plan, that the Administrators either (i) propose Schemes of Arrangement and/or Voluntary Arrangements substantially similar to the forms attached to the Disclosure Statement and summon meetings of creditors and members to consider and vote on such Schemes of Arrangements and/or Voluntary Arrangements or (ii) seek the discharge of the U.K. administration orders so that the Schemes of Arrangement and/or Voluntary Arrangements can thereafter be proposed by the U.K. Debtors as appropriate; (b) the U.K. Debtors and the Plan Proponents may ask the U.K. Court to approve the Plan with respect to the U.K. Debtors as a

matter of comity; or (c) the Non-Consensual Marketing Procedures set forth in Section 8.16.3 of the Plan may be performed.

      **8.1.2.**    **Chapter 11 Plans of Reorganization.** While Confirmation of the Plan is not conditioned upon sanctioning each Scheme of Arrangement by the U.K. Court and/or approval of each Voluntary Arrangement, the Effective Date of the Plan shall not occur unless and until the U.K. Court has sanctioned the applicable Schemes of Arrangement as set out in Section 7.2.5 and/or the conditions set out in Section 7.2.6 in relation to the applicable Voluntary Arrangements have been fulfilled, subject to the right of the Plan Proponents to waive these requirements as set forth in Section 6.7.3(b). Conversely, confirmation of the Plan is a condition precedent to effectiveness of the Schemes of Arrangement and/or Voluntary Arrangements, subject, however, to the right of the Plan Proponents to waive this condition.

      **8.2.**  <u>**Continued Corporate Existence.**</u> Each of the Reorganized Debtors, other than such Inactive Debtor Subsidiaries as may be dissolved, liquidated, wound-up and/or struck off, shall continue to exist after the Effective Date as a separate corporate entity in accordance with the applicable law in the jurisdiction in which it is incorporated, under its respective certificate of incorporation and bylaws or other organizational documents in effect before the Effective Date, except as its certificate of incorporation, bylaws or other organizational documents are amended by the Plan.

      **8.3.**  <u>**Federal-Mogul Corporation Securities and Corporate Governance**</u>

      **8.3.1.**    **Cancellation Of Existing Stock In Federal-Mogul Corporation.** On the Effective Date, the Federal-Mogul common and preferred stock classified in Classes 1M and 1O, and all unexercised rights, warrants and options relating to such stock and any other rights attached to the ownership of any equity securities of Federal-Mogul Corporation, shall be deemed cancelled and of no further force and effect. The holders of such cancelled instruments, securities and other documentation shall have no rights arising from or relating to such instruments, securities or other documentation or the cancellation thereof, except the rights provided pursuant to the Plan.

      **8.3.2.**    **Conversion of Convertible Subordinated Debentures.** On the Effective Date, all holders of Convertible Subordinated Debentures, except those who have affirmatively elected not do so in connection with their vote on the Plan, will be deemed to have exercised their rights to convert their Convertible Subordinated Debentures into Federal-Mogul common stock on the terms provided for in the indenture governing those debentures. For purposes of the classification and treatment of Claims and Equity Interests under the Plan, such conversion shall be deemed to have occurred on the Record Date, and the resulting common stock interests arising from such conversion shall be included in and treated as Equity Interests under Class 1O.

      **8.3.3.**    **Cancellation of Notes, Other Debt Securities and Indentures.** On the Effective Date, (i) the Notes, the Convertible Subordinated Debentures and any other debt securities issued by the Debtors shall be deemed cancelled and of no further force and effect and (ii) the obligations of the Debtors under any agreements governing such Notes, the Convertible Subordinated Debentures or other debt securities, including, without limitation, the Indentures,

shall be cancelled and discharged. Except as provided in this section and the Plan, the holders of any such cancelled instruments, debt securities and related documentation shall have no rights arising from or relating to such instruments, securities or other documentation or the cancellation thereof. Notwithstanding the foregoing, each Indenture and Note shall continue in effect solely for the purposes of (a) allowing the Indenture Trustees to make distributions on account of Noteholder Claims under the Plan and (b) permitting the Indenture Trustees to maintain any rights or Liens they may have for unpaid fees, costs and expenses under such Indentures; provided, however, such rights and Liens are limited to the distributions, if any, to Noteholders. Notwithstanding the preceding sentence, clauses (a) and (b) of this section shall not represent exceptions to the discharge of the Debtors' liabilities under the Bankruptcy Code and the Confirmation Order. Additionally, upon payment in full of the fees and expenses of the Indenture Trustees pursuant to Section 8.15.6 of the Plan, any such rights or Liens of the Indenture Trustees shall terminate.

**8.3.4.    Issuance Of Reorganized Federal-Mogul Common Stock.** On the Effective Date, Reorganized Federal-Mogul shall issue 49.9 million shares of Reorganized Federal-Mogul Class A Common Stock and 50.1 million shares of Reorganized Federal-Mogul Class B Common Stock. Concurrently with such issuance, Reorganized Federal-Mogul shall distribute (i) all of the shares of the Class B Common Stock (less the shares of Class B Common Stock issued pursuant to Section 4.5 hereof) to the Trustees of the Trust as part of the consideration to be paid for the Trust's assumption of all Asbestos Personal Injury Claims (which shall then be allocated to the sub-Trusts created under the Trust Documents as provided therein), (ii) the Class B Common Stock issued under Section 4.5 of the Plan to the Trustees of the Trust and (iii) all of the shares of the Class A Common Stock to the Disbursing Agent for further distribution Pro Rata to the holders of Allowed Noteholder Claims and Allowed Convertible Subordinated Debenture Claims. For the purpose of distributions to the holders of Allowed Noteholder Claims, the Indenture Trustee under each series of Notes shall be deemed to be the sole holder of the Allowed Noteholder Claim for all Allowed Noteholder Claims for such series of Notes. Accordingly, all distributions of Reorganized Federal-Mogul Class A Common Stock on account of Allowed Noteholder Claims shall be distributed to the Indenture Trustees for further distribution to the Noteholders pursuant to the terms of the respective Indentures. Distribution of such Reorganized Federal-Mogul Class A Common Stock shall be deemed complete upon delivery of one or more share certificates representing such shares to the Indenture Trustees, on behalf of the Noteholders. The Disbursing Agent shall not be entitled to vote any shares of Reorganized Federal-Mogul Class A Common Stock.

**8.3.5.    Issuance of Warrants**

**8.3.5.1.**    Subject to Section 8.3.5.2 below, on the Effective Date, if Classes 1D and 1J have both voted to accept the Plan, and if at least one of Classes 1M, 1N or 1O has also voted to accept the Plan, Reorganized Federal-Mogul shall issue Warrants for the purchase of shares of Reorganized Federal-Mogul Class A Common Stock in an amount calculated in accordance with Sections 3.1.13, 3.1.14 and/or 3.1.15, as applicable. Concurrently with such issuance, Reorganized Federal-Mogul shall distribute such warrants to the Disbursing Agent for further distribution consistent with the terms and provisions of the Plan. The Disbursing Agent shall not be entitled to exercise any of the Warrants.

**8.3.5.2.**    If the Bankruptcy Court and/or District Court, as applicable, holds, determines or rules that the Plan is not confirmable due to the gifting, issuance or distribution of the Warrants, then (a) no Warrants shall be issued or distributed pursuant to the Plan and (b) Classes 1M, 1N and 1O shall receive no distributions under the Plan.

**8.3.6.    Surrender of Securities or Instruments.** On or before the Effective Date, or as soon as practicable thereafter, each holder of an instrument (a "Certificate") evidencing the Notes, the Convertible Subordinated Debentures or any other debt securities (but excluding securities representing Bank Claims) shall surrender such Certificate to the Disbursing Agent, or, with respect to indebtedness that is governed by an Indenture, to the Indenture Trustee. The surrender of any global certificate held by an Indenture Trustee shall constitute surrender of the Notes or other debt securities pertaining to such global certificate for purposes of this provision. No distribution of property hereunder shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the respective Indenture Trustee, or evidence of the loss, theft, mutilation or destruction of such Certificate is established to the reasonable satisfaction of the Disbursing Agent or the respective Indenture Trustee. Any such holder who fails to (a) surrender or cause to be surrendered such Certificate, or (b) execute and deliver an affidavit of loss, theft, mutilation or destruction and indemnity to the reasonable satisfaction of the Disbursing Agent or the respective Indenture Trustee prior to the second anniversary of the Effective Date, (i) shall be deemed to have forfeited all rights and Claims or interests in respect of such Certificate, (ii) shall not participate in any distribution hereunder, and (iii) all property in respect of such forfeited distribution, including interest accrued thereon, shall be distributed Pro Rata to and among holders of the same securities, and in accordance with legal rights and priorities of, those holders who properly surrendered such Certificates pursuant to the Plan.

**8.3.7.    Registration of Certain Reorganized Federal-Mogul Securities.** On the Effective Date, Reorganized Federal-Mogul shall execute and deliver registration rights agreements substantially in the form set forth in Exhibit 8.3.7 hereto obligating Reorganized Federal-Mogul to register for resale, to the extent required by federal and state securities laws, the Reorganized Federal-Mogul Common Stock, the Reorganized Federal-Mogul Junior Secured PIK Notes and the Warrants under the Securities Act of 1933 in accordance with the terms set forth in such registration rights agreements. The holders of Reorganized Federal-Mogul Common Stock, Reorganized Federal-Mogul Junior Secured PIK Notes and Warrants entitled to enter into such registration rights agreements are those that (i) are issued 10% or more of the Reorganized Federal-Mogul Common Stock, (ii) would otherwise qualify as an "underwriter" as defined in Section 1145(b) of the Bankruptcy Code or (iii) reasonably request to do so.

**8.3.8.    Transfer Restrictions.** On the Effective Date, Reorganized Federal-Mogul, the Trust and certain Noteholders shall enter into a Lockup Agreement substantially in the form set forth in Exhibit 8.3.8 hereto. The Trust and such Noteholders shall be bound by certain restrictions on transfer of their shares of Reorganized Federal-Mogul Common Stock as set forth in such Lockup Agreement.

**8.3.9.    Certificate Of Incorporation and Bylaws.** The Certificate of Incorporation of Reorganized Federal-Mogul shall, as of the Effective Date, be amended in its entirety substantially in the form set forth in Exhibit 8.3.9(1) hereto, and the Bylaws of

Reorganized Federal-Mogul shall be amended in their entirety substantially in the form set forth in Exhibit 8.3.9(2) hereto. Consistent with Section 1123(a)(6) of the Bankruptcy Code, the amended Certificate of Incorporation of Reorganized Federal-Mogul shall, among other things, prohibit the issuance of non-voting equity securities. The amended Certificate of Incorporation of Reorganized Federal-Mogul shall provide that the board of directors of Reorganized Federal-Mogul shall consist of seven members, that the holders of Reorganized Federal-Mogul Class A Common Stock shall initially be entitled to nominate four directors and the holders of Reorganized Federal-Mogul Class B Common Stock shall initially be entitled to nominate three directors. Additionally, the amended Certificate of Incorporation shall provide that certain major transactions by Reorganized Federal-Mogul shall require the approval of a majority of both the directors elected by the holders of Reorganized Federal-Mogul Class A Common Stock and the directors elected by the holders of Reorganized Federal-Mogul Class B Common Stock.

       **8.3.10.**    **Initial Board of Directors of Reorganized Federal-Mogul.** On and after the Effective Date, the business and affairs of Reorganized Federal-Mogul shall become the general responsibility of its board of directors, subject to, and in accordance with, the Certificate of Incorporation and the Bylaws of Reorganized Federal-Mogul. The initial board of directors shall consist of the seven individuals identified in Exhibit 8.3.10 hereto.

       **8.3.11.**    **New Employment Agreements.** The New Employment Agreements shall be implemented by Reorganized Federal-Mogul on the Effective Date and shall become binding, effective and operative as of the Effective Date.

       **8.4.**  **Ownership and Management of Affiliated Debtors**

       **8.4.1.**    Except as provided in 8.4.2 below, from and after the Effective Date, each Debtor shall retain its Equity Interest in any other Debtor. The boards of directors of the Affiliated Debtors shall be established by Reorganized Federal-Mogul. The initial boards of directors for the Affiliated Debtors are set forth in Exhibit 8.4.1 hereto.

       **8.4.2.**    On the Effective Date, all outstanding common stock of Debtor Federal-Mogul Piston Rings, Inc. and any other equity securities in, or claims of entitlement to, or rights attached to the ownership of, any equity securities of Federal-Mogul Piston Rings, Inc., shall be deemed cancelled and of no further force or effect. The holders of such cancelled securities, rights or claims shall not receive or retain under the Plan any property on account thereof or on account of the cancellation thereof. On the Effective Date, Reorganized Federal-Mogul Piston Rings, Inc. shall issue 1,000 shares of Reorganized Federal-Mogul Piston Rings, Inc. common stock and shall distribute such shares to Reorganized Federal-Mogul Powertrain, Inc., on account of the Noteholder Claims and as the deemed transferee of the holders of Allowed Class 2D Noteholder Claims, as provided in Section 3.2.4 of the Plan.

       **8.5.**  **Dissolution Of Inactive Debtor Subsidiaries.** On or subsequent to the Effective Date, in the discretion of the new board of directors, Reorganized Federal-Mogul, or the applicable parent company, may take such actions as may be necessary or appropriate to effect the liquidation, dissolution, winding-up, striking off, or other disposition, if any, of some or all of the Inactive Debtor Subsidiaries.

**8.6.  Corporate Action**. All matters provided for under the Plan involving the corporate structure of the Debtors, or any corporate action to be taken by, or required of the Debtors, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action or vote by the stockholders or directors of any of such entities.

**8.7.  Vesting of Assets**. On the Effective Date, all property of the estate of each Debtor shall revest in the applicable Reorganized Debtor free and clear of all Claims, Liens, encumbrances and other interests, except as provided in the Plan and the Confirmation Order. As of the Effective Date, each Reorganized Debtor may operate its business, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**8.8.  Preservation of Rights Of Action**. Except for the Trust Causes of Action and except as provided in Section 11.5 of the Plan or as otherwise provided in the Plan or the Confirmation Order, the Reorganized Debtors shall retain and have the exclusive right, in their sole discretion, to enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits and proceedings, including rights and causes of action arising under the Bankruptcy Code which are commenced prior to the closing of the Reorganization Cases, that the Debtors or their Estates may hold against any Entity. Notwithstanding any other provision of the Plan to the contrary and without limiting the foregoing, the Reorganized Debtors, with the consent of the Trustees, may retain, prosecute and enforce any Asbestos Insurance Action in their own name, for the benefit of the Trust and the holders of Asbestos Personal Injury Claims, provided that any costs and expenses to be incurred by the Reorganized Debtors in any such Asbestos Insurance Action shall be reimbursed to the Reorganized Debtors by the Trust as Trust Expenses as soon as practically possible.

**8.9.  Setoffs.** Each Reorganized Debtor (or the Trust to the extent it pertains to an Asbestos Personal Injury Claim) may, pursuant to the applicable provisions of the Bankruptcy Code, the IA 1986 or applicable non-bankruptcy law, setoff against any applicable Allowed Claim (before any distribution is made on account of such Claim) any and all claims, rights, causes of action, debts or liabilities of any nature that the applicable Reorganized Debtor (or the Trust to the extent it pertains to an Asbestos Personal Injury Claim) may hold against the holder of such Allowed Claim; provided, however, that the failure to effect such a setoff shall not constitute a waiver or release of any such claims, rights, causes of action, debts or liabilities.

**8.10.  Reorganized Federal-Mogul Secured Term Loan Agreement.** On the Effective Date Reorganized Federal-Mogul, as borrower, the other Reorganized U.S. Debtors and F-M UK Holding Limited, as guarantors, the holders of Class 1B Bank Claims, as lenders, and JPMorgan Chase Bank, as Administrative Agent for the lenders, shall become parties to the Reorganized Federal-Mogul Secured Term Loan Agreement regardless of whether any such party actually executes the Reorganized Federal-Mogul Secured Term Loan Agreement. The Reorganized Federal-Mogul Secured Term Loan Agreement shall provide for, among other things, the issuance to the holders of Allowed Class 1B Bank Claims, in accordance with each such holder's previously existing rights under the Bank Credit Agreement, of term loans in the principal amount of $1,303,897,117.90 (as adjusted as of the Effective Date to convert any

foreign currencies to U.S. dollars) plus the amount of any draws prior to the Effective Date on letters of credit outstanding under the Bank Credit Agreement (but excluding draws prior to the Effective Date on letters of credit outstanding under the Tranche C Loans portion of the DIP Facility), repayable in periodic installments maturing six and a half years after the Effective Date, at a rate of interest based on rates in the London interbank market or, at Reorganized Federal-Mogul's option, an alternate base rate. The obligations of the Reorganized U.S. Debtors with respect to the Reorganized Federal-Mogul Secured Term Loan Agreement shall be secured by Liens on substantially all domestic assets of the Reorganized U.S. Debtors and on 65% of the equity in the first tier foreign subsidiaries owned by the Reorganized U.S. Debtors and Reorganized F-M UK Holding Limited. Except as otherwise provided in the Reorganized Federal-Mogul Secured Term Loan Agreement, such Liens shall be junior only to the Liens securing the Exit Facilities and the portion, if any, of the Tranche C Loans restructured pursuant to Section 2.2 of the Plan, and shall be pari passu with the Liens that secure the Secured Surety Notes, if any.

**8.11. Issuance of Reorganized Federal-Mogul Junior Secured PIK Notes.** On the Effective Date, Reorganized Federal-Mogul shall issue and distribute to the PIK Notes Trustee, on behalf of all holders of Class 1B Bank Claims, and for ultimate distribution to each such holder in accordance with such holder's previously existing rights under the Bank Credit Agreement, the Reorganized Federal-Mogul Junior Secured PIK Notes. The Federal-Mogul Junior Secured PIK Notes shall have an aggregate original principal amount of $300,000,000.00, shall mature on the eleventh anniversary of the Effective Date and shall bear interest at a fixed rate, initially payable partially in cash and partially in kind. The obligations of Reorganized Federal-Mogul with respect to the Reorganized Federal-Mogul Junior Secured PIK Notes shall be secured by Liens on substantially all domestic assets of the Reorganized U.S. Debtors and on 65% of the equity in foreign subsidiaries owned by the Reorganized U.S. Debtors and Reorganized F-M UK Holding Limited. Except as otherwise provided in the indenture for the Reorganized Federal-Mogul Junior Secured PIK Notes, such Liens shall be junior only to the Liens securing the Exit Facilities, the portion, if any, of the Tranche C Loans restructured pursuant to Section 2.2 of the Plan, the Reorganized Federal-Mogul Secured Term Loan Agreement and the Secured Surety Notes, if any, and shall be pari passu with the Liens securing the Junior Secured Surety PIK Notes, if any.

**8.12. Exit Facilities.** On the Effective Date, Reorganized Federal-Mogul shall enter into the Exit Facilities. The proceeds of the Exit Facilities shall be used to (a) repay obligations under the DIP Facility on the Effective Date, (b) make cash payments required under the Plan and/or (c) provide working capital for the business operations and general corporate purposes of the Reorganized Debtors.

**8.13. Issuance of Secured Surety Notes, Junior Secured Surety PIK Notes and Related Guarantees.** If and to the extent required under Section 3.1.3 of the Plan, Reorganized Federal-Mogul shall issue the Secured Surety Notes and Junior Secured Surety PIK Notes. If and as required under the applicable Surety Claims treatment sections of the Plan, and if the applicable guarantees or liens are not avoided as a result of the Avoidance Litigation, the Reorganized Debtors that were parties to any guarantee with any of the Sureties relating to the CCR Surety Bonds and that pledged any of their assets to secure their obligations under such agreements shall issue guarantees of Reorganized Federal-Mogul's obligations under the Secured

Surety Notes and Junior Secured Surety PIK Notes, if any, and grant Liens in favor of the Sureties to collateralize such guarantees on the same or substantially all of the collateral that secured their prepetition obligations under their respective agreements with the Sureties. The Liens securing the obligations under the Secured Surety Notes shall be pari passu with the Liens securing the Reorganized Federal-Mogul Secured Term Loan Agreement, and the Liens securing the Junior Secured Surety PIK Notes shall be pari passu with the Liens securing the Reorganized Federal-Mogul Junior Secured PIK Notes.

**8.14. Effectuating Documents And Further Transactions**. The Chief Executive Officer, President, or any Vice President of each Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 8.15. Distributions Under the Plan

**8.15.1.    General Matters**. The Disbursing Agent shall make all distributions required under the Plan (other than distributions to holders of Asbestos Personal Injury Claims). Distributions shall be made on the Distribution Date (unless otherwise provided herein or ordered by the Bankruptcy Court) with respect to all Claims except Asbestos Personal Injury Claims. Distributions with respect to Asbestos Personal Injury Claims shall be made in accordance with the Asbestos Personal Injury Trust Distribution Procedures. Distributions to be made on the Distribution Date shall be deemed actually made on the Distribution Date if made either (a) on the Distribution Date or (b) as soon as practicable thereafter, but in no event later than ten Business Days after the Distribution Date, except as otherwise provided for herein, or except as may be ordered by the Bankruptcy Court. Except where the Plan contemplates deferred payment or delivery of property or securities, payments to be made by the Disbursing Agent pursuant to the Plan shall be made in Cash or by check drawn on a domestic bank or by wire transfer from a domestic bank.

**8.15.2.    Withholding Of Taxes**. The Disbursing Agent or the Trust, as applicable, shall withhold from any assets or property distributed under the Plan any assets or property which must be withheld for foreign, federal, state and local taxes payable with respect thereto or payable by the Person entitled to such assets to the extent required by applicable law.

**8.15.3.    Allocation of Consideration**. To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**8.15.4.    Unclaimed Property**. Except as provided in Section 8.3.4 of the Plan with respect to distributions of Reorganized Federal-Mogul Class A Common Stock to or for the benefit of Noteholders, and Sections 8.3.3 and 8.10 of the Plan with respect to distributions on account of Bank Claims, any Cash, assets, and other property to be distributed under the Plan, but excluding any distributions from the Trust, that remain unclaimed (including by an Entity's failure to negotiate a check issued to such Entity) or otherwise not deliverable to the Entity

entitled thereto before the later of (a) one year after the Distribution Date, or (b) six months after an order allowing such Entity's Claim becomes a Final Order, shall become vested in, and shall be transferred to, the applicable Reorganized Debtor whose Estate owed or paid the Claim, notwithstanding state or other escheat or similar laws to the contrary. In such event, such Entity's Claim shall no longer be deemed to be Allowed and such Entity shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such distribution and shall not participate in any further distributions under the Plan with respect to such Claim.

**8.15.5.    Transfer Taxes.** Pursuant to Section 1146 of the Bankruptcy Code, and to the fullest extent permitted by law, no stamp tax, transfer tax or other similar tax shall be imposed or assessed by any taxing authority on account of (i) the issuance, transfer or exchange of any securities issued under the Plan; (ii) the transfer of any assets or property pursuant to the Plan, or (iii) the making or delivery of an instrument of transfer under the Plan.

**8.15.6.    Indenture Trustee Compensation.** The Indenture Trustees shall receive reasonable compensation and reimbursement of actual and necessary expenses pursuant to the Indentures and pursuant to the procedures set forth herein.

**8.15.6.1.** Not later than five (5) days after the Confirmation Date, the Indenture Trustees shall submit to Reorganized Federal-Mogul reasonably detailed statements of the fees and expenses incurred by the Indenture Trustees through such date along with any estimated fees and expenses for services to be rendered after such date in effectuating the distribution of Reorganized Federal-Mogul Class A Common Stock to the Noteholders and the surrender and cancellation of the Notes as contemplated by the Plan (the "Statements").

**8.15.6.2.** Reorganized Federal-Mogul shall pay all undisputed Statements submitted by the Indenture Trustees in Cash on the Effective Date. If Reorganized Federal-Mogul disputes any Statement, Reorganized Federal-Mogul shall notify the applicable Indenture Trustee of the basis for the dispute in writing on or prior to ten (10) days after the Effective Date. Such notice shall also set forth the amount Reorganized Federal-Mogul believes is due and owing, if any, to the applicable Indenture Trustee. If the applicable Indenture Trustee and Reorganized Federal-Mogul thereafter reach an agreement with regard to the disputed Statement, Reorganized Federal-Mogul shall promptly pay the agreed-upon amount to the applicable Indenture Trustee. If the parties are unable to reach an agreement as to any disputed Statement, the applicable Indenture Trustee shall file a request for allowance and payment of an Administrative Expense with the Bankruptcy Court on or before thirty (30) days after the Effective Date (the "Request"). If no Request is filed by such date, the applicable Indenture Trustee shall be deemed to have consented to the amount of fees and expenses agreed to by Reorganized Federal-Mogul. Reorganized Federal-Mogul shall be given notice and an opportunity to respond to any and all Requests. Upon the entry of a Final Order with respect to any Request, Reorganized Federal-Mogul shall pay the applicable Indenture Trustee the amount allowed in such Final Order in Cash.

**8.15.6.3.** Upon payment of the Indenture Trustees' fees and expenses in accordance with the foregoing paragraphs, the charging liens of the Indenture Trustees upon distributions to the Noteholders, if any, will be discharged.

**8.15.7.    Record Ownership Date**.  Only Persons who hold Notes, Convertible Subordinated Debentures or Equity Interests of record as of the Record Date will be entitled to receive distributions payable on account of such Claims or Equity Interests under the Plan.  The Disbursing Agent and any transfer or distribution agent shall be entitled to treat the record holder of a registered security as the sole holder of any Equity Interest evidenced thereby for purposes of all notices, payments or distributions under the Plan.  No notice of any transfer of any such security shall be binding on the Disbursing Agent or any transfer or distribution agent unless such transfer has been properly registered in accordance with the provisions of the governing indenture or agreement at least ten Business Days prior to any Distribution Date.  If there is any dispute regarding the identity of the Entity entitled to receive a distribution in respect of a Claim or Equity Interest under the Plan, no distribution need be made in respect of such Claim or Equity Interest until such dispute has been resolved.

**8.15.8.    Transfer of Claim**.  In the event that the holder of any Claim shall transfer such Claim on or after the Effective Date, it shall immediately advise the Disbursing Agent or the Trust, as the case may be, in writing of such transfer.  The Disbursing Agent or the Trust, as the case may be, shall be entitled to assume that no transfer of any Claim has been made by any holder unless and until written notice of a transfer has been actually received by the Disbursing Agent or the Trust.  Each transferee of any Claim shall take such Claim subject to the provisions of the Plan, and, except as provided in a notice of transfer, the Disbursing Agent or the Trust, as the case may be, shall be entitled to assume conclusively that the transferee named in any notice of transfer shall thereafter be vested with all rights and powers of the transferor of such Claim.  The provisions of this Section 8.15.8 shall not apply to holders or transferees of Bank Claims or Noteholder Claims.

**8.15.9.    Cash Payments**.  Cash payments on account of Allowed Claims of creditors of the U.S. Debtors located in the United States of America shall be paid in U.S. dollars.  Cash payments on account of Allowed Claims of creditors of the U.S. Debtors located outside the United States of America, and cash payments on account of Allowed Claims of the U.K. Debtors, shall be paid under the currency in which the Claim is denominated in the invoice or under the currency in which the Claim is otherwise payable under applicable non-bankruptcy law.

**8.16.  The Administrators, Possible Marketing Procedures with Respect to Certain U.K. Businesses/Assets and Claims Against and Equity Interests in the U.K. Debtors.**

**8.16.1.    Efforts to Reach Agreement with the Administrators.**  The Administrators have not agreed to recommend the Schemes of Arrangement and Voluntary Arrangements that parallel the Plan.  The Plan Proponents, however, are working towards an agreement with the Administrators to recommend parallel Schemes of Arrangement and Voluntary Arrangements.  Alternatively, if such agreement cannot be achieved, the Plan Proponents will work towards an agreement on Consensual Marketing Procedures with the Administrators to retain those U.K. businesses that are valuable to Federal-Mogul Corporation and its customers and to jointly market those U.K. businesses that are not valuable to Federal-Mogul Corporation and its customers (this process is similar to what Federal-Mogul Corporation has been doing for several years now as it integrates the acquisitions that it has accomplished over the last several years).

**8.16.2.    Directions to the Administrators**. In case negotiations with the Administrators to reach an agreement as set forth in Section 8.16.1 above do not result in a consensual resolution, the Plan Proponents are, contemporaneously with soliciting votes on the Plan and conducting such negotiations with the Administrators, implementing the procedures described in Sections 6.6 and 8.1.1 of the Plan so as to be able, if necessary, to direct the Administrators to recommend the parallel Schemes of Arrangement and Voluntary Arrangements or discharge the U.K. administration proceedings.

**8.16.3.    Non-Consensual Marketing Procedures.** If the Plan Proponents are not able to reach agreement with the Administrators either to recommend parallel Schemes of Arrangement and Voluntary Arrangements or on Consensual Marketing Procedures as discussed in Section 8.16.1 above, and if the efforts to direct the Administrators to recommend the parallel Schemes of Arrangement and Voluntary Arrangements or discharge the U.K. administration proceedings as set forth in Section 8.16.2 above are not successful, then Federal-Mogul Corporation shall bid for those U.K. businesses and assets that are valuable to Federal-Mogul Corporation and its customers. Additionally, Federal-Mogul Corporation and any actual or deemed transfer of businesses and/or assets to Federal-Mogul Corporation in connection therewith shall be entitled to the benefits and protections of the Injunctions and other provisions of the Plan, including, without limitation, the injunction pursuant to Section 524(g) of the Bankruptcy Code, and any and all Claims and Demands against Federal-Mogul Corporation and its Affiliates relating to such businesses and assets shall be channeled to the Trust to the extent set forth and in accordance with Article IV of the Plan. Any remaining assets shall be liquidated. If Federal-Mogul Corporation is not the successful bidder, the Injunctions and other protective provisions of the Plan shall not apply to the purchaser of any such assets and Claims and Demands against such purchaser shall not be transferred and channeled to the Trust.

**8.16.4.    Distributions on Account of Claims Against and Equity Interests in U.K. Debtors.** In the event that Federal-Mogul Corporation bids and purchases some or all of the assets or businesses of the U.K. Debtors as provided in Section 8.16.3 above, then Federal-Mogul Corporation shall pay to the relevant U.K. Debtors only that portion of the bid that is to be distributed to holders of Claims against the U.K. Debtors other than holders of Asbestos Personal Injury Claims against the U.K. Debtors. In such event, notwithstanding anything to the contrary in the Plan, the holders of Claims against and Equity Interests in the U.K. Debtors, other than holders of Asbestos Personal Injury Claims, shall receive no distributions under the Plan, but instead shall receive any and all distributions on account of their respective Claims and/or Equity Interests pursuant to the U.K. administration proceedings in accordance with U.K. insolvency laws. Additionally, all of the Reorganized Federal-Mogul Class B Common Stock will, as provided in the Plan, be delivered to the Trust to fund distributions to the holders of Asbestos Personal Injury Claims in accordance with the Plan and the Asbestos Personal Injury Trust Distribution Procedures. If, however, Federal-Mogul Corporation is required to pay the full amount of its bid to the relevant U.K. Debtors, then all distributions to be paid to the holders of Asbestos Personal Injury Claims in, or arising out of, the U.K. administration proceedings shall be paid to the Trust and the Trust shall remit all such recoveries (other than insurance recoveries) to Federal-Mogul Corporation or Reorganized Federal-Mogul, as applicable. Any other distributions which are available to be paid to the holders of Asbestos Personal Injury Claims in, or arising out of, the U.K. administration proceedings shall also be paid to the Trust and the Trust shall also remit all such recoveries

(other than insurance recoveries) to Federal-Mogul Corporation or Reorganized Federal-Mogul, as applicable. Neither the Hercules Policy Expiry Date nor the EL Coverage Expiry Date shall occur until all such distributions have been made. Additionally, notwithstanding anything to the contrary in this Plan, in the event the non-consensual marketing procedures set forth in this Section 8.16 of the Plan are implemented and Federal-Mogul Corporation is required to pay the full amount of any bid in connection therewith, neither the issuance of the Reorganized Federal-Mogul Class B Common Stock to the Trust nor any distributions made by the Trust to holders of Asbestos Personal Injury Claims against the U.K. Debtors shall relieve or otherwise limit the obligations of the U.K. Debtors on account of such Claims in the U.K. administration proceedings or any subsequent insolvency proceedings under applicable U.K. law.

        **8.16.5.    Affiliate Claims Against the U.K. Debtors.** If the Plan Proponents do not reach an agreement with the Administrators as set forth in 8.16.1 above and the procedures set forth in Sections 6.6 and 8.1.1 of the Plan do not result in approval of the Schemes of Arrangement and/or Voluntary Arrangements for the U.K. Debtors, then the U.S. Debtors shall assert any and all Affiliate Claims against the U.K. Debtors, including, without limitation, claims for reimbursement, indemnification and/or contribution with respect to Asbestos Personal Injury Claims, in the U.K. administration proceedings.

        **8.17. <u>Distributions to Holders of Unsecured Claims Against U.S. Debtors and F-M UK Holding Limited.</u>** In the event that the total amount of Allowed Unsecured Claims against the U.S. Debtors and FM U-K Holding Limited is determined by the Plan Proponents or by the Reorganized Debtors, as applicable, to be in excess of $258.0 million, then the amount of the Cash distributions to holders of Allowed Unsecured Claims against such Debtors will be adjusted so that each such holder will receive, on account of its Allowed Unsecured Claim, total Cash payments equal to such holder's Pro Rata portion of $90.3 million. In the event the Claims allowance and reconciliation process for Unsecured Claims against the U.S. Debtors and F-M UK Holding Limited is not completed on or prior to the second anniversary of the Distribution Date, then Reorganized Federal-Mogul shall make a determination as to whether it is likely that such Claims will exceed $258.0 million. If it is determined that such Claims will exceed $258.0 million, then Reorganized Federal-Mogul shall adjust all remaining payments to be made on account of such Claims so that the holders of such Claims will receive a Pro Rata portion of $90.3 million and Reorganized Federal-Mogul shall take any and all necessary steps to facilitate the distributions in accordance with this Section 8.17 including, without limitation, setting reasonable reserves, if necessary, and withholding portions of any distributions pending the completion of the Claims allowance and reconciliation process for the applicable Debtors.

        **8.18. <u>Implementation of Federal-Mogul Bradford Limited Plan.</u>** The Plan, as it relates to Federal-Mogul Bradford Limited ("Bradford"), will be implemented in part pursuant to an agreement dated as of December 17, 2003, by and among T&N Limited, Bradford, the T&N Administrators, the Bradford Administrators, Federal-Mogul Gorzyce, S.A. ("F-M Gorzyce") and Federal-Mogul Holding Deutschland GmbH, which agreement provides for (i) the lease of certain of Bradford's plant, tooling and machinery and (ii) the license of certain of Bradford's know-how utilized in its piston-manufacturing operations to F-M Gorzyce, a non-Debtor Affiliate of the Debtors located in Poland. That agreement further provides for the sale of such leased and licensed assets, together with Bradford's customer goodwill, to F-M Gorzyce pursuant to a purchase option to be exercised by F-M Gorzyce through the Plan, pursuant to

Section 524(g)(3)(A)(ii) of the Bankruptcy Code. Accordingly, the Confirmation Order shall provide that F-M Gorzyce shall exercise the purchase option described in this paragraph as part of the implementation of the Plan and that pursuant to Section 524(g)(3)(A)(ii) of the Bankruptcy Code F-M Gorzyce shall have no liability with respect to any Asbestos Personal Injury Claim or Demand that may be made against it by reason of its status as the transferee of and/or successor to the assets of Bradford.

**8.19. Objections to Claims.** After the Effective Date, only the applicable Reorganized Debtor against whose Estate a Claim was filed or deemed filed, or the Trust in the case of Asbestos Personal Injury Claims, may object to the allowance of any Claim, except that the Unsecured Creditors Committee, the Asbestos Claimants Committee and the Future Claimants Representative shall also have standing and capacity to object to (i) the Administrative Expense Claims of professionals employed or retained in these Reorganization Cases and (ii) the Secured or unsecured Surety Claims. After the Effective Date, the applicable Reorganized Debtor against whose Estate a Claim was filed or deemed filed, or the Trust in the case of Asbestos Personal Injury Claims, shall be accorded the power and authority to allow or settle and compromise any Claim, except for the Administrative Expense Claims of professionals employed by or on behalf of the Estates, without notice to any other party or approval of or notice to the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, and except as to any (a) late-filed Claims, or (b) Asbestos Personal Injury Claims, all objections to Claims against the U.S. Debtors shall be filed with the Bankruptcy Court on or before six months following the Effective Date. Objections to late-filed Claims against the U.S. Debtors shall be filed not later than the later of (a) six months following the Effective Date or (b) sixty (60) days after the Reorganized Debtor receives actual notice of the filing of such Claim. Objections to Asbestos Personal Injury Claims shall be handled by the Trust in accordance with the Asbestos Personal Injury Trust Distribution Procedures.

**8.20. Release by Dan=Loc Group.** On the Effective Date, each of the Dan=Loc Deed of Special Indemnity and the Dan=Loc Deed of Guarantee shall be deemed terminated by agreement and the Dan=Loc Group shall release any and all Claims, obligations and liabilities (including, but not limited to, Environmental Claims) whatsoever against any and all of the Debtors, their non-Debtor Affiliates and the Released Parties (i) under the Deed of Special Indemnity, (ii) under the Deed of Guarantee (iii) or otherwise, except that Asbestos Property Damage Claims against the Debtors that the Dan=Loc Group had under the Dan=Loc Deed of Special Indemnity and Dan=Loc Deed of Guarantee as of the Petition Date shall, to the extent that any such Claims are Allowed, be treated as Unsecured Claims under the Plan. In addition to releasing any Environmental Claims against the Debtors, Dan=Loc is also waiving and releasing any and all claims against four non-Debtor Affiliates that are parties to the 1997 Dan=Loc Asset Purchase Agreement.

## ARTICLE IX
## INJUNCTIONS, RELEASES AND DISCHARGE

### 9.1. Discharge

#### 9.1.1. Discharge of Claims and Termination of Interests

(a)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, the distributions and rights afforded under this Plan and the treatment of Claims and Interests under this Plan shall be in exchange for, and in complete satisfaction, discharge and release of, all Claims and satisfaction and termination of all Interests, including any interest accrued on Claims from and after the Petition Date.  Accordingly, except as otherwise provided in the Plan or the Confirmation Order, Confirmation of the Plan shall, as of the Effective Date (i) discharge the Debtors from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g) or 502(i) of the Bankruptcy Code, whether or not (x) a proof of claim based on such debt is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code, (y) a Claim based on such debt is Allowed pursuant to Section 502 of the Bankruptcy Code, or (z) the holder of a Claim based on such debt has accepted the Plan; and (ii) satisfy, terminate or cancel all Interests and other rights of equity security holders in the Debtors.

(b)     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors, or their respective successors or property, any other or further Claims, Demands, debts, rights, causes of action, liabilities or equity interests based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims and other debts and liabilities of the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors at any time, to the extent such judgment is related to a discharged Claim.

#### 9.1.2. Discharge Injunction

(a)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that hold, have held, or may hold a Claim, Demand or other debt or liability that is discharged, or an Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims, debts or liabilities, or terminated Interests or rights: (i) commencing or continuing any action or other proceeding against the Debtors, the Reorganized Debtors, the Trust or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Debtors, the Reorganized Debtors, the Trust or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtors, the Reorganized Debtors, the Trust or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Debtors, the Reorganized

Debtors, the Trust or their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

(b)     Except as provided in the Plan or the Confirmation Order, as of the Effective Date all Persons that hold, have held, or may hold a Claim, Demand, or other debt, right, cause of action or liability that is released pursuant to the provisions of the Plan are permanently enjoined from taking any of the following actions on account of or based upon such released Claims, Demands, debts, rights, causes of action or liabilities: (i) commencing or continuing any action or other proceeding against the Released Parties or their respective property; (ii) enforcing, attaching, collecting or recovering any judgment, award, decree or order against the Released Parties or their respective property; (iii) creating, perfecting or enforcing any lien or encumbrance against the Released Parties or their respective property; (iv) asserting any setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due the Released Parties or against their respective property; and (v) commencing or continuing any judicial or administrative proceeding, in any forum, that does not comply with or is inconsistent with the provisions of the Plan.

## 9.2.  Releases

### 9.2.1.    Releases by Debtors and Estates. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date the Reorganized Debtors on their own behalf and as representatives of their respective estates, release unconditionally, and are hereby deemed to release unconditionally, each and all of (i) the Debtors' and their non-Debtor Affiliates' officers and directors who were serving in such capacity on or after the Petition Date, (ii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors (but specifically excluding Rothschild Inc.), (iii) the holders of Noteholder Claims, the holders of Bank Claims, and the Administrative Agent and their respective attorneys, accountants, investment bankers and advisers of and from any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with the Debtors or any of them, or their respective property. The releases contained in this Section shall not apply to or otherwise affect the obligations of any of Debtors' officers or directors to repay loans or advances of money or other property owed to the Debtors or their Estates.

### 9.2.2.    Releases by Holders of Claims and Interests. Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date each holder of a Claim or Interest that has voted to accept the Plan, shall be deemed to have unconditionally released each and all of (i) the non-Debtor Affiliates, (ii) the Debtors' and their non-Debtor Affiliates' officers and directors who were serving in such capacity on or after the Petition Date, (iii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors (but specifically excluding Rothschild Inc.) and (iv) the holders of Noteholder Claims, the holders of Bank Claims and the Administrative Agent and their respective successors, attorneys, accountants, investment bankers and advisers of and from any

and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, omission, transaction, event or other occurrence taking place before the Petition Date in connection with the Debtors or any of them, or their respective property; provided, however, that each holder of a Claim or Interest that has voted on the Plan may elect, by checking the appropriate box on its Ballot, not to grant the releases set forth in this Section 9.2.2.

**9.3.** *The Supplemental Injunction, The Third Party Injunction and The Asbestos Insurance Entity Injunction. In order to supplement the injunctive effect of the Discharge Injunction, and pursuant to Sections 524(g) and 105(a) of the Bankruptcy Code, the Confirmation Order shall provide for the following injunctions to take effect as of the Effective Date.*

**9.3.1.** *Supplemental Injunction*

*(a) Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan, and to supplement, where necessary, the injunctive effect of the discharge as provided in Sections 1141 and 524 of the Bankruptcy Code and as described in this Article, and further pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Sections 524(g) and 105(a) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Personal Injury Claim, or any claim or demand for or respecting any Trust Expense) against the Released Parties (or any of them) based upon, attributable to, or arising out of any Claim, Demand, or Equity Interest, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty, shall be permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such claim, demand or cause of action, including, but not limited to:*

*(i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim, demand or cause of action against any of the Released Parties, or against the property of any Released Party;*

*(ii) enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or against the property of any Released Party with respect to any such claim, demand or cause of action;*

*(iii) creating, perfecting or enforcing any Lien of any kind against any Released Party or the property of any Released Party with respect to any such claim, demand or cause of action;*

(iv)    *except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due any Released Party or against the property of any Released Party with respect to any such claim, demand or cause of action; and*

(v)    *taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents relating to such claim, demand or cause of action.*

*(b)    Reservations. Notwithstanding anything to the contrary in Section 9.3.1(a), this Supplemental Injunction shall not apply to or otherwise affect the assertion against the Released Parties of any claim, demand or cause of action that is not released pursuant to the provisions of Sections 9.2.1 or 9.2.2 of this Plan, and shall further not impair:*

(i)    *the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against the Trust or the Trust Assets in accordance with the Asbestos Personal Injury Trust Distribution Procedures;*

(ii)    *the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against Hercules-Protected Entities in accordance with Article IV of the Plan;*

(iii)    *the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust or the Trust Assets;*

(iv)    *the rights of the Trust or the Reorganized Debtors to prosecute any Asbestos Insurance Action or any similar claim, cause of action or right of Reorganized T&N against the Hercules Insurers or of the Trust against the EL Insurers; or*

(v)    *the rights of any Entity to assert an Asbestos Personal Injury Claim against a non-Debtor Affiliate where such Claim is based upon exposure to asbestos or asbestos-containing products resulting solely from the acts, conduct or omissions of such non-Debtor Affiliate.*

*(c)    Bankruptcy Rule 3016 Compliance. The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.*

9.3.2.    *Third Party Injunction*

*(a)    Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan and agreements previously or concurrently approved by the Bankruptcy Court, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Sections 524(g) and 105(a) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert or which may in the future hold or assert any claim, demand or cause of action (including, but not limited to, any Asbestos Personal*

*Injury Claim or Demand, or any claim or demand for or respecting any Trust Expense) against the Protected Parties (or any of them) based upon, attributable to, or arising out of any Asbestos Personal Injury Claim or Demand, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty or any other theory of law, equity or admiralty (a "Third Party Claim"), shall be permanently stayed, restrained and enjoined, from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments or recovery with respect to any such Third Party Claim, including, but not limited to:*

(i)     *commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Third Party Claim against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

(ii)     *enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim;*

(iii)     *creating, perfecting or enforcing any Lien of any kind against any Protected Party or the property of any Protected Party on the basis of such Third Party Claim;*

(iv)     *commencing any action or other proceeding of any kind or enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order, with respect to a Third Party Claim against a Protected Party that pursuant to the Plan or after the Effective Date makes a loan to any of the Released Parties, or challenging, upsetting or impairing any Lien granted in connection with such loan by reason of any such Third Party Claim;*

(v)     *except as otherwise provided in the Plan, asserting, implementing or effectuating any setoff, right of subrogation or contribution or recoupment of any kind against any obligation due any Protected Party or against the property of any Protected Party with respect to any such Third Party Claim; and*

(vi)     *taking any act relating to such Third Party Claim in any manner, and in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, the Plan Documents or the Trust Documents.*

(b)     *Reservations.  Notwithstanding anything to the contrary in Section 9.3.2(a) above, this Third Party Injunction shall not impair:*

(i)     *the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against the Trust or the Trust Assets in accordance with the Asbestos Personal Injury Trust Distribution Procedures;*

(ii)     *the rights of holders of Asbestos Personal Injury Claims to assert such Asbestos Personal Injury Claims solely against Hercules-Protected Entities in accordance with Article IV of the Plan;*

(iii)    *the rights of Entities to assert any Claim, debt, obligation or liability for payment of Trust Expenses solely against the Trust or the Trust Assets;*

(iv)    *the rights of the Trust or the Reorganized Debtors to prosecute any Asbestos Insurance Action or any similar claim, cause of action or right of Reorganized T&N against the Hercules Insurers or of the Trust against the EL Insurers; or*

(v)    *the rights of any Entity to assert an Asbestos Personal Injury Claim against a non-Debtor Affiliate where such Claim is based upon exposure to asbestos or asbestos-containing products resulting solely from the acts, conduct or omissions of such non-Debtor Affiliate.*

(c)    *Bankruptcy Rule 3016 Compliance. The Plan Proponents' compliance with the formal requirements of Bankruptcy Rule 3016(c) shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.*

### 9.3.3.    *Asbestos Insurance Entity Injunction*

(a)    *Purpose. In order to protect the Trust and to preserve the Trust Assets, pursuant to the equitable jurisdiction and power of the Bankruptcy Court under Section 105(a) of the Bankruptcy Code, the Bankruptcy Court shall issue the Asbestos Insurance Entity Injunction; provided, however, that (i) the Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Company upon express written notice to such Asbestos Insurance Company; and (ii) the Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Company, and no Asbestos Insurance Company is a third-party beneficiary of the Asbestos Insurance Entity Injunction.*

(b)    *Terms. Subject to the provisions of 9.3.3.(a) of this Plan, all Entities (excluding, however, the Trust, the Asbestos Insurance Companies and the Reorganized Debtors to the extent they are permitted or required to pursue claims relating to the Hercules Policy, any EL Policy, any Asbestos Insurance Actions and/or the Asbestos Insurance Action Recoveries) that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, Demand or cause of action (including any Asbestos Personal Injury Claim or Demand or any Claim or Demand for or respecting any Trust Expense) against any Asbestos Insurance Company based upon, attributable to, arising out of, or in any way connected with any such Asbestos Personal Injury Claim or Demand, whenever and wherever arising or asserted, whether in the U.S., the U.K. or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, Demand, or cause of action including, without limitation:*

(i)    *commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial,*

*arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, Demand, or cause of action against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such Claim, Demand, or cause of action;*

(ii)     *enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such Claim, Demand, or cause of action;*

(iii)     *creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Asbestos Insurance Company, or the property of any Asbestos Insurance Company, with respect to any such Claim, Demand, or cause of action; and*

(iv)     *except as otherwise specifically provided in this Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Asbestos Insurance Company, or against the property of any Asbestos Insurance Company, with respect to any such Claim, Demand or cause of action;*

*provided, however, that (a) the Asbestos Insurance Entity Injunction shall not impair in any way any actions brought by the Trust and/or the Reorganized Debtors against any Asbestos Insurance Company; (b) the Trust shall have the sole and exclusive authority at any time to terminate, or reduce or limit the scope of, the Asbestos Insurance Entity Injunction with respect to any Asbestos Insurance Company upon express written notice to such Asbestos Insurance Company; and (c) the Asbestos Insurance Entity Injunction is not issued for the benefit of any Asbestos Insurance Company, and no Asbestos Insurance Company is a third-party beneficiary of the Asbestos Insurance Entity Injunction.*

(c)     *Reservations.  Notwithstanding anything to the contrary above, this Asbestos Insurance Entity Injunction shall not enjoin:*

(i)     *the rights of Entities to the treatment accorded them under this Plan, as applicable, including the rights of holders of Asbestos Personal Injury Claims to assert such Claims, as applicable, in accordance with the Asbestos Personal Injury Trust Distribution Procedures;*

(ii)     *the rights of Entities to assert any claim, debt, obligation, cause of action or liability for payment of Trust Expenses against the Trust;*

(iii)     *the rights of the Trust, and the Reorganized Debtors (to the extent permitted or required under this Plan) to prosecute any action based on or arising from the Asbestos Insurance Policies; and*

(iv)    *the rights of the Trust, and the Reorganized Debtors to assert any claim, debt, obligation, cause of action or liability for payment against an Asbestos Insurance Company based on or arising from the Asbestos Insurance Policies.*

**9.4.**    **Reservation Of Rights**.  Notwithstanding any other provision of the Plan to the contrary, the satisfaction, release and discharge and the Injunctions set forth in this Article IX, shall not be deemed or construed to satisfy, discharge, release or enjoin claims by the Trust, the Reorganized Debtors, or (subject to Article IV) any other Entity, as the case may be, against (a) the Trust for payment of Allowed Asbestos Personal Injury Claims in accordance with the Asbestos Personal Injury Trust Distribution Procedures, (b) the Trust for the payment of Trust Expenses, (c) any Asbestos Insurance Company that has not performed under an Asbestos Insurance Policy or an Asbestos Insurance Settlement Agreement, (d) the Hercules Insurers under the Hercules Policy or any settlement agreement with the Hercules Insurers relating to any Asbestos Personal Injury Claim, (e) the EL Insurers under any EL Policy or any settlement agreement with the EL Insurers relating to any Asbestos Personal Injury Claim, or (f) the issuer of a Supersedeas Bond or other assurance of payment with respect to an Allowed Bonded Asbestos Claim that has not performed thereunder.

**9.5.**    **Disallowed Claims And Disallowed Equity Interests**.  On and after the Effective Date, the Debtors and the Reorganized Debtors shall be fully and finally discharged of any and all liability or obligation on a disallowed Claim or a disallowed Equity Interest, and any Order disallowing a Claim or an Equity Interest which is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such Order pursuant to Section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date.  The Confirmation Order, except as otherwise provided herein, shall constitute an Order: (a) in relation to each U.S. Debtor, disallowing all Claims (other than Asbestos Personal Injury Claims) and Equity Interests to the extent such Claims and Equity Interests are not allowable under any provision of Section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims and Equity Interests, and Claims for unmatured interest and (b) in relation to each U.S. Debtor, disallowing or subordinating to all other Claims, as the case may be, any Claims for penalties, punitive damages or any other damages not constituting compensatory damages.

**9.6.**    **Exculpation**.  None of the Debtors, the Reorganized Debtors, the members of the Unsecured Creditors Committee, the members of the Asbestos Claimants Committee, the Future Claimants Representative, the members of the Equity Committee, the Collateral Trustee, the holders of Noteholder Claims, the holders of Bank Claims, the Administrative Agent nor any of their respective successors, officers, directors, employees, members, agents, attorneys, accountants, investment bankers, financial advisors or restructuring professionals, nor any other professional Person employed by any of them, shall have or incur any liability to any Person or Entity for any act or omission in connection with, relating to, or arising out of the Reorganization Cases, the administration proceedings of the U.K. Debtors, the negotiation of the Plan, the Schemes of Arrangement or the Voluntary Arrangements, pursuit of confirmation of the Plan, sanction of the Schemes of Arrangement and/or approval of the Voluntary Arrangements, the administration, consummation and implementation of the Plan or Schemes of Arrangement and/or the Voluntary Arrangements or the property to be distributed under the Plan or the Schemes and/or the Voluntary Arrangements, the Disclosure Statement, the Plan Documents, the

releases and Injunctions, or the management or operation of the Debtors (except for any liability that results primarily from such Person's or Entity's bad faith or willful misconduct); provided, however, that (i) with respect to officers and directors of the Debtors, this exculpation provision shall apply only to officers or directors who were serving in such capacity on or after the Petition Date and (ii) this exculpation provision shall not apply to Rothschild Inc. In all respects each and all of such Persons, firms and Entities shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Reorganization Cases, the Plan, the Schemes of Arrangement, the Voluntary Arrangements, the administration proceedings of the U.K. Debtors, and the administration of each of them.

# ARTICLE X
# MATTERS INCIDENT TO PLAN CONFIRMATION

**10.1. No Liability For Tax Claims**. Unless a taxing authority in the United States has asserted a Claim against the Debtors prior to the bar date established therefor, no Claim of such authority shall be Allowed against the Debtors or the Reorganized Debtors for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any of the Debtors, or the non-Debtor Affiliates, or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**10.2. No Successor Liability**. Except as otherwise expressly provided in the Plan, Reorganized Federal-Mogul and the other Reorganized Debtors do not, pursuant to the Plan or otherwise, assume, agree to perform, pay or indemnify any Entity, or otherwise have any responsibility for any liabilities or obligations of the Debtors relating to or arising out of the operations of or assets of the Debtors, whether arising prior to, on or after the Effective Date. Except as provided in Article IV of the Plan, neither the Plan Proponents, Reorganized Federal-Mogul, the other Reorganized Debtors nor the Trust is, or shall be deemed to be, a successor to any of the Debtors by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character; provided, however, Reorganized Federal-Mogul, the other Reorganized Debtors and the Trust shall assume and remain liable for their respective obligations specified in the Plan and the Confirmation Order.

**10.3. Asbestos Insurance Actions**. Any Asbestos Insurance Action, or the claims and causes of action asserted or to be asserted therein, shall be preserved for the benefit of the Trust, for prosecution either by Reorganized Federal-Mogul, the other applicable Reorganized Debtors, or the Trustees (as mutually agreed by such parties) subsequent to Confirmation of the Plan and in accordance with the Trust Agreement. As of the date subsequent to the Effective Date on which the Trustees confirm in writing to the Reorganized Debtors that the Trust is in a position to assume such responsibility, such actions, along with the rights and obligations of the Debtors and the Reorganized Debtors with respect to Asbestos Insurance Policies and claims thereunder, to the extent that such Policies and claims relate to Asbestos Personal Injury Claims but not as to any other claims covered thereby and subject to the assignability without prejudice of such claims and Policies, shall be assigned to and vested in the Trust as the representative of the Debtors' Estates, each being appointed by the Bankruptcy Court in accordance with Section 1123(b)(3) of the Bankruptcy Code without any further action by the Debtors or Reorganized Debtors, the Trust or the Bankruptcy Court. Such Asbestos Insurance Actions shall be so vested

free and clear of all Liens, security interests and other Claims or causes of action, except as otherwise provided in the Plan. Until such time as the Asbestos Insurance Actions have become vested in the Trust, Reorganized Federal-Mogul and the other Reorganized Debtors, as the case may be, shall be entitled to compromise or settle any Asbestos Insurance Action; provided, however, that any such compromise or settlement shall require the consent of the Future Claimants Representative and the Asbestos Claimants Committee or the Trust Advisory Committee, as applicable, and the approval of the Bankruptcy Court. Upon vesting in the Trust, the Asbestos Insurance Actions shall be governed by the Trust Documents. Notwithstanding anything to the contrary contained herein, the Trust shall not compromise or resolve insurance coverage under any Asbestos Insurance Policy except with respect to Asbestos Personal Injury Claims and Trust Expenses.

### 10.4. Supersedeas Bond Actions

**10.4.1.    Preserved Actions.** All Supersedeas Bond Actions and the rights and claims asserted or to be asserted therein, shall be preserved and shall be prosecuted or defended, as the case may be, by the Reorganized Debtors subsequent to Confirmation of the Plan.

**10.4.2.    Assumption By The Trust.** As of the Effective Date, the Trust shall assume, and shall have exclusive liability for, any unsecured portion of Bonded Asbestos Personal Injury Claims remaining after crediting any Supersedeas Bond proceeds or other payment assurances to which the holder of such Claim is determined by Final Order or agreement of the parties, to be entitled. To the extent that the Reorganized Debtors successfully prosecute or defend against a Supersedeas Bond Action resulting in the discharge or release of the Supersedeas Bond or other payment assurance provided in connection therewith, any such recoveries shall inure to the benefit of the Reorganized Debtors.

**10.4.3.    Reservation of Rights of Issuers and Insurers of Payment Assurances.** Notwithstanding anything to the contrary contained herein, nothing in the Plan shall be deemed to impair, prejudice, compromise or otherwise affect any defense or counterclaim asserted by any issuer or insurer of payment assurances issued on behalf of the Debtors, or any other defendant in the Supersedeas Bond Actions, to any claim of the Debtors, including, but not limited to, any defense based upon an asserted right of setoff or recoupment, or other defense under applicable non-bankruptcy law. Any right of setoff or recoupment shall be satisfied out of the assets in the possession of the Bond Sureties/Insurers and any claims or liabilities including, but not limited to, claims for premiums for bonds provided by any such issuers or insurers.

**10.4.4.    Compromising and Settling.** Reorganized Federal-Mogul and the other Reorganized Debtors shall be entitled to compromise or settle any Supersedeas Bond Actions; provided, however, that any such compromise or settlement shall require the consent of the Future Claimants Representative and the Asbestos Claimants Committee, to the extent the compromise or settlement results in there being any unsecured portion of the Bonded Asbestos Personal Injury Claim after applying any Supersedeas Bond proceeds or other payment assurances.

**10.5. Institution And Maintenance Of Legal And Other Proceedings**. As of the date subsequent to the Effective Date on which the Trustees confirm in writing to the Reorganized Debtors that the Trust is in a position to assume the responsibility, the Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any asset, liability or responsibility of the Trust, including Asbestos Insurance Actions, Indirect Asbestos Personal Injury Claims, or other Trust Causes of Action. The Trust shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of Federal-Mogul Corporation, any other Debtor or any Reorganized Debtor if deemed necessary or appropriate by the Trust. The Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the Effective Date arising from or associated with any legal action or other proceeding which is the subject of this Section 10.5 and shall pay or reimburse all deductibles, retrospective premium adjustments or other charges (not constituting Indirect Asbestos Personal Injury Claims) which may arise from the receipt of any insurance proceeds by the Trust.

**10.6. Retention And Enforcement Of Trust Causes Of Action**. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, except as otherwise provided in the Plan, the Trust shall retain and have the exclusive right to enforce against any Entity any and all of the Trust Causes of Action, with the proceeds of the recoveries of any such actions to be deposited in the Trust; provided, however, that nothing herein shall alter, amend or modify the Injunctions, Releases, discharges or Supersedeas Bond Action provisions contained elsewhere in the Plan.

**10.7. Preservation Of Insurance Claims**. The discharge and release of the Debtors, Reorganized Debtors and the Released Parties from all Claims, and the injunctive protection provided to the Debtors, Reorganized Debtors, Released Parties and Protected Parties with respect to Demands as provided herein shall neither diminish nor impair the enforceability of any of the Asbestos Insurance Policies. Except as provided in Article IV of the Plan, the Trust shall be deemed to be the successor to the applicable Debtors with respect to all Asbestos Personal Injury Claims and the indemnitee under any Asbestos Insurance Policy to the extent there is no prejudice to coverage under such Asbestos Insurance Policies. The opportunity to participate in the resolution and defense of such Claim shall be in all respects subject to the Asbestos Personal Injury Trust Distribution Procedures provided for in the Trust Agreement and limited to contentions that the Claim should not be Allowed or should be Allowed in a lesser amount under such procedures. Except as provided in Article IV of the Plan, an Allowed Asbestos Personal Injury Claim shall be, and shall be deemed to be, a judgment against the Trust (as successor for all purposes to the liabilities of the applicable Debtors in respect of Asbestos Personal Injury Claims) in the Allowed Amount of such Claim for purposes of determining the liability of any insurer or indemnitor in respect of such Allowed Asbestos Personal Injury Claim.

### ARTICLE XI
### MISCELLANEOUS

**11.1. Jurisdiction**. Until the Reorganization Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction that is permissible, including the jurisdiction necessary to ensure that the purposes and intent of the Plan are carried out. Except as otherwise provided in the Plan or the Trust Documents, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Equity Interests in the Debtors, and to

adjudicate and enforce the Asbestos Insurance Actions, the Supersedeas Bond Actions, and all other causes of action which may exist on behalf of the Debtors. Nothing contained herein shall prevent the Reorganized Debtors or the Trust from taking such action as may be necessary in the enforcement of any Asbestos Insurance Action, Supersedeas Bond Action or other cause of action which the Debtors have or may have and which may not have been enforced or prosecuted by the Debtors, which actions or other causes of action shall survive Confirmation of the Plan and shall not be affected thereby except as specifically provided herein. Nothing contained herein shall prejudice or affect the sole and exclusive jurisdiction and power of the U.K. Court in relation to the conduct of the administration of any U.K. Debtor under the laws of the relevant part of the United Kingdom and in relation to any Scheme of Arrangement or Voluntary Arrangement affecting any of the U.K. Debtors.

**11.2. General Retention**. Following Confirmation of the Plan, the administration of the Reorganization Cases will continue until the Reorganization Cases are closed by an Order of the Bankruptcy Court. The Bankruptcy Court shall also retain jurisdiction for the purpose of classification of any Claims and the re-examination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed with the Bankruptcy Court with respect to any Claims. The failure by the Plan Proponents to object to, or examine, any Claim for the purposes of voting, shall not be deemed a waiver of the rights of the Debtors, the Reorganized Debtors or the Trust, as the case may be, to object to or re-examine such Claim in whole or part.

**11.3. Specific Purposes**. In addition to the foregoing, the Bankruptcy Court shall retain jurisdiction for each of the following specific purposes after Confirmation of the Plan, which, in the case of the U.K. Debtors, shall be exercised subject to the concurrent jurisdiction of the U.K. Court:

**11.3.1.**    to modify the Plan after Confirmation, pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and, in the case of any U.K. Debtor, subject to corresponding modification, if necessary, of such Debtor's Scheme of Arrangement and/or Voluntary Arrangement, as applicable, in accordance with applicable law;

**11.3.2.**    to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Plan, the Trust Documents or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

**11.3.3.**    to assure the performance by the Disbursing Agent and the Trust of their respective obligations to make distributions under the Plan;

**11.3.4.**    to enforce and interpret the terms and conditions of the Plan, the Plan Documents, and the Trust Documents; to enter such orders or judgments, including, but not limited to, injunctions (i) as are necessary to enforce the title, rights and powers of the Reorganized Debtors and the Trust, and (ii) as are necessary to enable holders of Claims to

pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise, including, but not limited to, Court Orders;

**11.3.5.**    to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters, including without limitation contested matters involving the deduction of interest accrued after the Petition Date on Noteholder Claims, with respect to the Debtors, the Reorganized Debtors or the Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan, or relating to the period of administration of the Reorganization Cases;

**11.3.6.**    to hear and determine all applications for compensation of professionals and reimbursement of expenses under Sections 330, 331 or 503(b) of the Bankruptcy Code;

**11.3.7.**    to hear and determine any causes of action arising during the period from the Petition Date through the Effective Date, or in any way related to the Plan or the transactions contemplated hereby, against the Debtors, the Reorganized Debtors, the Plan Proponents, the Trust, the Trustees, the Official Committees or the Future Claimants Representative and their respective officers, directors, stockholders, employees, members, attorneys, accountants, financial advisors, representatives and agents;

**11.3.8.**    to determine any and all motions pending as of Confirmation for the rejection, assumption or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

**11.3.9.**    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**11.3.10.**    to determine the allowance and/or disallowance of any Claims against or Equity Interests in the Debtors or their Estates, including, without limitation, any objections to any such Claims and/or Equity Interests, and the compromise and settlement of any Claim against or Equity Interest in the Debtors or their Estates including, without limitation, any compromise or settlement of the Avoidance Litigation and the Valuation Proceedings;

**11.3.11.**    to determine all questions and disputes regarding title to the assets of the Debtors or their Estates or the Trust;

**11.3.12.**    to construe, enforce and resolve all questions and disputes relating to collective bargaining or employment agreements existing or approved by the Bankruptcy Court at or before Confirmation.

**11.3.13.**    to hear and determine the Asbestos Insurance Actions, any similar claims, causes of action or rights of Reorganized T&N against the Hercules Insurers or rights of the Trust against the EL Insurers and the Supersedeas Bond Actions, to construe and take any action to enforce any Asbestos Insurance Settlement Agreement or any settlement with the Hercules Insurers or the EL Insurers or of any Supersedeas Bond Action and the releases executed and exchanged in connection therewith, and to issue such orders as may be necessary for the execution, consummation and implementation of any Asbestos Insurance Settlement

Agreement or settlement of any Supersedeas Bond Action, and to determine all questions and issues arising thereunder;

      **11.3.14.** to hear and determine any matters related to the Trust's indemnification obligations under Article IV of the Plan and the Trust Documents;

      **11.3.15.** to hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in these Reorganization Cases; and

      **11.3.16.** to enter in aid of implementation of the Plan such orders as are necessary, including but not limited to the implementation and enforcement of the Releases, the Injunctions and the other injunctions described herein.

      **11.4. Interpretation of Certain Terms**. When used in the Plan, the term "Claim" shall be broadly construed to include all manner and types of claim, whenever and wherever such claim may arise, anywhere in the world, and shall include, but not be limited to, Asbestos Personal Injury Claims. Likewise, when used in the Plan, the terms "Asbestos Personal Injury Claim" and "Asbestos Property Damage Claim" shall be broadly construed and shall include, but not be limited to, claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code, and "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

      **11.5. The Official Committees And The Future Claimants Representative**. Except as set forth below, the Official Committees and the Future Claimants Representative shall continue in existence until the Effective Date; the Administrators of the U.K. Debtors shall continue in office until orders are made by the U.K. Court discharging the Administration orders. The Debtors shall pay the reasonable fees and expenses incurred by the Official Committees and the Future Claimants Representative through the Effective Date, in accordance with the fee and expense procedures promulgated during the Reorganization Cases (but only to the extent such fees and expenses are not Trust Expenses, in which case those portions of such fees and expenses shall be paid as Trust Expenses in accordance with the Trust Agreement, with the remainder to be paid by the Debtors). After the Effective Date, the rights, duties and responsibilities of the Future Claimants Representative shall be as set forth in the Trust Agreement. On the Effective Date, the Official Committees shall be dissolved (except that the Unsecured Creditors Committee, the Asbestos Claimants Committee and the Future Claimants Representative shall continue in existence and have standing and capacity to (i) prosecute the Avoidance Litigation or otherwise object to the Surety Claims and/or seek to avoid and recover some portion or all of the security for the Surety Claims; (ii) commence and prosecute the Valuation Proceedings; (iii) prosecute their pre-Effective Date intervention in any other adversary proceedings; (iv) object to any proposed modification of the Plan; (v) object to or defend the Administrative Expense Claims of professionals employed by or on behalf of the Estates; (vi) participate in any appeals of the Confirmation Order; (vii) participate as a party in interest in any proceeding involving Section 524(g) of the Bankruptcy Code and (viii) participate as a party in interest in any proceeding relating to the Trust) and the members thereof released and discharged of and from all further authority, duties, responsibilities, liabilities and obligations related to, or arising from, the Reorganization Cases. The Administrators of the U.K. Debtors shall be discharged by

order of the U.K. Court as soon as reasonably practicable after the Effective Date. The Reorganized Debtors shall pay the reasonable fees and expenses incurred by the Unsecured Creditors Committee, the Asbestos Claimants Committee and the Future Claimants Representative relating to any post-Effective Date activities authorized hereunder. Nothing in this Section 11.5 shall purport to limit or otherwise affect the rights of the United States Trustee under Section 502 of the Bankruptcy Code or otherwise to object to Claims or requests for allowance of Administrative Expenses.

**11.6. Revocation Of Plan**. The Plan Proponents reserve the right to revoke and withdraw the Plan as to any Debtor prior to entry of the Confirmation Order. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation of the Plan as to such Debtor or Debtors does not occur, then, with respect to such Debtor or Debtors, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against such Debtor or Debtors, or any other Entity (including the Plan Proponents), or to prejudice in any manner the rights of such Debtor or Debtors, or such Entity (including the Plan Proponents) in any further proceedings involving such Debtor or Debtors.

**11.7. Modification Of Plan**. The Plan Proponents may propose amendments to or modifications of the Plan under Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After Confirmation, the Plan Proponents (or, as the case may be, the Reorganized Debtors after the Effective Date) may remedy any defects or omissions or reconcile any inconsistencies in the Plan, or the Confirmation Order or any other order entered for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the holders of Allowed Claims are not materially and adversely affected thereby, and, in the case of the U.K. Debtors, make corresponding changes, reconciliations or modifications in the Scheme of Arrangement and/or Voluntary Arrangement, as applicable, for such Debtor if required. Anything in the Plan or in any Plan Document to the contrary notwithstanding, following Confirmation, no Plan Document shall be modified, supplemented, changed or amended in any material respect except with the consent of all Plan Proponents or, in the absence of such consent, with the approval of the Bankruptcy Court on notice to all Plan Proponents and such other Entities as the Bankruptcy Court may require and a hearing. In the event of a conflict between the terms or provisions of the Plan and the Trust Documents, the terms of the Plan shall control the Trust Documents.

**11.8. Certain Provisions Regarding High River Limited Partnership**. High River Limited Partnership or its affiliated designee shall have the same rights and powers that the Plan Proponents are provided under the Plan or Plan Documents, including, but not limited to, with respect to any modifications or amendments to the Plan or the Plan Documents, any waiver of conditions to confirmation or consummation of the Plan, the classification and/or treatment of any creditor or equity class in the U.S. and/or U.K. proceedings and any rights regarding the U.K. Debtors (including as to Schemes of Arrangement, Voluntary Arrangements, liquidation, the Administrators, and the T&N Limited and FM Ignition pension plans), the cramdown of the Plan, the Plan's tax consequences, the corporate governance of Reorganized Federal-Mogul, the Exit Facilities and any and all other rights reserved for, or afforded to, the Plan Proponents under the Plan and Plan Documents (including as set forth in Section 6.7.3 of the Plan).

**11.9. <u>Modification Of Payment Terms</u>**. The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon the consent of the holder of such Allowed Claim.

**11.10.    <u>Entire Agreement</u>**. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings and documents. No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

**11.11.    <u>Headings</u>**. Headings are utilized in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**11.12.    <u>Administrative Claims Bar Date</u>**. Unless otherwise ordered by the Bankruptcy Court, except for Administrative Claims for amounts incurred by the U.S. Debtors in the ordinary course of business during these Reorganization Cases, the Confirmation Order shall operate to set a bar date for Administrative Claims against the U.S. Debtors (the "Administrative Claims Bar Date"), which bar date shall be the first Business Day that is at least 120 days after the Effective Date. Claimants holding Administrative Claims against the Debtors not paid prior to the Administrative Claims Bar Date may submit a Request for Payment of Administrative Expense on or before such bar date. The notice of Confirmation to be served and delivered pursuant to Bankruptcy Rules 2002 and 3020(c) will set forth such date and constitute notice of the Administrative Claims Bar Date. The Reorganized Debtors and any other party in interest will have ninety days after the Administrative Claims Bar Date to review and object to such Claims before a hearing for determination of such Administrative Claims is held by the Bankruptcy Court, provided that such ninety-day period of review may be extended by the Bankruptcy Court upon the request of any of the Plan Proponents. Nothing herein shall be deemed or construed to prejudice, or establish a bar date for, any Administrative Claim or Administration Claim against the U.K. Debtors or their Estates.

**11.13.    <u>Governing Law</u>**. Except to the extent that federal law (including, but not limited to, the Bankruptcy Code and the Bankruptcy Rules) is applicable or where the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**11.14.    <u>No Interest</u>**. Except with respect to unimpaired Allowed Claims, or as expressly stated in the Plan or otherwise Allowed by Final Order of the Bankruptcy Court, no interest, penalty or late charge arising after the Petition Date shall be Allowed on any Claim or Equity Interest.

**11.15.    <u>Limitation On Allowance</u>**. No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**11.16.**    **Estimated Claims**.  To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

**11.17.**    **Consent To Jurisdiction**.  Upon default under the Plan, the Reorganized Debtors, the Trust and the Trustees, the Future Claimants Representative, and the Trust Advisory Committee, respectively, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default, except for matters pertaining solely to the U.K. Debtors or their Schemes of Arrangement and/or Voluntary Arrangements, as applicable, in which respect, all such parties consent to the jurisdiction of the U.K. Court.

**11.18.**    **Successors And Assigns**.  The rights, duties and obligations of any Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

**11.19.**    **Non-Debtor Waiver of Rights**.  Non-debtor parties shall have the right to voluntarily waive any rights, benefits or protections that are afforded to them under the provisions of the Plan or any order issued in furtherance of the Plan, and such waiver shall supersede such rights, benefits or protections.  Any such waiver shall only be effective if such party expressly and specifically waives in writing one or more of such rights, benefits or protections.  Any such Entity which waives its rights under the Plan shall nonetheless remain subject to and bound by all other provisions of the Plan, including, but not limited to the discharge, the Releases, the Injunctions and all other injunctions thereunder.

**11.20.**    **Notices**.  All notices, requests and demands required or permitted to be provided to the Debtors, Reorganized Debtors or the Plan Proponents under the Plan, in order to be effective, shall be in writing, and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, to the addresses set forth below:

**THE DEBTORS:**

FEDERAL-MOGUL CORPORATION
Attention:  General Counsel
26555 Northwestern Highway
Southfield, MI 48034
Telephone: (248) 354-7055
Facsimile: (248) 354-8103

## COUNSEL FOR THE DEBTORS:

SIDLEY AUSTIN BROWN &
   WOOD LLP
James F. Conlan, Esq.
Larry J. Nyhan, Esq.
Kenneth P. Kansa, Esq.
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

SIDLEY AUSTIN BROWN &
   WOOD LLP
Richard T. Peters, Esq.
Kevin T. Lantry, Esq.
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

PACHULSKI, STANG, ZIEHL,
   YOUNG, JONES &
   WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

## COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

SONNENSCHEIN NATH &
   ROSENTHAL LLP
Peter D. Wolfson, Esq.
John A. Bicks, Esq.
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

SONNENSCHEIN NATH &
   ROSENTHAL LLP
Robert B. Millner, Esq.
Thomas A. Labuda, Jr., Esq.
8000 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

THE BAYARD FIRM
Charlene D. Davis, Esq.
Eric Sutty, Esq.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

## COUNSEL FOR THE ASBESTOS CLAIMANTS COMMITTEE:

CAPLIN & DRYSDALE,
   CHARTERED
Elihu Inselbuch, Esq.
399 Park Avenue
New York, NY 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

CAPLIN & DRYSDALE,
   CHARTERED
Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

CAMPBELL & LEVINE, LLC
Marla Eskin, Esq.
Chase Manhattan Centre, 15th Floor
1201 N. Market Street
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

## COUNSEL TO JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

SIMPSON THACHER &
   BARTLETT LLP
Steven M. Fuhrman, Esq.
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

RICHARDS, LAYTON & FINGER,
   P.A.
Mark Collins, Esq.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

## COUNSEL FOR THE FUTURE CLAIMANTS REPRESENTATIVE:

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
1100 N. Market Street, 11th Floor
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS:**

BELL, BOYD & LLOYD
David Heroy, Esq.
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, IL 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

BIFFERATO BIFFERATO &
    GENTILOTTI
Connor Bifferato, Esq.
Megan N. Harper, Esq.
Buckner Building
1308 Delaware Avenue
Wilmington, DE 19806
Telephone: (302) 429-1900
Facsimile: (302) 429-860

**ARTICLE XII**
**POTENTIAL COMPROMISE AND SETTLEMENT**
**WITH PNEUMO ABEX PARTIES**

**12.1. Introduction and Contingent Nature of Provisions Contained in this Article XII.** As set forth in this Article, the Plan may also implement, on the Effective Date, an agreement, if one is reached, between all of the Plan Proponents and the so-called Pneumo Abex Parties (the *"Pneumo Abex Transaction"*) that would result in the Pneumo Abex Parties receiving the benefits of an injunction pursuant to Sections 524(g) and 105 of the Bankruptcy Code channeling Pneumo Abex Asbestos Claims to a Pneumo Abex Subfund, which would be established within the FMP Fund, which FMP Fund comprises part of the Asbestos Personal Injury Trust Distribution Procedures. This Article XII contains a number of draft potential provisions that describe, and would, if accepted, effect the proposal made to the Plan Proponents by the Pneumo Abex Parties (the *"Draft PA Transaction Proposal"*).

The insertion of the provisions describing the Draft PA Transaction Proposal into this Article XII of the Plan is expressly conditioned upon, among other things, the waiver by Cooper Industries, Inc. (*"Cooper"*) of any objection to Confirmation of the Plan (including any rights Cooper may have as subrogee to the rights of the Pneumo Abex Parties). The Plan Proponents understand and understood such Confirmation objection waiver to have been made by Cooper on behalf of not just Cooper but all of the other Pneumo Abex Parties in all respects; Cooper and the other Pneumo Abex Parties dispute this understanding and contention and believe that the Confirmation objection waiver was solely on behalf of Cooper (including on behalf of Cooper as subrogee to the rights of the Pneumo Abex Parties).

As of the date of solicitation of votes on the Plan, the proposed Pneumo Abex Transaction has not been accepted by the Plan Proponents and there are aspects of the Draft PA Transaction Proposal with which the Plan Proponents do not agree. Inclusion of this Article XII in the Plan shall in no way constitute agreement with or admissions respecting any of the provisions thereof on the part of any of the Plan Proponents.

In the event agreement on the Pneumo Abex Transaction between each of the Plan Proponents and the Pneumo Abex Parties is not reached at least [30] days before the Bankruptcy Court-established deadline for voting on the Plan, or if such agreement is reached but approval of

134

the Pneumo Abex Transaction by the required number of holders of Pneumo Abex Claims is not obtained by the Bankruptcy Court-established deadline for voting on the Plan, then none of the provisions of this Article XII of the Plan shall be effective, and such provisions shall be deemed removed from the Plan on the Confirmation Date; provided, however, that Cooper's withdrawal of any objection to Confirmation (whether on its own behalf or as subrogee to the rights of any of the Pneumo Abex Parties) shall nonetheless remain effective.

Except as set forth in the preceding paragraph, and notwithstanding any provisions in this Plan to the contrary, changes or revisions to the Plan or Disclosure Statement relating to the provisions of the Draft PA Transaction Proposal and/or the Pneumo Abex Transaction must be approved in writing by all of the Plan Proponents.

### 12.2. Draft PA Transaction Proposal Provisions.

**12.2.1.** Section 1.1.20 of the Plan would be modified to include "(vi) any Pneumo Abex Asbestos Claim."

**12.2.2.** The following definition would be added to the Plan: *"Pneumo Abex* means Pneumo Abex Corporation."

**12.2.3.** The following definition would be added to the Plan: *"Pneumo Abex Asbestos Claim* means any and all asbestos-related personal injury claims and demands (as those terms are defined in the Bankruptcy Code), including contribution and indemnity claims, whenever or however asserted, against Pneumo Abex or any other Pneumo Abex Party, whether asserted by agents or employees of any of the Pneumo Abex Parties or any other person or entity, whether in the nature of or sounding in tort, contract, warranty, conspiracy or any other theory of law, equity or admiralty, whatsoever, for, attributable to or arising under the laws of any jurisdiction, by reason of, directly or indirectly, physical, emotional or other personal injuries (including death resulting therefrom) caused, or allegedly caused, in whole or in part, directly or indirectly, by Pneumo Abex, any of its predecessors, or any of the Pneumo Abex Parties on behalf of Pneumo Abex or any of its predecessors, and due to the presence of or exposure to asbestos or asbestos-containing products manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by Pneumo Abex or any of its predecessors, or by any actions, omissions or activities, direct or indirect, of Pneumo Abex or any of its predecessors, including all claims or demands, debts, obligations or liabilities for compensatory damages (such as, without limitation, loss of consortium or support, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general and special damages) and punitive damages. A holder of a Pneumo Abex Asbestos Claim shall be referred to as a *"Pneumo Abex Asbestos Claimant.""*

**12.2.4.** The following definition would be added to the Plan: *"Pneumo Abex Parties* means Cooper Industries, Inc., Cooper Industries, Ltd., Pneumo Abex Corporation, and certain other entities that may be named with the consent of the Plan Proponents as part of the agreement by the Plan Proponents to the Pneumo Abex Transaction, together with any of their respective past, present or future affiliates, predecessors, successors or assigns, or the past, present or future officers, directors, employees, agents, affiliates, shareholders, lenders, attorneys, accountants, financial advisors, consultants or representatives of any of the foregoing."

**12.2.5.**    The following definition would be added to the Plan:  "***Pneumo Abex Transaction*** means a settlement between the Pneumo Abex Parties, on the one hand, and all of the Plan Proponents, on the other hand, as generally described in Section V.Y. of the Disclosure Statement, but only if and to the extent that such settlement is finalized and agreed to (as evidenced by definitive documentation) by all of the Plan Proponents and Pneumo Abex Parties at least [30] days prior to the Bankruptcy Court-established deadline for voting to accept or reject the Plan and approved by the requisite number of holders of Pneumo Abex Asbestos Claims no later than the Bankruptcy Court-established deadline for voting to accept or reject the Plan."

**12.2.6.**    The following definition would be added to the Plan:  "***Pneumo Abex Subfund*** means the segregated subtrust of the FMP Fund (which FMP Fund is established as part of the Asbestos Personal Injury Trust Distribution Procedures) to be established to pay Pneumo Abex Asbestos Claims if the Pneumo Abex Transaction is approved by all of the Plan Proponents and the Pneumo Abex Parties and is consummated."

**12.2.7.**    The following language would be added as Section 1.1.122.7:  "if the Pneumo Abex Transaction is approved by all of the Plan Proponents and the Pneumo Abex Parties and is consummated, the Pneumo Abex Parties."

**12.2.8.**    The following language would be added to Section 1.1.155:  "(f) if the Pneumo Abex Transaction is approved by all of the Plan Proponents and the Pneumo Abex Parties and is consummated, the cash, stock, insurance rights and proceeds, guarantees and other forms of financial assurances provided to the Pneumo Abex Subfund by the Pneumo Abex Parties."

**12.2.9.**    The following language would be added as a new Section 4.11.4 (and the remaining subsections in Section 4.11 would be renumbered accordingly): **4.11.4.** "If the Pneumo Abex Transaction is approved by all of the Plan Proponents and the Pneumo Abex Parties and is consummated, Pneumo Abex and the Pneumo Abex Subfund will jointly and severally defend, indemnify and hold harmless the Pneumo Abex Parties and Reorganized Federal-Mogul Corporation and its affiliates (as well as their respective past, present or future affiliates, predecessors, successors or assigns, or past, present or future officers, directors, employees, agents, affiliates, shareholders, lenders, attorneys, accountants, financial advisors, consultants or representatives of any of the foregoing) from any and all claims, including without limitation, attorneys' fees, arising from or on account of any Pneumo Abex Asbestos Claims."

**12.2.10.**    The following language would be added as a new Section 7.1.1(n) (and the remaining subsections in Section 7.1.1 would be renumbered accordingly): **7.1.1(n).** "The Pneumo Abex Parties are alleged to be directly or indirectly liable for the Pneumo Abex Asbestos Claims for which the Pneumo Abex Parties allege F-M Products is liable and the Pneumo Abex Parties assert that such alleged liability of the Pneumo Abex Parties arises by reason of one or more of the reasons set forth in section 524(g)(4)(A)(ii) of the Bankruptcy Code."

**12.2.11.**    The following language would be added as a new Section 8.21:

"Subject to continued negotiations and approval by all of the Plan Proponents and the Pneumo Abex Parties, and provided that final documentation is executed, on the Effective Date, the Pneumo Abex Transaction will be consummated and the parties thereto will engage in the transactions contemplated therein.

Prior to the Confirmation Hearing, this Plan, and its incorporated Third Party Injunction, will be further modified as necessary to incorporate and implement the terms of the Pneumo Abex Transaction.  In addition, the Asbestos Personal Injury Trust Distribution Procedures will be amended to create a matrix and claims resolution process for Pneumo Abex Asbestos Claims that will be similar to the matrix and claims resolution process applicable to the FMP (Wagner) Claims described in the Asbestos Personal Injury Trust Distribution Procedures.  Pneumo Abex Asbestos Claims shall become "TDP Valued Claims" under the Asbestos Personal Injury Trust Distribution Procedures and claimants will be able to submit their claims for resolution via an administrative process and will not be required to liquidate the claims in the tort system (as would be the case in the absence of the implementation of the proposed transaction).  The claims criteria and values for the Pneumo Abex Asbestos Claims will be similar to those set forth in the Asbestos Personal Injury Trust Distribution Procedures relative to the FMP (Wagner) Claims described therein.

**IN THE EVENT THE PNEUMO ABEX TRANSACTION IS APPROVED AND THE PLAN IS CONFIRMED, THE PNEUMO ABEX PARTIES WILL BE BENEFICIARIES OF THE THIRD PARTY INJUNCTION AND THE SUPPLEMENTAL INJUNCTION CONTAINED IN THE PLAN."**

**12.2.12.** The following language would be added as the second sentence of Section 11.7 of the Plan: "If the proposed Pneumo Abex Transaction is approved by all of the Plan Proponents and the Pneumo Abex Parties and is documented, the Plan Proponents specifically reserve the right to incorporate in or attach to the Plan additional language or documents to implement the terms of that transaction."

137

Dated: _____6/4_____, 2004

        FEDERAL-MOGUL CORPORATION (for itself and on behalf of
        the Affiliated Debtors, as Debtors and Debtors in Possession)

        By: _____

        OFFICIAL COMMITTEE OF UNSECURED CREDITORS

        By: _____

        OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

        By: _____

        JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

        By: _____

        ERIC D. GREEN, as THE FUTURE CLAIMANTS
        REPRESENTATIVE

        By: _____

        OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

        By: _____

Dated: _6/4_ , 2004

FEDERAL-MOGUL CORPORATION (for itself and on behalf of the Affiliated Debtors, as Debtors and Debtors in Possession)

By: _____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By: _____

JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

By: _____

ERIC D. GREEN, as THE FUTURE CLAIMANTS REPRESENTATIVE

By: _____

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By: _____

Dated: _____ 6/4 , 2004

FEDERAL-MOGUL CORPORATION (for itself and on behalf of
the Affiliated Debtors, as Debtors and Debtors in Possession)

By: _____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By: _____

JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

By: _____

ERIC D. GREEN, as THE FUTURE CLAIMANTS
REPRESENTATIVE

By: _____

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By: _____

Dated: ___6|3|___, 2004

FEDERAL-MOGUL CORPORATION (for itself and on behalf of
the Affiliated Debtors, as Debtors and Debtors in Possession)

By: _____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By: _____

JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

By: _____

ERIC D. GREEN, as THE FUTURE CLAIMANTS
REPRESENTATIVE

By: _E. Himn m_____

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By: _____

Dated: _____ __ , 2004

FEDERAL-MOGUL CORPORATION (for itself and on behalf of the Affiliated Debtors, as Debtors and Debtors in Possession)

By: _____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By: _____

JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

By: _____

ERIC D. GREEN, as THE FUTURE CLAIMANTS REPRESENTATIVE

By: _____

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By: _____

Dated: _____ 6/4 , 2004

FEDERAL-MOGUL CORPORATION (for itself and on behalf of the Affiliated Debtors, as Debtors and Debtors in Possession)

By: _____

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS

By: _____

JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

By: _____

ERIC D. GREEN, as THE FUTURE CLAIMANTS REPRESENTATIVE

By: _____

OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

By: _____

## COUNSEL FOR THE PLAN PROPONENTS

### COUNSEL FOR THE DEBTORS:

SIDLEY AUSTIN BROWN &
   WOOD LLP
James F. Conlan, Esq.
Larry J. Nyhan, Esq.
Kenneth P. Kansa, Esq.
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312)  853-7036

SIDLEY AUSTIN BROWN &
   WOOD LLP
Richard T. Peters, Esq.
Kevin T. Lantry, Esq.
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

PACHULSKI, STANG, ZIEHL,
   YOUNG, JONES &
   WEINTRAUB P.C.
Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 16th floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

### COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:

SONNENSCHEIN NATH &
   ROSENTHAL LLP
Peter D. Wolfson, Esq.
John A. Bicks, Esq.
1221 Avenue of the Americas
New York, NY 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

SONNENSCHEIN NATH &
   ROSENTHAL LLP
Robert B. Millner, Esq.
Thomas A. Labuda, Jr., Esq.
8000 Sears Tower
Chicago, IL 60606
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

THE BAYARD FIRM
Charlene D. Davis, Esq.
Eric Sutty, Esq.
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

### COUNSEL FOR THE ASBESTOS CLAIMANTS COMMITTEE:

CAPLIN & DRYSDALE,
   CHARTERED
Elihu Inselbuch, Esq.
399 Park Avenue
New York, NY 10022
Telephone: (212) 319-7125
Facsimile: (212) 644-6755

CAPLIN & DRYSDALE,
   CHARTERED
Peter Van N. Lockwood, Esq.
One Thomas Circle, N.W.
Washington, D.C. 20005
Telephone: (202) 862-5000
Facsimile: (202) 429-3301

CAMPBELL & LEVINE, LLC
Marla Eskin, Esq.
Chase Manhattan Centre, 15th Floor
1201 N. Market Street
Wilmington, DE 19801
Telephone: (302) 426-1900
Facsimile: (302) 426-9947

### COUNSEL TO JPMORGAN CHASE BANK, AS ADMINISTRATIVE AGENT

SIMPSON THACHER &
   BARTLETT LLP
Steven M. Fuhrman, Esq.
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

RICHARDS, LAYTON & FINGER,
   P.A.
Mark Collins, Esq.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
Telephone: (302) 651-7700
Facsimile: (302) 658-6548

### COUNSEL FOR THE FUTURE CLAIMANTS REPRESENTATIVE:

YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
James L. Patton, Jr., Esq.
Edwin J. Harron, Esq.
1100 N. Market Street, 11th Floor
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**COUNSEL FOR THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS:**

BELL, BOYD & LLOYD
David Heroy, Esq.
70 West Madison Street
Three First National Plaza
Suite 3300
Chicago, IL 60602
Telephone: (312) 807-4315
Facsimile: (312) 827-8010

BIFFERATO BIFFERATO &
  GENTILOTTI
Connor Bifferato, Esq.
Megan N. Harper, Esq.
Buckner Building
1308 Delaware Avenue
Wilmington, DE 19806
Telephone: (302) 429-1900
Facsimile: (302) 429-860

# EXHIBITS TO THE PLAN

| | |
|---|---|
| 1.1.7 | Schedule of Affiliates |
| 1.1.9 | Schedule of Affiliated Subsidiaries |
| 1.1.55 | Dan=Loc Deed of Special Indemnity and Dan=Loc Deed of Guarantee |
| 1.1.72 | Schedule of Known On-Site Environmental Claims |
| 1.1.91 | Schedule of Inactive Debtor Subsidiaries |
| 1.1.130 | Principal Terms and Conditions of the Reorganized Federal-Mogul Junior Secured PIK Notes |
| 1.1.131 | Principal Terms and Conditions of the Reorganized Federal-Mogul Secured Term Loan Agreement |
| 1.1.133 | Schedule of U.K. Debtors Subject to Schemes of Arrangement |
| 1.1.136 | Principal Terms and Conditions of the Secured Surety Notes and Junior Secured Surety PIK Notes |
| 1.1.154 | Form of Asbestos Personal Injury Trust Agreement and Asbestos Personal Injury Trust Distribution Procedures |
| 1.1.168 | Schedule of U.K. Debtors Subject to Voluntary Arrangements |
| 1.1.170 | Warrant Agreement |
| 3.1.12 | Schedule of Affiliate Claims Treatment |
| 3.21 | Classification and Treatment of Claims Against and Equity Interests in all Remaining U.S. Debtors and U.K. Debtors |
| 5.1.2 | Schedule of Rejected Contracts |
| 8.3.7 | Form of Registration Rights Agreement |
| 8.3.8 | Form of Lockup Agreement |
| 8.3.9(1) | Proposed Certificate of Incorporation of Reorganized Federal-Mogul Corporation |
| 8.3.9(2) | Proposed Bylaws of Reorganized Federal-Mogul Corporation |
| 8.3.10 | Initial Board of Directors of Reorganized Federal-Mogul Corporation |
| 8.4.1 | Initial Boards of Directors for the Affiliated Debtors of Reorganized Federal-Mogul Corporation |